**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| FUNDACIÓN SEGARRA-BOERMAN e HIJOS, INC. and MILDRED A. SEGARRA-BOERMAN, | |
| Plaintiffs, | CIVIL NO. 3:16-cv-02914-DRD |
| v. | |
| ALFREDO MARTÍNEZ-ÁLVAREZ; FELIPE SEGARRA INVESTMENT CORP.; TITÍN FOUNDATION, INC.; JOSÉ RAMON QUIÑONES-COLL; MARTÍNEZ-ÁLVAREZ, MENENDEZ-CORTADA & LEFRANC ROMERO, PSC; ALFREDO MARTÍNEZ-ALVAREZ, JR.; SOFÍA MARTÍNEZ-ÁLVAREZ; MARTINAL REAL ESTATE CORP.; and MARTINAL MANAGEMENT CORP., | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**TITÍN DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT AND
INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...........................................................................1

FACTUAL BACKGROUND ..............................................................................2

      A.    The Segarra-Boerman Family...............................................................2

      B.    The Defendants' Service To The Segarra-Boerman Family.....................2

      C.    The Purported Scheme And Specific Transactions .................................3

            1.    The Cataño Land Deal ................................................................3

            2.    The FSIC Purchase ...................................................................4

            3.    The Inheritance Dispute ............................................................5

      D.    Martinal's Trademark .........................................................................6

      E.    Settlement Discussions .......................................................................7

STANDARD OF REVIEW ................................................................................7

ARGUMENT .................................................................................................9

I.     PLAINTIFFS' CIVIL RICO CLAIMS FALL OUTSIDE THE SUBJECT-
      MATTER JURISDICTION OF THE COURT. ...........................................9

II.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER CIVIL RICO. ...............11

      A.    Plaintiffs Lack Standing to Assert RICO Claims. .................................11

            1.    Plaintiffs' Purported Injuries Are Not Cognizable Under Civil
                 RICO. ....................................................................................12

                 (a)    Plaintiffs' Claims Of Failure To Inherit Under Titín's Will
                       Are Not Cognizable Injuries Under Civil RICO..........................13

                 (b)    Plaintiffs' Claims of Interference With FSB's Mission Are
                       Not Cognizable Injuries Under Civil RICO..................................15

                 (c)    Plaintiff FSB's Claim Of Interference With Its Intangible
                       Property Is Not A Cognizable Injury Under Civil RICO. .............16

                 (d)    Plaintiff Doña Mildred's Claim Of Injury In The FSIC Sale
                       Is Not Cognizable Under Civil RICO. ...........................................17

        2.      Plaintiffs Have Failed To, And Cannot, Establish That The Titín Defendants Proximately Caused Plaintiffs' Alleged Injuries. ...................17

   B.      Plaintiffs Have Failed To Meet The "Pattern" Requirement. ................................21

        1.      Plaintiffs Fail To State A Claim Of "Closed-Ended Continuity" .............21

        2.      Plaintiffs Fail To State A Claim Of "Open-Ended Continuity" ...............23

   C.      Plaintiffs Fail To State And Cannot Establish Claims Under Sections 1962(a) or (b). ..........................................................................................24

        1.      Plaintiffs' Claims Under Section 1962(b) Must Be Dismissed. ................24

        2.      Plaintiffs' Claims Under Section 1962(d) For An Alleged Conspiracy To Violate Section 1962(b) Must Be Dismissed. ...................25

        3.      Plaintiffs' Claim Under Section 1962(d) Alleging A Conspiracy To Violate Section 1962(a) Must Be Dismissed. .............................................26

   D.      Plaintiffs Fail To Allege And Cannot Establish A Viable RICO Enterprise.........27

        1.      Plaintiffs Have Not Pled Enterprises Distinct From The Titín Defendants .................................................................................................27

        2.      Plaintiffs Have Not Pled Participation In The Enterprise By The Majority Of The Defendants ........................................................................30

        3.      Plaintiffs May Not Plead The Existence Of Multiple Factually Contradictory Enterprises ..........................................................................31

   E.      Plaintiffs' Claims Are Time-Barred........................................................................33

III.     PLAINTIFFS' UNFAIR COMPETITION CLAIMS SHOULD BE DISMISSED ..........34

   A.      Plaintiffs' Unfair Competition Claims Must Be Dismissed As To Plaintiff Doña Mildred and Certain Defendants Because The Amended Complaint Contains No Allegations Concerning These Parties................................................35

   B.      Plaintiffs' Unfair Competition Claims Are Barred By Puerto Rico's One-Year Statute of Limitation and Laches. ................................................................36

   C.      Plaintiffs Consented To The Titín Defendants' Use Of The FSB Mark, And Use Of The FSB Mark Within That Scope Is Not Actionable.....................37

   D.      Plaintiffs' Allegations Regarding Use of the FSB Mark With The Martinal Mark And Logo Are Unavailing and Irrelevant ....................................................38

E.     Plaintiffs Fail to Allege Any Continuing Harm From Defendants' Prior Use of the FSB Mark ...................................................................40

IV.    PLAINTIFFS' CLAIM FOR BREACH OF AN ORAL SETTLEMENT AGREEMENT SHOULD BE DISMISSED .....................................................41

A.     The Breach Claim Is Governed By Puerto Rico Law And Should Be Dismissed If The Plaintiffs' Federal Claims Are Dismissed. ...............41

B.     Supplemental Jurisdiction Does Not Apply to the Breach Claim. ........44

C.     Even If The Breach Claim Is Deemed To "Arise Under" Federal Law, The Court Should Apply Puerto Rico Substantive Law To It, And Dismiss It. ..........45

1.     Even If The Breach Claim Arises Under Federal Law, Puerto Rico Substantive Law Applies. .........................................................45

2.     Puerto Rico Law Requires Dismissal of the Breach Claim. ....................46

(a)     Puerto Rico law requires an "authentic document" absent here..................................................................................46

(b)     No agreement was reached on August 5, 2016 as evidenced by Plaintiffs' counsel's admissions...................................47

3.     Plaintiffs Relinquished Any Claim Under The Purported "Oral Agreement To Settle" By Initiating this Action. ........................................49

V.     THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION ......................................................................................49

VI.    THE COURT SHOULD DISMISS THE AMENDED COMPLAINT WITH PREJUDICE ...........................................................................................50

CONCLUSION.............................................................................................50

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abbott Labs. v. CVS Pharmacy, Inc.*,
    290 F.3d 854 (7th Cir. 2002) ............................................................... 41-42, 44

*Ahmed v. Hosting.com*,
    28 F. Supp. 3d 82 (D. Mass. 2014) ...........................................................35

*Almazan v. Almazan*,
    No. 14-CV-311 AJN, 2015 WL 500176 (S.D.N.Y. Feb. 4, 2015) ........................31

*Alvarado v. Bonilla*,
    86 D.P.R. 490 (1962) ............................................................................49

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006)..............................................................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................8

*Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*,
    459 U.S. 519 (1983)................................................................................8

*Automated Transaction LLC v. N.Y. Cmty. Bank*,
    2013 WL 992423 (E.D.N.Y. Mar. 13, 2013) ................................................35

*BancOklahoma Mortg. Corp. v. Capital Title Co.*,
    194 F.3d 1089 (10th Cir. 1999) .....................................................25-26, 28-29

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007)................................................................................8

*Benitez v. (N.N.C.) Neptune Nav. Corp.*,
    355 F. Supp. 694 (D.P.R. 1973)................................................................37

*Bessette v. Avco Fin. Servs., Inc.*,
    230 F.3d 439 (1st Cir. 2000).............................................................28, 29

*Camelio v. Am. Fed'n*,
    137 F.3d 666 (1st Cir. 1998)...................................................................50

*Carson v. Am. Brands, Inc.*,
    450 U.S. 79 (1981)................................................................................42

*Cedric Kushner Promotions, Ltd. v. King*,
    533 U.S. 158 (2001)..............................................................................28

*Circiello v. Alfano*,
    612 F. Supp. 2d 111 (D. Mass. 2009) ...................................................14, 19

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
   187 F.3d 229 (2d Cir. 1999) ............................................................................... 25, 26

*Compagnie De Reassurance D'Ile de France v. New England Reinsurance Corp.*,
   57 F.3d 56 (1st Cir. 1995) ............................................................................ 24, 26, 28

*Cooney Indus. Trucks, Inc. v. Toyota Motor Sales, U.S.A., Inc.*,
   168 F.3d 545 (1st Cir. 1999) .................................................................................... 49

*Cruz v. FXDirectDealer, LLC*,
   720 F.3d 115 (2d Cir. 2013) .................................................................................... 28

*DeMauro v. DeMauro*,
   115 F.3d 94 (1st Cir. 1997) ..................................................................................... 12

*Dice v. Akron, C. & Y. R. Co.*,
   342 U.S. 359 (1952) ................................................................................................. 43

*Dunkin' Donuts Franchised Restaurants LLC v. ABM Donuts, Inc., No. CA 11-270S*,
   2011 WL 6026129 (D.R.I. Oct. 4, 2011) ................................................................ 40

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,
   48 F.3d 1260 (D.C. Cir. 1995) ........................................................................... 23-24

*Efron v. Embassy Suites (Puerto Rico), Inc.*,
   223 F.3d 12 (1st Cir. 2000) ...................................................... 21-23, 25, 28-29

*Erva Pharmaceuticals, Inc. v. American Cyanamid Co.*,
   755 F. Supp. 36 (D.P.R. 1991) ................................................................................ 34

*Evans v. City of Chi.*,
   434 F.3d 916 (7th Cir. 2006) .................................................................................. 12

*F.A.C., Inc. v. Cooperativa de Seguros de Vida de Puerto Rico*,
   449 F.3d  185 (1st Cir. 2006) .................................................................................. 42

*F.D.I.C. v. Shearson-Am. Exp., Inc.*,
   996 F.2d 493 (1st Cir. 1993) ............................................................................. 46-47

*Fabrica de Muebles J.J. Alvarez, Inc. v. Westernbank de Puerto Rico, No. CIV 09-1558 GAG*,
   2009 WL 4730776 (D.P.R. Dec. 4, 2009) .............................................................. 21

*Feinstein v. Resolution Trust Corp.*,
   942 F.2d 34 (1st Cir. 1991) ..................................................................................... 25

*Figueroa Ruiz v. Alegria*,
   896 F.2d 645 (1st Cir. 1990) ................................................................................... 11

*Free Kick Master LLC v. Apple Inc.*,
   No. 15-CV-3403-PJH, 2016 WL 777916 (N.D. Cal. Feb. 29, 2016) .............. 37, 39

*Gabovitch v. Shear*,
   70 F.3d 1252 (1st Cir. 1995) ................................................................................... 17

*Garcia v. Garcia Oronce*, No. CIV. 07-1840 GAG/MEL,
   2009 WL 483127 (D.P.R. Feb. 24, 2009) ....................................................... 10-11

*Garcia-Monagas v. W. Holding Co., Inc.*, No. Civ. 07-1217 ADC,
   2009 WL 483146 (D.P.R. Feb. 25, 2009) ...........................................................12

*Gen. Healthcare Ltd. v. Qashat*,
   364 F.3d 332 (1st Cir. 2004) ............................................................................39

*In re: Gen. Motors LLC Ignition Switch Litig.*,
   No. 14-MC-2543 JMF, 2016 WL 3920353 (S.D.N.Y. July 15, 2016) ...................31

*Giuliano v. Fulton*,
   399 F.3d 381 (1st Cir. 2005) ....................................................................... 22-23

*Glassman v. Computervision Corp.*,
   90 F.3d 617 (1st Cir. 1996) ..............................................................................50

*Goldberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   No. 97 CIV. 8779 (RPP), 1998 WL 321446 (S.D.N.Y. June 18, 1998) ...............28

*Gonzalez v. Otero*,
   172 F. Supp. 3d 477 (D.P.R. 2016) .....................................................................8

*Hayduk v. Lanna*,
   775 F.2d 441 (1st Cir. 1985) ..............................................................................9

*Hemi Grp., LLC v. City of New York, N.Y.*,
   559 U.S. 1 (2010) ...................................................................................... 17, 19

*Holmes v. Sec. Inv'r Prot. Corp.*,
   503 U.S. 258 (1992) ................................................................................... 16-17

*Home Orthopedics, Inc. v. Rodrguez*, No. CV 11-1591 DRD,
   2012 WL 12533035 (D.P.R. Sept. 30, 2012) ............................................... 11, 33

*Impac Warehouse Lending Grp. v. Credit Suisse First Boston Corp.*, No. SA CV 04- 1234 AHS
   *(CWX)*, 2006 WL 6935318 (C.D. Cal. June 20, 2006) ...........................................9

*Irish v. Irish*,
   842 F.3d 736 (1st Cir. 2016) ............................................................................10

*Jimenez v. Rodriguez-Pagan*,
   597 F.3d 18 (1st Cir. 2010) ..............................................................................10

*Joseph v. Bernstein*,
   612 F. App'x 551 (11th Cir. 2015) .......................................................................9

*Kagan v. El San Juan Hotel & Casino*,
   7 F.3d 218 (1st Cir. 1993) ........................................................................... 45-46

*Kappa Sigma Fraternity v. Kappa Sigma Gamma Fraternity*,
   654 F. Supp. 1095 (D.N.H. 1987) ......................................................................40

*Keebler Co. v. Rovira Biscuit Corp.*,
   624 F.2d 366 (1st Cir. 1980) ............................................................................34

*K-Mart Corp. v. Davis*,
   756 F. Supp. 62 (D.P.R. 1991) ........................................................................48

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ............................................................................ 8, 41-44

*Korpacz v. Women's Prof'l Football League, No. CIV.A. 04-10735-RWZ*,
   2006 WL 220762 (D. Mass. Jan. 27, 2006) ....................................................39

*Krauth v. Exec. Telecard, Ltd.*,
   No. 95 Civ. 0106, 1995 WL 272556 (S.D.N.Y. May 9, 1995) ..............................44

*Landrau v. Solis Betancourt*,
   554 F. Supp. 2d 102 (D.P.R. 2007) ...............................................................35

*Lares Grp., II v. Tobin*, ,
   221 F.3d 41 (1st Cir. 2000) ............................................................................33

*Lefkowitz v. Bank of N.Y.*,
   528 F.3d 102 (2d Cir. 2007) ..........................................................................10

*Lehman v. Lucom*,
   727 F.3d 1326 (11th Cir. 2013) .....................................................................33

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   134 S. Ct. 1377 (2014) ..................................................................................36

*Libertad v. Welch*,
   53 F.3d 428 (1st Cir. 1995) ......................................................................27, 30

*Lightning Lube, Inc. v. Witco Corp.*,
   4 F.3d 1153 (3d Cir. 1993) ............................................................................27

*Lincoln House, Inc. v. Dupre*,
   903 F.2d 845 (1st Cir. 1990) ..........................................................................12

*Lynch v. Amoruso*
   No. 16-CV-1270 (AJN), 2017 WL 543232, -- F. Supp. 3d -- (S.D.N.Y.
   Feb. 8, 2017) ..................................................................................... 14-16, 21

*Maine Springs, LLC v. Nestl Waters N. Am., Inc.*,
   No. 2:14-CV-00321-GZS, 2015 WL 1241571 (D. Me. Mar. 18, 2015) ...............35

*Marquez v. Flextronics Am., LLC*,
   No. 12-61520-CIV, 2014 WL 4792997 (S.D. Fla. Sept. 25, 2014) ....................31

*Marshall v. Marshall*,
   547 U.S. 293 (2006) .....................................................................................10

*Mathews v. Kidder, Peabody & Co.*,
   260 F.3d 239 (3d Cir. 2001) ..........................................................................33

*Medina-Padilla v. Piedmont Aviation Servces, Inc., No. CIV. 14-1048 DRD,*
    2015 WL 1033918 (D.P.R. Mar. 10,  2015) ...........................................................8

*Menasco, Inc. v. Wasserman,*
    886 F.2d 681 (4th Cir. 1989) .................................................................................22

*Mendez v. Fundacion,*
    2005 TSPR 101 (P.R. July 11, 2005)......................................................................24

*In re Merrill Lynch Ltd. Partnerships Litig.,*
    154 F.3d 56 (2d Cir. 1998)......................................................................................33

*In re Mexico Money Transfer Litig. (W. Union & Valuta),*
    164 F. Supp. 2d 1002 (N.D. Ill. 2000) ...................................................................31

*Mierzwa v. Safe & Secure Self Storage, LLC,*
    493 F. App'x 273 (3d Cir. 2012) ............................................................................32

*Miranda v. Ponce Fed. Bank,*
    948 F.2d 41 (1st Cir. 1991).........................................................................25-26, 28

*Morais v. Cent. Beverage Corp. Union Employees' Supp. Ret. Plan,*
    167 F.3d 709 (1st Cir. 1999)...................................................................................42

*Motorola Credit Corp. v. Uzan,*
    322 F.3d 130 (2d Cir. 2003)....................................................................................16

*N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare,*
    781 F.3d 182 (5th Cir. 2015) .......................................................................25-26, 28-29

*Negron Gaztambide v. Hernandez Torres,*
    145 F.3d 410 (1st Cir. 1998)...................................................................................46

*O'Ferral v. Trebol Motors,*
    45 F.3d 561 (1st Cir. 1995).............................................................................13, 21

*One & Ken Valley Hous. Grp. v. Maine State Hous. Auth.,*
    716 F.3d 218 (1st Cir. 2013)...................................................................................42

*PBM Prod., LLC v. Mead Johnson & Co.,*
    639 F.3d 111 (4th Cir. 2011) ..................................................................................36

*Pickering v. California Dep't of Corr.,*
    No. 13-cv-01164, 2016 WL 7104167 (E.D. Cal. Dec. 5, 2016) ............................47

*Prods. Tommy Muiz v. C.O.P.A.N.,*
    113 D.P.R. 517 (1982).............................................................................................48

*Puerto Rico Clean Energy Corp. v. Hatton-Gotay,*
    115 F. Supp. 3d 288 (D.P.R. 2015)........................................................................11

*Pujol v. Shearson/Am. Exp., Inc.,*
    829 F.2d 1201 (1st Cir. 1987)................................................................................12

*Quint v. A.E. Staley Mfg. Co.*,
    246 F.3d 11 (1st Cir. 2001) ............................................................................45

*Ramos Mimoso v. Tribunal Superior*,
    93 D.P.R. 551, 554 (1966) ........................................................................ 46-47

*Reisner v. Stoller*,
    51 F. Supp. 2d 430 (S.D.N.Y. 1999) ............................................................32

*Resnick v. Uccello Immobilien GMBH, Inc.*,
    227 F.3d 1347 (11th Cir. 2000) ....................................................................45

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ......................................................................................30

*Rhone v. Energy N., Inc.*,
    790 F. Supp. 353 (D. Mass. 1991) ..................................................................9

*Riera v. Macias Vda. de Riera*,
    42 D.P.R. 579 (1931) ....................................................................................49

*Rivera v. Centro Medico de Turabo, Inc.*,
    575 F.3d 10 (1st Cir. 2009) ............................................................................7

*Rodriguez v. Banco Cent.*,
    727 F. Supp. 759 (D.P.R. 1989) ....................................................................26

*Rojas-Buscaglia v. Taburno-Vasarely*,
    39 F. Supp. 3d 208 (D.P.R. 2014) ...........................................................23, 24

*Rotella v. Wood*,
    528 U.S. 549 (2000) ......................................................................................33

*Ruotolo v. Fannie Mae*,
    933 F. Supp. 2d 512 (S.D.N.Y. 2013) ...........................................................32

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985) .................................................................................12, 21

*Segal v. Geisha NYC LLC*,
    517 F.3d 501 (7th Cir. 2008) ........................................................................37

*Shell Co. (Puerto Rico) v. Los Frailes Serv. Station, Inc.*,
    605 F.3d 10 (1st Cir. 2010) ...........................................................................40

*Skwira v. United States*,
    344 F.3d 64 (1st Cir. 2003) .............................................................................8

*SLG Garcia Villega v. ELA*,
    190 D.P.R. 799 (2014) ..................................................................................36

*Spool v. World Child Int'l Adoption Agency*,
    520 F.3d 178 (2d Cir. 2008) ..........................................................................21

*Summerfield v. Strategic Lending Corp.*,
No. C09-02609 HRL, 2011 WL 845946 (N.D. Cal. Mar. 8, 2011) ........................ 14

*In re Supermercados San Juan, Inc.*,
575 F.2d 8 (1st Cir. 1978) ...................................................................................... 47

*Tartak v. Del Palacio*,
No. 09-1730 (DRD) (Oct. 4, 2010) ........................................................................ 11

*Texas Indus., Inc. v. Radcliff Materials, Inc.*,
451 U.S. 630 (1981) ............................................................................................... 45

*Tomczyk v. Blue Cross & Blue Shield United of Wisconsin*,
951 F.2d 771 (7th Cir. 1991) ................................................................................. 47

*United Drug Co. v. Theodore Rectanus Co.*,
248 U.S. 90 (1918) ................................................................................................. 39

*United Mine Workers of Am. v. Gibbs*,
383 U.S. 715 (1966) .......................................................................................... 44, 50

*United States v. Marino*,
277 F.3d 11 (1st Cir. 2002) .................................................................................... 30

*United States v. Osborn*,
409 F. Supp. 406 (D. Or. 1975) ............................................................................. 18

*United States v. Turkette*,
452 U.S. 576 (1981) ............................................................................................... 27

*USTrust v. U.S. Trust Co. of New York*,
210 F. Supp. 2d 9 (D. Mass. 2002) ....................................................................... 39

*Vasarhelyi v. Vasarhelyi*,
No. 09 C 02440, 2012 WL 3308487 (N.D. Ill. Aug. 13, 2012) ........................ 14, 19

*Venture Tape Corp. v. McGills Glass Warehouse*,
540 F.3d 56 (1st Cir. 2008) ............................................................................... 34, 37

*In Vigoreaux Lorenzana v. Quizno's Subs*,
173 D.P.R. 254 (2008) ........................................................................................... 36

*Viqueira v. First Bank*,
140 F.3d 12 (1st Cir. 1998) ...................................................................................... 7

*W. Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*,
235 F.3d 629 (D.C. Cir. 2001) ............................................................................... 22

*Walls v. Int'l Paper Co., No. CIV.A. 99-2048-CM*,
2000 WL 360115 (D. Kan. Mar. 13, 2000) ........................................................... 43

*Wisecarver v. Moore*,
489 F.3d 747 (6th Cir. 2007) ................................................................................. 10

x

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*,
   530 F. Supp. 2d 486 (S.D.N.Y. 2007)........................................................ 15-16, 18

*Zahra v. Charles*,
   639 F. Supp. 1405 (E.D. Mich. 1986) .............................................................31

*Zareas v. Bared-San Martin*,
   209 F. App'x 1 (1st Cir. 2006) ......................................................................12

## **Rules / Statutes**

10 L.P.R.A. § 223w .........................................................................................35

31 L.P.R.A. § 2362 .........................................................................................13

31 L.P.R.A. § 3052 .........................................................................................49

31 L.P.R.A § 3453 ..................................................................................... 46-47

31 L.P.R.A § 5023 ..........................................................................................46

15 U.S.C. § 1114 ............................................................................................37

15 U.S.C. § 1125(a) ...................................................................................35, 37

18 U.S.C. § 1961 *et seq* ("Civil RICO") ............................................... passim

18 U.S.C. § 1962 ............................................................................................12

18 U.S.C. § 1962(a) .................................................................................21, 24-26

18 U.S.C. § 1962(b) ............................................................................... passim

18 U.S.C. § 1962(c) ............................................................................... passim

18 U.S.C. § 1962(d) ............................................................................... passim

18 U.S.C. § 1964(c) ............................................................................... passim

28 U.S.C. § 1331 ............................................................................................41

28 U.S.C. § 1367 ............................................................................................44

Civil Code of Puerto Rico Article 1868 ........................................................36

Fed. R. Civ. P. 8 ..........................................................................................1, 9

Fed. R. Civ. P. 8(a) .....................................................................................9, 35

Fed. R. Civ. P. 9(b) ................................................................................1, 8, 9

Fed. R. Civ. P. 12(b)(1) .........................................................................1, 7, 8

Fed. R. Civ. P. 12(b)(6) .....................................................................1, 8, 36

Lanham Act Section 43(a) ............................................................... passim

Puerto Rico Trademark Act ............................................................. 34-36

Title VII ......................................................................................... 42

## **Other Authorities**

Wright & Miller, *Federal Practice and Procedure* (3d ed.)...................................10, 36

David B. Smith & Terrance G. Reed, *Civil RICO* (2016) .............................29

Restatement (Third): Unfair Competition....................................................37

Thomas, Tim A., *Involuntary Disclosure Or Surrender Of Will Prior To Testator's Death*, 75 A.L.R. 4th (Originally published in 1989)................................................18

Defendants Alfredo Martínez-Álvarez ("Alfredo Sr."); Felipe Segarra Investment Corp. ("FSIC"); Titín Foundation, Inc.; José Ramón Quiñones-Coll ("QC"); Martínez-Álvarez, Menéndez-Cortada & Lefranc Romero, PSC (the "Law Firm"); Alfredo Martínez-Álvarez, Jr. ("Alfredo Jr."); Sofía Martínez-Álvarez ("Sofía"); Martinal Real Estate Corp. ("MRE"); and Martinal Management Corp. ("MMC") (collectively, the "Titín Defendants") respectfully submit this Motion and Incorporated Memorandum of Law in Support (the "Motion") pursuant to Federal Rules of Civil Procedure (the "Rules") 8, 9(b), 12(b)(1) and 12(b)(6) to dismiss with prejudice the Amended Complaint (the "Amended Complaint" or "AC") filed by Fundación Segarra-Boerman e Hijos, Inc. ("FSB") and Mildred A. Segarra-Boerman ("Doña Mildred" and, together with FSB, the "Plaintiffs") in the above-captioned action.

## PRELIMINARY STATEMENT

The Amended Complaint is a transparent attempt to disturb a deceased man's otherwise unchallenged will and fabricate a criminal conspiracy from a family inheritance quarrel.

Luis Felipe Segarra-Boerman ("Titín") died in 2013.  After his death, his property was distributed according to his Third Will, which was never challenged.  Titín's friend and counsel at the Law Firm, Alfredo Sr., served as executor of that Will.

By the Amended Complaint, Plaintiffs Doña Mildred and FSB—respectively, Titín's sister and a foundation started by Titín's family—claim that they should have received more money upon Titín's death.  But rather than challenge the Third Will directly, Plaintiffs hope to extort money from Alfredo Sr., the Law Firm at which he was a partner, his former law partners, and members of his family through false allegations calculated to harm their reputations and businesses.  Specifically, Plaintiffs attempt to shoehorn their claim into nine counts under civil RICO (18 U.S.C. § 1961 *et seq.*) (the "Civil RICO Claims") by which they primarily assert that despite the Third Will, they were somehow owed money from Titín's estate, and that the Titín Defendants were somehow obligated to inform them of Titín's plans and actions before his death.  In doing so, Plaintiffs hope to lodge federal claims that will allow

1

them to resuscitate weak and time-barred claims under Puerto Rico law, treble their entirely speculative damages, and intimidate the Titín Defendants through accusations of criminality.  In a parallel effort to manufacture federal jurisdiction, they also purport to lodge federal claims—all as flawed and baseless as the Civil RICO Claims—under the Lanham Act (the "Unfair Competition Claims") and for breach of a settlement agreement (the "Breach Claim").

Plaintiffs cannot succeed in their effort to state federal claims upon which this Court can grant them relief.  The Court must therefore dismiss Plaintiffs' federal claims with prejudice.  And having dismissed the claims arising, or purporting to arise, under federal law, this Court should decline to exercise supplemental jurisdiction over the remaining Puerto Rico law claims (the "PR Claims"), and dismiss this case in its entirety, with prejudice.

## FACTUAL BACKGROUND

The following facts alleged in the 153-page Amended Complaint are relevant to this Motion.

### A.      The Segarra-Boerman Family

Don Felipe Segarra-Serra and his wife Doña Amelia Boerman-Marrero amassed significant wealth during their lifetime, AC ¶¶ 11, 12, 33, including through their joint control over the Felipe Segarra Investment Corp. ("FSIC"), which held extensive commercial real estate assets and other investments, id. ¶ 22.  They had two children, Titín and Plaintiff Doña Mildred.  Id. ¶ 2 n.1.  During their lifetimes, Don Felipe and Doña Amelia also established and contributed to a non-profit foundation presently named Fundación Segarra-Boerman e Hijos, Inc., otherwise known as FSB, the second Plaintiff in this action.  Id. ¶¶ 11, 12, 33-34.

### B.      The Defendants' Service To The Segarra-Boerman Family

For over thirty years, Alfredo Sr. and the Law Firm at which he was a partner regularly served as counsel to certain individual members of the Segarra-Boerman family and the for- and not-for-profit entities they created and contributed to.  AC ¶¶ 41-42, 52.  For instance, from 1993 to 2014, Alfredo Sr. served at various times as a member, director, and officer of Plaintiff FSB.  Id. ¶¶ 21, 66.  And in 2001,

2

Alfredo Sr. served as the executor of the will of Doña Amelia, Plaintiff Doña Mildred's mother, and distributed half of her $15 million-plus estate equally to Titín and Plaintiff Doña Mildred in accordance with the terms of that will.  *Id.* ¶¶ 53, 55-56.

Certain other entities and people affiliated with Alfredo Sr. also assisted in tending to the family's needs.  Alfredo Sr.'s daughter, Sofía, served as FSB's executive director.  RICO Case Statement ("RCS"), Dkt. 42 at 20.  Alfredo Sr.'s son, Alfredo Jr., served as president of both (i) MRE, a real estate management company which managed all of FSB and FSIC's real estate and commercial management investment activities, including maintaining the books and records, RCS at 25, and (ii) MMC, a management company that "provided administrative, business and real estate management services" to FSB and FSIC, *id.* at 23, 26-27; AC ¶ 26.  Similarly, QC, Alfredo Sr.'s colleague and cousin, worked at the Law Firm, including in connection with services to FSB.  AC at ¶ 24-25, RCS at 12, 18.

The Law Firm assisted Titín to prepare three separate wills in 1984, 1999, and 2005, none of which included a bequest to either of the Plaintiffs.  AC ¶¶ 42, 45, 64-65, 170-72; RCS at 34, 39.  In 1999, Alfredo Sr. and the Law Firm also assisted Titín to create another foundation—presently known as the "Titín Foundation"—to which Titín planned for almost fifteen years to leave the bulk of his estate.  AC ¶ 23.  Titín and Alfredo Sr., among others, served on the board of the Titín Foundation, *id.* ¶ 60; RCS at 5, 7, 16, whose existence and directorship was a matter of public record, AC ¶ 234.

### C.    The Purported Scheme And Specific Transactions

The Amended Complaint alleges that the Titín Defendants had a long-term scheme to divert the wealth of the Segarra-Boerman family to themselves, and that all the actions described in the Amended Complaint were directed toward that goal.  *See, e.g.*, AC ¶¶ 15, 30, 33-38, 49, 59, 91, 134, 223, 247.

#### 1.    The Cataño Land Deal

In 1997, FSB sought to make money by developing certain property it owned—the "Cataño Land"—which had been valued at $20 million.  AC ¶¶ 135-36.  Alfredo Sr., with the FSB Board's authorization, transferred the land to a company called Infinity in exchange for FSB's receipt of 50% of

the outstanding shares in Infinity, and then effected a joint venture with Famas, Inc. to develop the land in the hopes of turning a profit (the "Cataño Land Deal"). *Id.* ¶¶ 139, 141, 148.

At the time the deal was executed, Alfredo Sr. purportedly did not disclose, among other things, his own and Titín's relation to FSB's counterparties in the Cataño Land Deal.  AC ¶¶ 142,147.  On August 26, 2005, eight years after the Cataño Land Deal had closed, Alfredo Sr. voluntarily raised the issue of these potential conflicts at a FSB Board Meeting.  *Id.* ¶¶ 150-59.  These concerns regarding conflicts were, moreover, outlined and elaborated in a Conflicts Memo.[1]  *Id.* ¶¶ 150-59.  At that meeting, the FSB Board—comprising Titín, Plaintiff Doña Mildred, Don Herman (Doña Mildred's husband), MASH (Doña Mildred's daughter, who could not attend and gave Doña Mildred her proxy), Alfredo Sr., and QC—approved and ratified these past "participations, transactions and activities" despite the potential conflicts, except for Alfredo Sr., who abstained from voting.  *Id.* ¶¶ 160, 162, 165.

Ultimately, the land slated for development under the deal was declared a protected wetland, *id.* ¶ 168, and the contemplated residential development could not be consummated due to the participants' inability to get the necessary permits, *id.* ¶ 167.

## 2.    The FSIC Purchase

As noted above, FSIC is a real estate company with assets including "land used and developed for commercial purposes, and other investments."  AC ¶ 22.  In 1994, Alfredo Sr. began serving as a Director of FSIC and later became its President.  *Id.*; RCS at 7.  In 2005, Alfredo Sr. helped to facilitate Titín's purchase of Plaintiff Doña Mildred's 50% interest in FSIC (the "FSIC Purchase").  AC ¶¶ 94, 132.  The FSIC Purchase progressed as follows: *first*, an independent accounting firm rendered a valuation of FSIC's assets, *id.* ¶ 127; *second*, FSIC's Board approved the FSIC Purchase, *id.* ¶ 128, and

---

[1]  Plaintiffs imply that the Titín Defendants prepared the Conflicts Memorandum.  *See* AC ¶ 151 ("Among other admissions made in the Conflicts Memo [Alfredo Sr., QC, and the Law Firm] recognized, *in their own words . . .*") (emphasis added).  This is simply not true—an independent attorney prepared the Conflicts Memo.  While the Court must accept the Plaintiffs' allegations in the Amended Complaint as true, it need not give credence to bald, unsupported assertions, and the Titín Defendants invite the Plaintiffs to correct the record.

*third*, Plaintiff Doña Mildred parted with her interests in FSIC in return for "liquid assets" not described in the Amended Complaint, *id.* ¶ 129.

In assisting with the FSIC Purchase, Alfredo Sr. explicitly informed Doña Mildred that he was not acting as her counsel in that transaction, but as a friend. AC ¶ 111. Alfredo Sr. also suggested that Plaintiff Doña Mildred obtain her own counsel in connection with the FSIC Purchase, *id.* ¶ 124, which she did, *id.* ¶ 125. Plaintiff Doña Mildred now claims that: (i) despite Alfredo Sr.'s express disclaimer that "[i]t needs to be clear that my function in this transaction is as a friend of the parties and not as a lawyer," *id.* ¶ 111, she subjectively believed that Alfredo Sr. was acting as her attorney in connection with the FSIC Purchase, *id.* ¶ 123; (ii) her actual lawyers and advisors, neither of whom were employed by the Law Firm, were potentially conflicted, *id.* ¶¶ 97, 124-25, as was the independent accounting firm valuing FSIC assets, *id.* ¶ 127; and (iii) the consideration she received included "none of the long-term income producing commercial real property assets of FSIC," *id.* ¶ 128.

### 3.    The Inheritance Dispute

Titín died in 2013. AC ¶ 257. When the proceeds from the Third Will were distributed, Plaintiffs FSB and Doña Mildred learned that other members of the family and the Titín Foundation would be receiving bequests, but neither FSB nor Doña Mildred would. *Id.* ¶¶ 172-73. FSB and Doña Mildred came to believe that their failure to receive bequests originated with those persons charged with effectuating Titín's wishes, including Alfredo Sr. and his family. *See id.* ¶¶ 15, 28, 276, 294; RCS at 28. In that same year, Plaintiffs further became aware of the publicly available government records referencing the Titín Foundation and the roles Titín, Alfredo Sr., and others played in it. AC ¶ 234. FSB and Doña Mildred came to believe that the Titín Foundation was a "competitor," rather than an expression of Titín's independent vision and a fellow charity with a shared interest in the welfare of the people of Puerto Rico. *Id.* ¶¶ 28, 59. Ultimately, certain Titín Defendants resigned from their FSB positions as tensions rose to the surface regarding the existence of the Titín Foundation and the purported "competition" it posed. *Id.* ¶¶ 210, 216.

### D.     Martinal's Trademark

In 2002, FSB entered into the Martinal Administration Contract, which authorized MRE's employees and agents, including Alfredo Sr., Alfredo Jr., Sofía, and MMC (the "Authorized Defendants") to manage FSB.  AC ¶¶ 28, 68, 70, 268.  MMC operated under a similar arrangement to provide administrative, business, and real estate management services to FSB.  *Id.* ¶ 26.  Martinal had its own name and logo that included a portico graphic (the "Martinal Mark"), *id.*, and the Authorized Defendants, with FSB's knowledge, used both the FSB Mark and the Martinal Mark while managing FSB and acting on its behalf, *id.* ¶¶ 202-03.  For example, MMC's name and/or the Roman portico mark appeared on checks for FSB's donations because "FSB's checking account money was held in an interest-bearing account under the name of MMC."  RCS at 26.

The Martinal Administration Contract formalized the Authorized Defendants' authority to "provide[] advice and legal services to FSB to further the Segarra-Boerman Family's charitable pursuits," including use of the FSB Mark in charitable undertakings.  *See* AC ¶¶ 14, 70, 200-01.  Plaintiffs were well aware of the joint use of FSB's Mark with the Martinal logo, which included a Roman portico, from several years before the filing of the Complaint.  *Id.* ¶¶ 204, 208.  The Amended Complaint notes certain FSB directors' objections to FSB's use of the Martinal logo, *id.* ¶ 208, but nowhere cites to an instruction from FSB prohibiting the Authorized Defendants from using the Martinal portico graphics together with the FSB Mark.

In 2014, MASH sent a letter terminating the Martinal Administration Contract.  AC ¶ 292.  Plaintiffs do not allege that the Titín Defendants used the FSB Mark after these authorizing contracts were terminated, or after relations were severed between the Plaintiffs and the Titín Defendants.  Rather, Plaintiffs allege that acts constituting unfair competition occurred between 2004, *see, e.g.,* AC ¶¶ 483, 491, and 2014, *see, e.g., id.* ¶ 210, and admit that they learned of the most recent purported violation in 2015, *id.*; *see also* RCS at 25, two years before the Amended Complaint was filed.

6

###### E.       Settlement Discussions

During the summer and into the fall of 2016, Plaintiffs and three of the Titín Defendants, Alfredo Sr., the Titín Foundation, and FSIC (the "Breach Defendants") discussed the possibility of a settlement to resolve the Plaintiffs' claims under Civil RICO and Puerto Rico law.  AC ¶¶ 321-36; Defs.' Exs. 1-2. Specifically, the Breach Defendants discussed the possibility of a settlement with FSB and Doña Mildred through Federico "Friedel" Stubbe Arsuaga, AC ¶¶ 323, 328-29, the Breach Defendants' purported agent, *id.* ¶ 467.  There was no direct communication between the Plaintiffs and the Breach Defendants regarding a purported settlement.  *See id.* ¶¶ 322-36; 465-77.  Through this intermediary, Plaintiffs mentioned certain terms of a possible agreement in connection with an August 5, 2016 deadline.  *Id.* ¶¶ 327-28.  The Amended Complaint alleges that a settlement was reached, and Friedel sent a text message to MASH saying, "It's a deal.  Call me."  *Id.* ¶ 330.

Despite the purported settlement on August 5, settlement discussions continued.  On August 8, 2016, then-counsel to the Plaintiffs wrote to the Titín Defendants that "your invitation to *continue …* settlement discussions is hereby accepted on behalf of our clients."  Letter from Pls. to Titín Defs. (Aug. 8, 2016), Defs.' Ex. 1 at 2 (emphasis added) ("August 8 Letter").[2]  As of September 8, 2016, Plaintiffs sent another letter noting that they "write in furtherance of the settlement discussions" and rejecting a settlement offer by the Defendants.  Letter from Pls. to Titín Defs. (Sept. 8, 2016), Defs.' Ex. 2 at 1 ("September 8 Letter").  Two months later, Plaintiffs filed their initial complaint.  Dkt. 1.

## STANDARD OF REVIEW

Rule 12(b)(1) provides that a complaint will be dismissed if the court lacks subject matter jurisdiction.  When considering a motion under Rule 12(b)(1), the court must "treat[] all well-pleaded facts as true and draw[] all reasonable inferences in favor of the plaintiffs."  *Viqueira v. First Bank*, 140

---

[2]  While ordinarily a district court is limited to facts incorporated into the complaint, "[w]e have recognized an exception to this rule for documents the authenticity of which are not disputed by the parties [and] for documents central to plaintiffs' claim."  *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009) (internal marks omitted).  Plaintiffs cannot claim that settlement letters they sent *after* settlement was allegedly reached are not authentic, or not central to their claim.

F.3d 12, 16 (1st Cir. 1998).  But because "[f]ederal courts are courts of limited jurisdiction [and] possess only that power authorized by Constitution and statute," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), "[w]here subject matter jurisdiction is challenged under 12(b)(1), the party asserting jurisdiction bears the burden of demonstrating the existence of federal subject matter jurisdiction," *Gonzalez v. Otero*, 172 F. Supp. 3d 477, 496 (D.P.R. 2016) (citing *Skwira v. United States,* 344 F.3d 64, 71 (1st Cir. 2003)).

A complaint must also be dismissed if it fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss under Rule 12(b)(6), a court must engage in a two-step process under the context-based "plausibility" standard established by *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  First, the court must "accept as true all of the allegations contained in a complaint, discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action." *Medina-Padilla v. Piedmont Aviation Servces, Inc.*, No. CIV. 14-1048 DRD, 2015 WL 1033918, at *3 (D.P.R. Mar. 10, 2015) (internal citation and quotation marks omitted) (subsequent history omitted).  Second, the court must "determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint states a plausible claim for relief.  *Id.* (citations and quotation marks omitted).  "This second step is 'context-specific' and requires that the Court draw from its own 'judicial experience and common sense' to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate." *Id.* (citation omitted). Importantly, however, "[i]t is not … proper to assume that [the plaintiff] can prove facts that it has not alleged." *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Allegations of fraud, such as the RICO predicate acts of mail and wire fraud pleaded in the Amended Complaint, must also satisfy the heightened particularity requirements of Rule 9(b).  "[T]he Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally

imposed rule. One of the main purposes of the rule is to apprise the defendant of fraudulent claims and of the acts that form the basis for the claim." *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985) (emphasis in original). Rule 9(b) also requires that "[i]f the complaint involves multiple defendants, then each defendant's role must be particularized with respect to their alleged involvement in the fraud." *Rhone v. Energy N., Inc.*, 790 F. Supp. 353, 361 (D. Mass. 1991) (quotation marks omitted).

Similarly, a "complaint fail[s] to satisfy Rule 8" if it does not "articulat[e] the factual basis for *each* Defendant's liability." *Joseph v. Bernstein*, 612 F. App'x 551, 555 (11th Cir. 2015) (emphasis added); *see also Impac Warehouse Lending Grp. v. Credit Suisse First Boston Corp.*, No. SA CV 04-1234 AHS (CWX), 2006 WL 6935318, at *6 (C.D. Cal. June 20, 2006) ("Even under the relaxed pleading standing of Rule 8(a), a plaintiff must particularize its allegations against each defendant so as to put each defendant on notice of the allegations against it.") (subsequent history omitted).

## ARGUMENT

The Court does not have subject-matter jurisdiction over Plaintiffs' Civil RICO or Settlement Claims and, even if it did, Plaintiffs have failed to state any federal claim upon which relief can be granted. As none of the Plaintiffs' purported federal claims survive, this Court should decline to exercise supplemental jurisdiction over the PR Claims and should dismiss the Amended Complaint in full, with prejudice.[3]

## I.  PLAINTIFFS' CIVIL RICO CLAIMS FALL OUTSIDE THE SUBJECT-MATTER JURISDICTION OF THE COURT.[4]

This Court lacks subject matter jurisdiction over Plaintiffs' Civil RICO Claims because they impermissibly seek to reopen a will they never challenged. The "probate exception" to federal

---

[3]   Due to space constraints, this Motion does not substantively address all of Plaintiffs' claims arising under Puerto Rico law. For the same reason, this Motion does not include all arguments why Plaintiffs' federal claims should be dismissed. *See* Dkt. 47 (granting leave to file a 50-page motion to dismiss). The Titín Defendants reserve the right to plead additional arguments in future submissions as granted leave by the Court and/or at any hearing on this Motion.

[4]   An explanatory chart of each of the nine Civil RICO Claims and the sections of this Motion applicable to each is attached hereto as Defs.' Ex. 3.

jurisdiction "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate" and "precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Marshall v. Marshall*, 547 U.S. 293, 311-12 (2006); *see also Jimenez v. Rodriguez-Pagan*, 597 F.3d 18, 24 (1st Cir. 2010) ("divvying up an estate falls squarely within the probate exception"); *Lefkowitz v. Bank of N.Y.*, 528 F.3d 102, 104 (2d Cir. 2007) (affirming dismissal of tort claims related to maladministration of decedents' estates).  Even if a state probate court already has distributed the estate property, "federal courts have no business 'allocating property that [should be] in the custody of a state court, or interfering with'" that distribution.  *Irish v. Irish*, 842 F.3d 736, 742 (1st Cir. 2016) (citing 13E Wright & Miller, *Fed. Prac. and Proc.* § 3609.1 (3d ed.)); *Wisecarver v. Moore*, 489 F.3d 747, 751 (6th Cir. 2007) (dismissing damages claims where "a majority of the relief that Plaintiffs seek would involve disturbing [the decedent's] estate, which has already been probated").  When applying this exception, courts look "beyond the face of the complaint" and consider whether "plaintiffs are effectively asking the federal court to re-open and probate the will."  *Garcia v. Garcia Oronce*, No. CIV. 07-1840 GAG/MEL, 2009 WL 483127, at *4 (D.P.R. Feb. 24, 2009).

Here, the essence of Plaintiffs' Amended Complaint and the vast majority, if not entirety, of Plaintiffs' purported injury concern Titín's Third Will and Plaintiffs' failure to receive Titín's share of the Segarra-Boerman family wealth.  AC ¶¶ 170-76, 257-63.  Though Plaintiffs are careful not to directly challenge the Third Will—the word "probate" appears nowhere in the Amended Complaint— their real gripe is clear: Titín's Third Will "left nothing to his sister or FSB."  AC ¶ 172.  This concern is further evidenced by Plaintiffs' request for equitable and injunctive relief to protect their claimed interest in the $100 million they estimate was distributed through Titín's Third Will.  AC ¶¶ 464, 583-95, p. 152.  And, of course, they seek to triple their damages by styling their complaint as a federal RICO action.  But Plaintiffs were entitled to contest Titín's Third Will only in the Puerto Rico court that supervised the distribution of Titín's estate.  But they did not challenge it.  Plaintiffs' attempt to circumvent Puerto Rico's courts and re-open the Third Will "fall[s] squarely within the probate

exception," and accordingly, Plaintiffs' Civil RICO Claims should be dismissed for lack of federal subject-matter jurisdiction.  *Garcia*, 2009 WL 483127, at *4.[5]

## II.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER CIVIL RICO.

The Plaintiffs face a high bar in asserting claims under 18 U.S.C. § 1961 *et seq.* ("Civil RICO"). "Congress originally enacted RICO to help fight organized crime and combat enduring criminal conduct."  *Puerto Rico Clean Energy Corp. v. Hatton-Gotay*, 115 F. Supp. 3d 288, 292 (D.P.R. 2015) (citing *Home Orthopedics Corp. v. Rodriguez*, 781 F.3d 521, 527 (1st Cir. 2015)).  Accordingly, "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation" because the "mere assertion of a RICO claim … has an almost inevitable stigmatizing effect on those named as defendants."  *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990).

Despite the staggering length of their Amended Complaint and associated filings, neither FSB nor Doña Mildred have come close to meeting Civil RICO's high bar.  Plaintiffs' nine Civil RICO claims (Counts 1 through 9):  (a) have been lodged without proper standing, (b) fail to meet numerous requirements under Civil RICO, including with respect to (i) a pattern of racketeering activity, (ii) the specific subparagraphs of 18 U.S.C. § 1962, and (iii) a viable RICO enterprise, and (c) are time-barred. Accordingly, each of the Plaintiffs' nine counts under Civil RICO (as well as certain of the individual harms described therein) must be dismissed for multiple independent reasons.

### A.    Plaintiffs Lack Standing to Assert RICO Claims.

Plaintiffs lack standing to assert a claim under Civil RICO.  To lodge a claim under Civil RICO, a plaintiff must satisfy four factors:  (1) the plaintiff must be a "person" (2) who sustains injury (3) to its "business or property" (4) "by reason of" the defendant's violation of 18 U.S.C. § 1962.  18 U.S.C.

---

[5]  This Court's order in *Tartak v. Del Palacio*, No. 3:09-cv-01730 (DRD) (Oct. 4, 2010), Dkt. 63, while helpful in some respects, was not final and is not dispositive on the facts presented here. Notably, in the *Tartak* order, the Court called for a hearing and invited the defendants to file a set of objections explaining how the plaintiffs' claims were barred by the probate exception.  *Tartak* Order, pp. 19-20 (Oct. 4, 2010).  The very next day after defendants filed their objections, the plaintiff voluntarily dismissed her case, leaving unresolved the probate exception issues.  *Tartak*, Dkts. 67 (Nov. 2, 1010) (defendants' objections), 69 (Nov. 3, 2010) (plaintiffs' voluntary dismissal).

§ 1964(c).  Put otherwise, a RICO plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."  *Pujol v. Shearson/Am. Exp., Inc.*, 829 F.2d 1201, 1205 (1st Cir. 1987) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495-96 (1985)).  FSB and Doña Mildred lack standing because they do not allege and cannot prove either cognizable harm to their business or property or that the Titín Defendants' purportedly violative conduct (*i.e.*, mail and wire fraud) proximately caused that injury.

### 1. Plaintiffs' Purported Injuries Are Not Cognizable Under Civil RICO.

The Plaintiffs cannot establish an actual injury to their business or property.  *See* 18 U.S.C. § 1964(c); *DeMauro v. DeMauro*, 115 F.3d 94, 96 (1st Cir. 1997) ("[W]e begin with the threshold issue . . . whether the plaintiff has made out a claim of 'injury' to her 'business or property,' as is required for a civil RICO damages action.").  "[E]very court that has addressed this issue has held that injuries proffered by plaintiffs in order to confer RICO standing must be 'concrete and actual,' as opposed to speculative and amorphous."  *Evans v. City of Chi.*, 434 F.3d 916, 932 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013).  Pleading a non-speculative injury necessarily requires a demonstration that the Plaintiffs actually possessed a property interest capable of injury.  *See Garcia-Monagas v. W. Holding Co., Inc.*, No. Civ. 07-1217 ADC, 2009 WL 483146, at *15 (D.P.R. Feb. 25, 2009) ("[E]ach cause of action [under civil RICO] . . . depends on the assumption that plaintiffs have a cognizable ownership interest in . . . contested property"), *aff'd sub nom. Garcia-Monagas v. De Arellano*, 674 F.3d 45 (1st Cir. 2012); *see also Zareas v. Bared-San Martin*, 209 F. App'x 1, 2 (1st Cir. 2006) (dismissing RICO claims because, among other things, there is no alleged injury to property when a plaintiff "has no ownership interest in the property"); *Lincoln House, Inc. v. Dupre*, 903 F.2d 845, 847 (1st Cir. 1990) (dismissing plaintiff's civil RICO claim because the damages were "wholly contingent upon . . . success in a separate case in another court, making [the] claim of damages, at this point, purely speculative").

The Plaintiffs' claimed injuries—including, but not limited to their failure to inherit under the Third Will, the alleged interference with FSB's mission, the supposed misappropriation of "intangible property," and the purported loss from the FSIC sale—are not cognizable under Civil RICO.[6]

(a)    <u>Plaintiffs' Claims Of Failure To Inherit Under Titín's Will Are Not Cognizable Injuries Under Civil RICO.</u>

Plaintiffs lack standing to allege injury from their purported failure to inherit under Titín's Third Will because they cannot demonstrate that they ever possessed a property interest in the proceeds of Titín's estate, or that they suffered any "concrete and actual" injury to that interest. The Amended Complaint contains no allegation that the Plaintiffs were actually due to receive property from Titín's Estate under the Third Will or that the Third Will is invalid. *See* AC ¶¶ 172-73 (neither of the Plaintiffs received a request under the Third Will). Instead, Plaintiffs imply, in an entirely conclusory fashion, that Titín was somehow not free to dispose of his own property and was compelled to bequeath it to Plaintiffs. Plaintiffs refer to Titín's money as "patrimony" belonging to *Doña Mildred*, RCS at 39, "what was and still should be the Segarra-Boerman Family wealth," AC ¶ 302, and declare that "[a]ll of these assets came from the Segarra-Boerman Family wealth, for Titín had never worked nor derived any income from work," *id*. ¶ 299. They further refer to the Third Will as "divert[ing] from the Segarra-Boerman Family and from FSB ultimately to the Titín Foundation" the "Segarra-Boerman Family Wealth." RCS at 34. These rhetorical flourishes are, of course, nonsense—Titín was free to do what he liked with his money and was under no obligation to leave it to either FSB or Doña Mildred. *See* 31 L.P.R.A. § 2362 (limiting "forced heirs" entitled to bequests under Puerto Rico law to legitimate

---

[6]   In a transparent attempt to evade dismissal, the Plaintiffs' description of their purported RICO injuries in the RICO Case Statement rambles over six pages and fails entirely to state the particularized allegations required in a RICO Case Statement. RCS at 76, 33-39; *see O'Ferral v. Trebol Motors*, 45 F.3d 561, 563 (1st Cir. 1995) (noting that the purpose of the case statement was to "flesh out and particularize the complaint" and affirming this District's imposition of sanctions against attorney who filed a RICO case statement which was "extensive but… failed substantially to bolster the general claims of fraud"). While the Titín Defendants have attempted to respond despite this deliberate vagueness, they reserve the right to request to supplement this Motion with any new purported injury the Plaintiffs might allege in their Opposition.

13

children, legitimate parents, and surviving spouses).  Little wonder, then, that Plaintiffs define their purported property interest in the proceeds of Titín's estate, and hence their "injury," only by speculating what they *might* have received if (i) Titín had drafted his Third Will to favor them (which he did not do in three wills spanning over twenty years), *see* AC ¶¶ 45, 65, 172, or (ii) Third Will had been deemed invalid (which it has not been, nor has it ever been challenged).[7]

As neither FSB nor Doña Mildred possessed a non-hypothetical property interest in the proceeds of Titín's Estate, neither can demonstrate how any of the Titín Defendants deprived them of that interest in the manner required to assert a claim under Civil RICO.  *See Circiello v. Alfano*, 612 F. Supp. 2d 111, 114 (D. Mass. 2009) ("[Plaintiff's] theory . . . that as the beneficiary of her now deceased mother's estate, she would have inherited . . . [claims for damages] . . . is based on a series of 'what ifs'" including that plaintiff might not be disinherited; however "[i]f any proposition under RICO is well-established, it is that a RICO damages claim may not be based on mere speculation"); *Vasarhelyi v. Vasarhelyi*, No. 09 C 02440, 2012 WL 3308487, at *8 (N.D. Ill. Aug. 13, 2012) (granting summary judgment to RICO defendants because "a person who claims a beneficial interest based on the notion that he *might* stand to inherit property in the future" lacks standing) (emphasis in original); *cf. Summerfield v. Strategic Lending Corp.*, No. C09-02609 HRL, 2011 WL 845946, at *3-4 (N.D. Cal. Mar. 8, 2011) (dismissing RICO claim by beneficiaries of revocable trust because, "[the] interest in [the trust] is merely potential and can evaporate in a moment at the whim of the [trustor]," thus the named beneficiaries had "no present interest in the funds contained in the trust [sufficient to] claim . . . injury to his business or property").

The Southern District of New York's recent decision in *Lynch v. Amoruso* confirms this point under similar circumstances to those described in Plaintiffs' Amended Complaint.  No. 16-CV-1270

---

[7]  Plaintiff Doña Mildred offers that she would have been Titín's sole beneficiary had he died intestate.  AC ¶ 48.  But Titín did not die intestate, Mildred has not challenged the Third Will, and if she had successfully challenged it, the Second Will would control and would still not bequeath her a "patrimony."  Of course, Plaintiff FSB cannot even make such an argument.

(AJN), 2017 WL 543232, -- F. Supp. 3d --, at *6 (S.D.N.Y. Feb. 8, 2017).  In *Lynch*, plaintiff Scarola alleged that her uncle's attorneys had engaged in a RICO scheme to defraud her in connection with her uncle's will.  Scarola claimed that by facilitating her uncle's conveyance of his house to his wife during their lifetimes, her uncle's attorneys had taken advantage of his failing health and "severe Alzheimer's" and executed a transfer without his permission that removed the home from his estate, thus causing Scarola harm.  *Id.* at *1-2.  The district court found that Scarola had failed to plead an injury to business or property cognizable under Civil RICO because she had no interest in the property transferred: "Scarola, however, never asserts that she had any interest in [her uncle]'s home or any of his other property.  Nor could Scarola make such an allegation, given that the will approved by the Westchester County Surrogate's Court states that all of Carlton's property was to be divided among his six children (not his nieces or nephews), and *res judicata* would bar Scarola from challenging the validity of this will."  *Id.* at *6 (citation omitted).  Here too, the Plaintiffs have not and cannot assert that they were entitled to a bequest under the Third Will, *see* AC ¶ 172 (the Third Will "left nothing to [Doña Mildred] or FSB"), nor have they challenged the Third Will's validity.  Therefore, for the same reasons as in *Lynch*, Plaintiffs fail to state a cognizable injury.

As Plaintiffs have not pled and cannot establish any interest in Titín's estate, they cannot show any RICO injury from their failure to inherit, and thus lack standing to bring claims under Civil RICO.

> (b)      Plaintiffs' Claims of Interference With FSB's Mission Are Not
>            Cognizable Injuries Under Civil RICO.

Although, as noted above, Plaintiffs' descriptions of their injury are unclear at best, FSB appears to allege additional injury based on its "protectable business interest in fulfilling [its] legitimate purpose," RCS at 36, and similarly, Doña Mildred claims "a protectable business and property interest in her charitable and commercial activities through FSB and in being able to fulfill FSB's legitimate purpose," *id.* at 38.  But purported interference with a charity's mission is not an injury cognizable under Civil RICO.  Injuries cognizable under Civil RICO must consist of "concrete financial loss."  *World*

*Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 520-21 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009) (internal citations omitted); *see also Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003) (to establish standing under Civil RICO, a plaintiff must establish "clear and definite" damages).  A vague injury to "fulfilling a legitimate purpose" does not suffice to confer standing under Civil RICO.  Moreover, even if Plaintiff FSB did have a claim for frustration of its purpose (which it does not), Plaintiff Doña Mildred cannot assert her own claim for the injury purportedly inflicted *on FSB*.  *See Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268–69 (1992) ("[A] plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [i]s generally said to stand at too remote a distance to recover.").  As Plaintiffs have failed to plead any financial loss with respect to this purported injury and Doña Mildred has failed to show standing to sue for any such injury, Plaintiffs' claims of interference with FSB's mission do not confer standing on either Plaintiff for the Civil RICO Claims.

(c)    <u>Plaintiff FSB's Claim Of Interference With Its Intangible Property Is Not A Cognizable Injury Under Civil RICO.</u>

Plaintiff FSB also appears to claim that it suffered from the "misappropriat[ion of its] intangible property … in the Puerto Rico charitable marketplace."  RCS at 36.  While, again, it is not entirely clear what this means, an injury to "intangible property" by its very definition is not cognizable under Civil RICO.  *See, e.g.*, *Lynch,* 2017 WL 543232, at *6 (dismissing plaintiff's claim that she "suffered a loss of intangible property" because "RICO only protects injury to the plaintiff's business or property") (citations omitted); *see generally World Wrestling*, 530 F. Supp. 2d at 520-21 (injuries cognizable under Civil RICO must consist of "concrete financial loss") (internal citations omitted).  As an inchoate injury to "intangible property" is antithetical to this "concreteness" requirement, FSB's claim of alleged interference with its intangible property is not cognizable harm under Civil RICO, and cannot confer standing on FSB for the Civil RICO Claims.

16

(d)    Plaintiff Doña Mildred's Claim Of Injury In The FSIC Sale Is Not Cognizable Under Civil RICO.

Plaintiff Doña Mildred's claim of injury in connection with the FSIC sale suffers from the same failure to state an injury cognizable under Civil RICO.  *See* AC ¶ 93.  In describing the FSIC transaction in 2005, the Amended Complaint describes her injury as "receiv[ing] none of the long-term income producing commercial real property assets of FSIC in exchange for selling her interest in FSIC."  *Id.* ¶ 129.  But the Amended Complaint fails to describe how, or even if, the "liquid assets" she did receive, *see id.* ¶ 128, which she clearly believed sufficient at the time, were in fact insufficient and constituted an injury.  This silence is unsurprising, as Plaintiff Doña Mildred's *post facto* seller's remorse at the specific compensation she received, *see id.* ¶ 129, fails to state a "concrete financial loss" required to state a claim under Civil RICO.  Accordingly, this injury cannot confer standing under Civil RICO.

As Plaintiffs have not pled and cannot establish a cognizable RICO injury, the Civil RICO Claims must be dismissed with prejudice.

## 2.    Plaintiffs Have Failed To, And Cannot, Establish That The Titín Defendants Proximately Caused Plaintiffs' Alleged Injuries.

The Plaintiffs have also failed to establish their standing to sue by showing that any purported RICO injury was directly and proximately caused by the Titín Defendants' wrongful conduct.  *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006); *Holmes v. Sec. Invest. Prot. Corp.*, 503 U.S. 258, 266-68 (1992).  Civil RICO claims are subject to dismissal at the pleading stage if such proximate causation is absent.  *See Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 17-18 (2010); *Anza*, 547 U.S. at 457-60.  "Proximate" causation requires a relationship between the RICO violation and the injury closer than mere "but for" causation; the Plaintiffs also must show "some direct relation between the injury asserted and the injurious conduct alleged."  *See Gabovitch v. Shear*, 70 F.3d 1252 (1st Cir. 1995) (citation omitted).  In evaluating the degree of closeness required between the purportedly bad act and the injury, "[t]he general tendency of [Civil RICO], in regard to [the connection between causation and damages], is not to go beyond the first step."  *Hemi Group, LLC*, 559 U.S. at 10.

"[T]he requirement of a concrete financial loss proximately caused by the wrongful conduct of RICO defendants is not easily met." *World Wrestling*, 530 F. Supp. 2d at 520-21.  As shown below, Plaintiffs have not adequately pled and cannot establish a direct causal link between Plaintiffs' purported RICO injury and the purportedly wrongful predicate acts alleged in the Amended Complaint. Accordingly, Plaintiffs lack standing to assert claims under RICO, and these claims must be dismissed.

Neither Plaintiff has alleged how any supposed misrepresentations proximately caused their failure to receive bequests under Titín's Third Will.  Indeed, it is unclear how any purported misrepresentations *to FSB, Doña Mildred, or third parties* could possibly have "proximately caused" reduced inheritance *from Titín*.  Even had Alfredo Sr. disclosed the Third Will's contents to FSB, Doña Mildred, or third parties—which he was under no duty to do, and in so doing, would likely have violated the attorney-client privilege[8]—this would have had no effect on the provisions of the Third Will. Rather, FSB and Doña Mildred would have had to convince Titín to change his mind regarding the Third Will, which there is no assurance would have occurred.  Indeed, it is undisputed that Titín made up his mind regarding provisions for FSB and Plaintiff Doña Mildred long before he executed his Third Will, as he did not treat either Plaintiff more favorably in his two prior wills.  *See* AC ¶¶ 42, 45, 64-65, 170-72.  Titín's untrammeled authority to dispose of his assets as he wished constitutes an intervening cause that breaks any proximate causation between the purportedly wrongful act (*i.e.*, purportedly failing

---

[8]   "Numerous cases have held or recognized, *apparently without exception*, that where a will has been prepared by an attorney, its contents are protected from disclosure or surrender, at least during the testator's lifetime, by the attorney-client privilege."  Thomas, Tim A., *Involuntary Disclosure Or Surrender Of Will Prior To Testator's Death*, 75 A.L.R. 4th 1144 (Originally published in 1989) (emphasis added); *see also United States v. Osborn*, 409 F. Supp. 406, 410 (D. Or. 1975) ("'[I]t can hardly be doubted that the execution and especially the contents are impliedly desired by the client to be kept secret during his lifetime, and are accordingly a part of his confidential communication.  It must be assumed that during that period the attorney ought not to be called upon to [d]isclose even the fact of a will's execution, much less its tenor."), *aff'd in part, vacated in part, rev'd in part on other grounds*, 561 F.2d 1334 (9th Cir. 1977); *cf.* 4 L.P.R.A. § 2071 (a notarial protocol on which open wills like the Third Will must be recorded "shall be secret and shall only be examined according to the provisions of this chapter or by judicial order issued pursuant to the provisions of this chapter."); 4 L.P.R.A. § 2065 (persons possessing a right as a result of a deed are entitled to receive a copy of that deed, except with respect to "wills executed prior to the death of the testator").

to disclose the existence and contents of the Third Will or the Titín Foundation) and the injury purportedly suffered (*i.e.*, failing to inherit from Titín). *See Circiello v. Alfano*, 612 F. Supp. 2d 111, 114 (D. Mass. 2009) (showing of RICO injury was insufficient because, among other things, multiple intervening events, including disinheritance by a testator, could have broken the causal chain); *Vasarhelyi*, 2012 WL 3308487, at *8 (similar).

Plaintiffs' closely related claim (pled only in the RICO Case Statement) that the Titín Defendants "cause[d] Titín to sign three wills beginning in 1984 that were structured in such a way that FSB and Doña Mildred would be disserved in betrayal of the founders intent so that the Titín Foundation . . . would become the sole and exclusive recipient of the bulk of the Segarra-Boerman Family wealth . . ." must also be dismissed for the same reasons cited above. RCS at 39. Even if true (which it is not), there is no proximate causation between the cited incidents of mail and wire fraud directed *to FSB, Mildred¸ and third parties*, *see generally* AC Ex. A, Dkt. 41-1 ("Ex. A") and the purported injury of a Third Will that cut out the Plaintiffs. In addition, this conclusory assertion fails to state a cognizable RICO injury, as described above in Section II.A.1(a), because regardless of the "founders'" intent, Plaintiffs still cannot state any business or property interest in the proceeds of Titín's estate.

The Plaintiffs' other claimed injuries and predicate acts fare no better. Plaintiffs' do not and cannot show, for instance, how any of the Titín Defendants' purported failures to disclose alleged conflicts "proximately caused" the Plaintiffs any injury. *See, e.g.*, Ex. A, ¶¶ 62, 66. While Plaintiffs may claim that if the purported conflicts had been disclosed, they would have acted differently to avoid injury (whatever that injury may be), this textbook "but for" causation necessarily adds an extra step between the purported omission and the injury—namely, Plaintiffs' acting differently in light of the disclosure. This cannot suffice for "proximate causation," which does not reach beyond the first link in the causal chain. *Hemi Group, LLC*, 559 U.S. at 10.

This reason combines with others to doom many of the other potential injuries in the Amended Complaint. For instance, Plaintiffs cannot show that the Titín Defendants' purported predicate acts had

*any* connection to, let alone "proximately caused," an injury in respect to the Cataño Land Deal.  As a general matter, the Plaintiffs cannot show any proximate causation between purportedly conflicted communications and injury.  And as a specific matter, the Amended Complaint describes the Cataño Land Deal as having been executed on May 30, 1997, AC ¶ 148, but Plaintiffs' Exhibit A includes only three purported predicate acts before that date, and the Plaintiffs' own description of the facts fails to show any relation whatsoever to the Cataño Land Deal.  Ex. A. ¶¶ 1-3 (each relating to checks written in January 1997).  Moreover, while the Plaintiffs describe, in general terms, "hundreds of thousands of dollars and possibly more" in payments from FSB to other entities to pursue development of the Cataño Land itself, *see* AC ¶¶ 166-67, they fail to tie *any* purported injury to the Titín Defendants' purported predicate acts.  *See* Ex. A.  Instead, the Amended Complaint admits that losses on the Cataño Land Deal stemmed from the government's declaration of the relevant portion of the Cataño Land as "a protected wetland."  AC ¶ 168.  Plaintiffs thus not only fail to allege proximate causation between specific predicate acts and specific concrete injury, but also admit that other events not attributable to the Defendants intervened to cut off any such proximate causation.

Plaintiffs' abject failure to allege proximate causation is only highlighted by the deficiencies and evasions in their RICO Case Statement.  This Court's RICO Case Statement Standing Order requires Plaintiffs to flesh out the proximate causation requirement by "[d]escrib[ing] the relationship between the alleged injury and violation of the RICO statute."  *Id.* at 3, ¶ 16.  But in response to this simple and specific question, Plaintiffs—who refused to comply with the Standing Order for months—provide only two paragraphs entitled "RICO Injury" in which they (i) list broad categories of purported acts (*e.g.*, "Defendants communicated manipulative, fraudulent and omissive statements to Plaintiffs and other members of the Segarra-Boerman and Segarra-Stubbe Families"), and (ii) state in a conclusory manner, without citations, that "[t]he direct causal relationship between the alleged injury and the violation of the RICO statute are set forth in the Amended Complaint and as described further in response to Information Request No. 4 above."  RCS at 76-77.  Moreover, at no point does Plaintiffs' response to

"Information Request No. 4" detail *any* "relationship between the alleged injury and the violation of the RICO statute," *see* RCS 33-42; in fact, the word "result" or its derivatives appear nowhere in Plaintiffs' response to Information Request No. 4, and the word "cause" or its derivatives only appear three times, each in contexts other than seeking to establish a relation between a purported injury and a RICO act. *See id.* at 35, 39.  Evasive responses such as these not only run counter to the purpose of a RICO Case Statement—"to flesh out and particularize the complaint," *O'Ferral v. Trebol Motors*, 45 F.3d 561, 563 (1st Cir. 1995)—but also highlight the Plaintiffs' failure and inability to establish proximate causation.

As Plaintiffs have not adequately pled and cannot establish that the Titín Defendants' conduct proximately caused Plaintiffs any injury, the Civil RICO Claims must be dismissed with prejudice.

**B.     Plaintiffs Have Failed To Meet The "Pattern" Requirement.**

Plaintiffs also fail to state a RICO claim because they fail to allege and cannot establish a "pattern of racketeering activity" under Civil RICO.  18 U.S.C. § 1962(a)-(c).  To show a "pattern of racketeering activity" sufficient to state a Civil RICO claim, a plaintiff must demonstrate "continuity" among the predicate offenses.  *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 n.14 (1985) (emphasis removed).  To show such continuity, the Plaintiffs must demonstrate that "the defendants' predicate acts 'either amount to or pose a threat of continuing criminal activity.'"  *Lynch*, 2017 WL 543232, at *5 (quoting *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008)).  "The Supreme Court has identified two methods for establishing continuity: (1) the 'closed-ended' approach and (2) the 'open-ended' approach."  *Fabrica de Muebles J.J. Alvarez, Inc. v. Westernbank de Puerto Rico*, No. CIV 09-1558 GAG, 2009 WL 4730776, at *8 (D.P.R. Dec. 4, 2009).  Plaintiffs fail to satisfy the continuity requirement through either of these approaches.

**1.     Plaintiffs Fail To State A Claim Of "Closed-Ended Continuity"**

Plaintiffs cannot establish closed-ended continuity.  The First Circuit "firmly rejects RICO liability where the alleged racketeering acts … taken together … comprise a single effort to facilitate a single financial endeavor."  *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 19 (1st Cir. 2000)

(internal quotation marks omitted). "The pattern requirement thus helps to prevent ordinary business disputes from becoming viable RICO claims, with defendants subject to treble damages, simply because the parties used the United States mails or a fax machine to transmit contested financial documents." *W. Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 636–37 (D.C. Cir. 2001); *see also Menasco, Inc. v. Wasserman,* 886 F.2d 681, 684-85 (4th Cir. 1989) (declining to find a RICO pattern where an individual allegedly defrauded two corporations in an oil and gas prospecting venture, because the perpetrator's "actions were narrowly directed towards a single fraudulent goal [and] involved a limited purpose" and because "[i]f we were to recognize a RICO claim based on the narrow fraud alleged here, the pattern requirement would be rendered meaningless."). Accordingly, the First Circuit has repeatedly and squarely rejected efforts to show continuity where the scheme pled aims to wrest control of a limited set of assets from a limited number of plaintiffs. *See, e.g., Efron*, 223 F.3d at 18-19, 21 (rejecting RICO claim where acts of deception "were aimed at the single goal of transforming the ownership of the [business]" and harmed only three named victims, because "the acts as alleged comprise a single effort, over a finite period of time, to wrest control of a particular [business venture] from a limited number of [victims] [which] cannot be a RICO violation"); *Giuliano v. Fulton*, 399 F.3d 381, 390 (1st Cir. 2005) (affirming dismissal of RICO claim where the "only injury [suffered by the two plaintiffs] was the loss of the property and the accompanying racetrack. . . [t]hus, this case falls squarely within our precedent rejecting closed-ended continuity.").

Here, despite their impermissible attempts to lodge claims on behalf of the dead, *see* RCS 39-42 (No. 4(c)-(e)), Plaintiffs allege *at most* two victims (themselves), and the Amended Complaint alleges a single financial endeavor to "plunder[] the Segarra-Boerman Family's wealth." *See* AC ¶¶ 2-5; *see also id.* ¶ 39 (describing Alfredo Sr.'s "scheme to defraud the Segarra-Boerman Family," the objective of which was "to acquire control of the Segarra-Boerman wealth"); ¶ 221 (describing "Defendants' overarching scheme to defraud Plaintiffs of the Segarra-Boerman Family wealth"); ¶ 91 (describing

22

Alfredo Sr.'s "long term scheme to defraud Plaintiffs"). Plaintiffs therefore fail to allege and cannot establish closed-ended continuity. *See Efron*, 223 F.3d at 19.[9]

### 2.   Plaintiffs Fail To State A Claim Of "Open-Ended Continuity"

Plaintiffs also fail to allege open-ended continuity. Open-ended continuity may be satisfied by showing that the "racketeering acts themselves include a specific threat of repetition extending indefinitely into the future [or] ... are part of an ongoing entity's regular way of doing business." *Giuliano v. Fulton*, 399 F.3d 381, 387 (1st Cir. 2005) (citation omitted). Courts dismiss allegations of "open-ended continuity" that are insufficiently pled, such as where a complaint alleges only a "hypothetical possibility of further predicate acts." *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1264 (D.C. Cir. 1995).

Here, the Amended Complaint fails to state a claim that the Titín Defendants' purported scheme to control the "Segarra-Boerman Family's wealth" is ongoing; rather, they allege that it has already been completed. *See, e.g.*, AC at 82 ("[Alfredo Sr.] Puts the Finishing Touches on the Coup and Takes Control of $50.3 Million"), 84 ("Defendants Reign over the Segarra-Boerman Family's Wealth with Self-Aggrandizing Flare [*sic*]"). Indeed, as the Defendants' relationship with Plaintiff FSB is long terminated, there can be *no* threat of such repetition. *See Giuliano v. Fulton*, 399 F.3d 381, 391 (1st Cir. 2005) (no threat of repetition posed by scheme to take control of a racetrack from single individual because "[o]nce achieved, the illegal scheme, as alleged, would end"); *Rojas-Buscaglia v. Taburno-Vasarely*, 39 F. Supp. 3d 208, 216-17 (D.P.R. 2014) (finding no threat of repetition in case involving a "single scheme, single injury, and single victim—one seemingly resulting from an intimate personal relationship gone sour"). Similarly, the Plaintiffs fail to state a non-conclusory claim that the purported scheme extends beyond the Segarra-Boerman family itself, or that an alleged 30-year, multi-generational

---

[9]   The Court should not confuse the length of Exhibit A with satisfaction of the pattern/continuity requirement. Its repetitive allegations—most of which concern mere nondisclosures or other alleged mail/wire fraud without any allegations of intentional misrepresentation or materiality—fail to qualify as predicate acts under RICO. The Titín Defendants reserve the right to explain why Plaintiffs' alleged predicate acts fail to qualify as such under Civil RICO.

fraud is part of any defendant entity's "regular way of doing business."[10]  Thus, by stating only a "hypothetical possibility of further predicate acts," the Amended Complaint fails to state a claim of open-ended continuity."[11]  *Edmondson*, 48 F.3d at 1264.

### C.   Plaintiffs Fail To State And Cannot Establish Claims Under Sections 1962(a) or (b).

Plaintiffs fail to state a claim under Sections 1962(a) or (b).  This requires dismissal not only of those Counts which allege violation of Sections 1962(a) and (b) (*i.e.* Counts 6 and 8), but also of those which allege conspiracy to violate these sections under Section 1962(d) (*i.e.* Counts 5, 7 and 9).

### 1.   Plaintiffs' Claims Under Section 1962(b) Must Be Dismissed.

Plaintiffs fail to state a claim under Section 1962(b), and accordingly, Civil RICO Counts 6 and 8 must be dismissed.  To state a claim under Section 1962(b), Plaintiffs must "show that they were harmed by reason of [defendant's] acquisition or maintenance of control of an enterprise through a pattern of racketeering activity" and "prove . . . harm *beyond that resulting from the fraud which constituted the predicate act*."  *Compagnie De Reassurance D'Ile de France v. New England Reinsurance Corp.*, 57 F.3d 56, 92 (1st Cir. 1995) (emphasis added) (citation omitted).  As detailed above, Plaintiffs have failed to plead that they suffered *any* injury "resulting from" the Titín Defendants' purported predicate acts.  *See supra* Sections II.A-B.  But even if they had, Plaintiffs certainly have not and cannot specify *additional* injury *distinct* from the injury purportedly caused by the alleged predicate acts.  *See* RCS at 76 (No. 15); 33-39 (No. 4(a)-(b)) (failing to state any such separate injury).  Civil RICO Counts 6 and 8, based on Section 1962(b), therefore must be dismissed.

---

[10]   Plaintiffs' allegations regarding certain Titín Defendants engaging in a supposed scheme involving the Méndez-Bagur Foundations are unavailing because the Supreme Court of Puerto Rico ended that litigation in Alfredo Sr.'s favor in 2005, *see Mendez v. Fundacion*, 2005 TSPR 101 (P.R. July 11, 2005).  There can be no "realistic danger" of continuing harm from this past disagreement, and the Plaintiffs have pointed to no future issues arising from it.

[11]   To the extent Plaintiffs allege this case falls in the "middle ground" between closed- and open-ended continuity, that argument fails for the same reason closed-ended continuity does—"the First Circuit Court of Appeals has 'consistently declined to find continuity where the RICO claim concerns a single, narrow scheme targeting few victims.'"  *Rojas-Buscaglia v. Taburno-Vasarely*, 39 F. Supp. 3d 208, 214 (D.P.R. 2014) (citations omitted) (collecting cases).

**2.      Plaintiffs' Claims Under Section 1962(d) For An Alleged Conspiracy To Violate Section 1962(b) Must Be Dismissed.**

Plaintiffs also fail to state a claim under Section 1962(d) to the extent the conspiracy alleged is based on Section 1962(b), and accordingly, Civil RICO Counts 7 and 9 must be dismissed.  In order to state a claim under Section 1962(d), Plaintiffs must satisfy the same elements as a claim under Section 1962(b) and also show that the Titín Defendants "knowingly *entered into an agreement* to commit two or more predicate crimes."  *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 47-48 (1st Cir. 1991) (emphasis added); *see also Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999) ("To establish the existence of a RICO conspiracy, a plaintiff must prove 'the existence of an agreement to violate RICO's substantive provisions.'") (citation omitted).  When a complaint fails to state a claim with respect to the substantive RICO violation, including under Section 1962(b), a conspiracy claim based on that allegation also must be dismissed.  *See N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 203 (5th Cir. 2015) ("Since [Plaintiff] failed to properly plead a claim under §§ 1962(a), (b), or (c), it correspondingly failed to properly plead a claim under § 1962(d)."); *Efron*, 223 F.3d at 21 ("[I]f the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails."); *Miranda*, 948 F.2d at 45 n.4 (RICO conspiracy count "need not be discussed separately" when substantive claim is dismissed because the conspiracy claim "suffers from precisely the same infirmity"); *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999) ("A conspiracy claim under 18 U.S.C. § 1962(d) fails when the substantive claim . . . is without merit.").  As Plaintiffs' substantive claims for violation of Section 1962(b) must be dismissed, *see supra*, their additional claims under 1962(d) cannot survive.  But even if this fatal defect were ignored, the Plaintiffs' claims of a RICO conspiracy would fail because they fail to adequately allege the existence of that conspiracy and the participation of each of the Titín Defendants.  *Miranda*, 948 F.2d at 48 ("a RICO conspiracy claim that is alleged in wholly conclusory terms will not withstand a motion to dismiss."); *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 41 (1st Cir. 1991) ("[E]ach

defendant in a RICO conspiracy case must have joined knowingly in the scheme and been involved himself, directly or indirectly, in the commission of at least two predicate offenses.").

### 3. Plaintiffs' Claim Under Section 1962(d) Alleging A Conspiracy To Violate Section 1962(a) Must Be Dismissed.

Plaintiffs also fail to state a claim under Section 1962(d) to the extent the conspiracy alleged is based on Section 1962(a), and thus, Civil RICO Count 5 must be dismissed.  In order to state a claim under Section 1962(d), Plaintiffs must satisfy the same elements as a claim under Section 1962(a) and also show that the Titín Defendants "knowingly *entered into an agreement* to commit two or more predicate crimes." *Miranda*, 948 F.2d at 47-48 (emphasis added); *see also Cofacredit*, 187 F.3d at 244 ("To establish the existence of a RICO conspiracy, a plaintiff must prove 'the existence of an agreement to violate RICO's substantive provisions.'") (citation omitted).  When a complaint fails to state a claim with respect to the substantive RICO violation, including under Section 1962(a), a conspiracy claim based on that allegation also must be dismissed.  *See N. Cypress Med. Ctr. Operating Co.*, 781 F.3d at 203 ("Since [Plaintiff] failed to properly plead a claim under §§ 1962(a), (b), or (c), it correspondingly failed to properly plead a claim under § 1962(d)."); *Miranda*, 948 F.2d at 45 n.4 (RICO conspiracy count "need not be discussed separately" when substantive claim is dismissed because it "suffers from precisely the same infirmity"); *see also BancOklahoma*, 194 F.3d at 1103 ("A conspiracy claim under 18 U.S.C. § 1962(d) fails when the substantive claim . . . is without merit.").

Plaintiffs have failed to state a claim for the underlying violation of Section 1962(a), which in turn dooms Count 5, as it is based on a conspiracy to violate Section 1962(a).  Section 1962(a) "prohibits the use or investment of income from racketeering activity," *Rodriguez v. Banco Cent.*, 727 F. Supp. 759, 771 (D.P.R. 1989), which would require Plaintiffs "to prove that they were *harmed* by reason of . . . [the] use or investment of income derived from a pattern of racketeering activity." *Compagnie De Reassurance D'Ile de France*, 57 F.3d at 91.  To plead this claim, "the plaintiff must allege an injury resulting from the investment of racketeering income *distinct from* an injury caused by the predicate acts

themselves." *Id.* (quoting *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1188 (3d Cir. 1993)) (emphasis added).  As detailed above, Plaintiffs have failed to plead and cannot establish that they suffered any injury "resulting from" the Titín Defendants' purported predicate acts.  *See supra* Sections II.A-B.  But even if they had, Plaintiffs certainly have not and cannot specify *additional* injury *distinct* from the injury purportedly caused by the predicate acts.  *See* RCS at 76 (No. 15); 33-39 (No. 4(a)-(b)) (failing to state any such separate injury).  Civil RICO Count 5 must therefore be dismissed.

### D.   Plaintiffs Fail To Allege And Cannot Establish A Viable RICO Enterprise.

The Amended Complaint fails properly to allege—because Plaintiffs cannot establish—a viable RICO enterprise under Sections 1962(b) and (c), which requires dismissal of Counts 1-4 and 6-9.  The civil RICO statute makes it unlawful for a "person" through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of an "enterprise."  18 U.S.C. § 1962(b).  The statute separately makes it unlawful for a "person employed by or associated with" an "enterprise" to conduct or participate in the affairs of the enterprise through a pattern of racketeering or collection of unlawful debt.  18 U.S.C. § 1962(c).  "The 'enterprise' is not the 'pattern of racketeering activity;' it is an entity apart and distinct from the pattern of activity in which it engages [and] is, therefore, a separate element which must be proven."  *Libertad v. Welch*, 53 F.3d 428, 441 (1st Cir. 1995) (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)).  Plaintiffs fail to satisfy this element because they do not allege and cannot establish either the required distinctness between the persons that allegedly committed the violation and the enterprise through which the violation was committed or participation in the enterprise by the majority of the defendants; Plaintiffs also have impermissibly alleged multiple contradictory enterprises.

### 1.   Plaintiffs Have Not Pled Enterprises Distinct From The Titín Defendants

Plaintiffs fail to satisfy the enterprise element of civil RICO under Sections 1962(b) and (c) because they have double-counted the Titín Defendants as enterprises.  Sections 1962(b) and (c) require plaintiffs to distinguish between the "person" that committed the predicate RICO violation and the

"enterprise" through which the "person" conducted the violation. *See Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 448 (1st Cir. 2000) (the "person" alleged to be engaged in a racketeering activity must be distinct from the "enterprise"); *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). This requirement stems from the text of the RICO statute, which mandates a clear separation between the culpable party and the alleged racketeering enterprise—and forbids any claim to survive when the alleged enterprise is itself a defendant. *See* 18 U.S.C. § 1962(b), (c); *Compagnie De Reassurance D'Ile de France*, 57 F.3d at 92 ("§ 1962(c) claims may be dismissed 'when the enterprise and defendant, although facially distinct, are in reality no different from each other'"). Moreover, "corporations that are legally separate but 'operate within a unified corporate structure' and 'guided by a single corporate consciousness' cannot be both the 'enterprise' and the 'person' under § 1962(c)." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013); *see also Goldberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 97 CIV. 8779 (RPP), 1998 WL 321446, at *2 (S.D.N.Y. June 18, 1998) (requiring person/enterprise distinction for claim under § 1962(b) as well as § 1962(c)).

The First and Second Causes of Action should be dismissed because Plaintiffs allege that a defendant is also an enterprise. In the First Cause of Action, the Law Firm is listed as both the enterprise and inconsistently referred to as a defendant. Although Plaintiffs' RICO Case Statement claims that the "Law Firm is not both a liable 'person' and an 'enterprise' in this cause of action," RCS at 70, the Amended Complaint alleges that the "RICO Defendants"—a defined term that *includes* the Law Firm, AC ¶ 338—engaged in a pattern of racketeering. Such pleading is not permissible because "the same entity cannot do double duty as both the RICO defendant and the RICO enterprise." *Miranda*, 948 F.2d at 44-45. The Second Cause of Action under Section 1962(d) likewise fails because a conspiracy claim under 18 U.S.C. § 1962(d) fails when the substantive claim based on § 1962(c) is without merit. *See N. Cypress Med. Ctr. Operating Co.*, 781 F.3d at 203; *Efron*, 223 F.3d at 21; *BancOklahoma*, 194 F.3d at 1103.

The Third and Fourth Causes of Action should be dismissed because FSIC, a defendant under these Counts, RCS at 3, is a subsidiary of the Titín Foundation—the enterprise under the Third Cause of Action, AC ¶ 383—and Plaintiffs fail to plead facts showing how these corporate entities are distinct for purposes of RICO. *See Bessette*, 230 F.3d at 449 ("Without further allegations, the mere identification of a subsidiary and a parent in a RICO claim fails the distinctiveness requirement."); *see also FXDirectDealer, LLC*, 720 F.3d at 121 (prohibiting entities in certain corporate structures from serving as both an enterprise and a defendant). The Fourth Cause of Action under Section 1962(d) likewise fails because a conspiracy claim under 18 U.S.C. § 1962(d) fails when the substantive claim based on § 1962(c) is without merit. *See N. Cypress Med. Ctr. Operating Co.*, 781 F.3d at 203; *Efron*, 223 F.3d at 21; *BancOklahoma*, 194 F.3d at 1103.

The Sixth Cause of Action similarly should be dismissed because FSIC is alleged to be both a defendant and an enterprise. AC ¶¶ 422, 424. As explained above, this violates the person/enterprise distinction and warrants dismissal of the claim. The Seventh Cause of Action under Section 1962(d) likewise fails because a conspiracy claim under 18 U.S.C. § 1962(d) fails when the substantive claim based on § 1962(b) is without merit.

These fatal deficiencies are not the product of mere unartful pleading, however. They are a reflection of the futility of Plaintiffs' Civil RICO Claims and their inability to satisfy the most basic elements of the statute that they invoke. As two RICO commentators have observed, "[i]f the separate existence requirement is taken seriously […] plaintiffs cannot concoct fanciful association in fact 'enterprises' to evade the substantive restrictions imposed by the language of § 1962(c)." David B. Smith & Terrance G. Reed, *Civil RICO* ¶ 3.06 n.35 (2016). The Court should reject Plaintiffs' attempts to concoct fanciful enterprises and dismiss the Civil RICO Claims with prejudice.

## 2. Plaintiffs Have Not Pled Participation In The Enterprise By The Majority Of The Defendants

As if their inability to identify and define the RICO enterprise at issue were not enough, the Plaintiffs also fail to allege that each of the Titín Defendants was involved with the relevant "enterprise" in a manner justifying liability. Liability for conducting or participating in the conduct of the affairs of an enterprise under civil RICO is limited to persons who exercise a managerial role in the enterprise's affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 178-79 (1993). "[Section] 1962(c) cannot be interpreted to reach complete 'outsiders' because liability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Id.* at 185 (emphasis in original). Although "[t]he requirement of association with the enterprise is not strict," the defendant needs to be "aware of at least the general existence of the enterprise . . . and know about its related activities." *United States v. Marino*, 277 F.3d 11, 33 (1st Cir. 2002) (internal citations and quotation marks omitted). The Amended Complaint makes *no* showing of any such involvement. Instead, Plaintiffs' allegations of association with the respective enterprises are entirely conclusory. *See, e.g.*, AC ¶ 362 (alleging, with respect to Count 1, that "[e]ach of the RICO Defendants, FSIC and the Titín Foundation was employed by, or associated with, or participating in the affairs of, law partners acting jointly as officers and directors of FSB, FSIC, the Titín Foundation, and with the Law Firm Enterprise, for the same purposes of benefitting all" and that they were "directly or indirectly, in the management and operation of the affairs of the Law Firm Enterprise."). Where, as here, Plaintiffs fail to allege in anything but a conclusory fashion that the defendants "have been or are associated with any of the other [defendants] on an ongoing basis, or that they function with them as part of a continuing unit," dismissal of Civil RICO claims for failure to meet the statute's enterprise requirement is warranted. *Libertad v. Welch*, 53 F.3d 428, 444 (1st Cir. 1995).

Plaintiffs' allegations are insufficient to state a claim under Civil RICO, as they do not allege sufficient participation with respect to Alfredo Jr., QC, MRE, and MMC. After stripping away

Plaintiffs' hyperbolic claims of ill intent, Plaintiffs allege merely that these persons fulfilled their daily job activities.  Plaintiffs cannot simply describe the Titín Defendants' day-to-day job responsibilities and then assert, in conclusory fashion, that these commonplace obligations were part of a racketeering scheme.  *See In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 JMF, 2016 WL 3920353, at *13 (S.D.N.Y. July 15, 2016) ("[A] corporation acting in concert and in the ordinary course of business with its agents and employees is not a RICO enterprise."); *In re Mexico Money Transfer Litig. (W. Union & Valuta)*, 164 F. Supp. 2d 1002, 1015 (N.D. Ill. 2000) ("Such [a RICO] enterprise must be more than just a corporation, its employees, and its affiliates conducting the ordinary business of the corporation.").  The Amended Complaint also fails to state sufficient participation by Sofía, the Titín Foundation, and FSIC; in fact, it does not attribute any scheme whatsoever to them.

These failures—again, a symptom of the incurable disease that affects the Amended Complaint—require dismissal of the Civil RICO Claims with respect to all of the Titín Defendants, except Alfredo Sr., as they do not show that the other Titín Defendants were engaged in an enterprise's affairs regarding his purported scheme beyond their own affairs.  And as an enterprise cannot exist with the participation of a single individual alone, *Zahra v. Charles*, 639 F. Supp. 1405, 1407 (E.D. Mich. 1986) ("[T]he defendant could not be both a 'person' and an 'enterprise' so as to violate 18 U.S.C. § 1962(c), as he is merely a single individual"), the Civil RICO Claims must be dismissed in full.

### 3.    Plaintiffs May Not Plead The Existence Of Multiple Factually Contradictory Enterprises

The Plaintiffs cannot allege multiple enterprises in the alternative here because these assertions of fact are inconsistent with each other.  "While a litigant can plead in the alternative, liberal pleading rules have limits."  *Marquez v. Flextronics Am., LLC*, No. 12-61520-CIV, 2014 WL 4792997, at *4 (S.D. Fla. Sept. 25, 2014).  Thus, "[t]he Federal Rules expressly allow for pleading in the alternative.  However, Plaintiffs may not plead *facts* in the alternative."  *Almazan v. Almazan*, No. 14-CV-311 AJN, 2015 WL 500176, at *13 n.4 (S.D.N.Y. Feb. 4, 2015) (citation omitted) (emphasis in original).  In a

motion to dismiss, courts can and must take notice of contradictory claims which make the complaint implausible.  *See Ruotolo v. Fannie Mae*, 933 F. Supp. 2d 512, 518 (S.D.N.Y. 2013).

All of Plaintiffs' nine RICO counts must be dismissed because the Plaintiffs' enterprise pleadings have alleged contradictory *facts*.  Plaintiffs' allegations include seven (7) separate assertions of an enterprise, in varying combinations, including five (5) defendants serving in some causes of action as the enterprise, one (1) plaintiff claiming to have been an enterprise itself, and one (1) third-party alleged to be an enterprise.  AC ¶¶ 361 ("Law Firm Enterprise"), 412 ("Martinal RE Enterprise"), 413 ("Martinal MC Enterprise"), 423 ("FSB Enterprise"), 424 ("FSIC Enterprise"), 425 ("Titín Estate Enterprise"), and 446 ("Titín Foundation Enterprise").  Although the requirement to plead an enterprise is a creature of law, actually pleading an enterprise requires stating facts.  *See, e.g.*, *Mierzwa v. Safe & Secure Self Storage, LLC*, 493 F. App'x 273, 276 (3d Cir. 2012) ("*The facts alleged* do not plausibly imply a RICO enterprise.") (emphasis added); *Reisner v. Stoller*, 51 F. Supp. 2d 430, 442 (S.D.N.Y. 1999) ("[P]laintiffs at a minimum must *plead facts* demonstrating the existence of a criminal enterprise") (emphasis added).  As a result, *every time the Plaintiffs claim an enterprise "in the alternative,"* they undermine and contradict the previous facts they have alleged and make it less likely that such enterprises actually exist.  Thus, Plaintiffs' purported assertion of facts evidencing seven separate enterprises is facially implausible.

Plaintiffs' attempt to plead multiple enterprises in the alternative also must fail for more practical reasons.  Permitting plaintiffs to plead facts in the alternative toward the enterprise requirement would entirely gut that requirement by allowing plaintiffs to designate infinite numbers of enterprises in the hopes that one may stick.  Permitting this type of pleading would, moreover, unfairly disadvantage defendants, like the Titín Defendants, by robbing them of fair notice of what facts have been alleged and what they must defend against.  And finally, as noted above, Plaintiffs cannot ignore the factual inconsistencies they have created, nor overcome the legal threshold of plausibility that they are held to

in pleading facts toward the enterprise requirement.  The Plaintiffs have failed to plead and cannot establish an "enterprise" sufficient to allow the Civil RICO Claims to survive.

### E.       Plaintiffs' Claims Are Time-Barred.

Plaintiffs' Civil RICO Claims are also time-barred.  "[A] four-year statute of limitations applies to civil RICO claims" and the "First Circuit applies an 'injury discovery accrual rule,' which starts the four-year statute of limitations period 'when a plaintiff knew or should have known of his injury.'" *Home Orthopedics, Inc. v. Rodríguez*, No. CV 11-1591 DRD, 2012 WL 12533035, at *4 (D.P.R. Sept. 30, 2012) (Domínguez, J.), *aff'd sub nom. Home Orthopedics Corp.*, 781 F.3d 521.  "[D]iscovery of the injury, *not* discovery of the other elements of a claim, is what starts the clock."  *Lares Grp., II v. Tobin*, 221 F.3d 41, 44 (1st Cir. 2000) (emphasis added) (quoting *Rotella v. Wood*, 528 U.S. 549, 555 (2000)); *see also Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 251 (3d Cir. 2001) ("[A] RICO claim accrues when the plaintiffs should have discovered *their injuries*" in contrast to "when the plaintiffs should have discovered the misrepresentations and wrong-doing of the defendants.").  "[T]he question of inquiry notice need not be left to a finder of fact" and may be decided on a motion to dismiss.  *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998).  Moreover, for injuries occurring within the four-year period preceding the filing of the complaint, such injuries are time-barred if they are merely continuations of past injuries and not "new and independent."  *Lehman v. Lucom*, 727 F.3d 1326, 1331 (11th Cir. 2013) ("[W]hen an injury is a 'continuation of [an] initial injury,' it 'is not *new and independent.*'") (emphasis in original).

Plaintiffs first filed a complaint in this action on November 2, 2016.  Consequently, *any injury* that Plaintiffs knew, or should have known of before November 3, 2012, must be dismissed as untimely. *See, e.g.*, *Home Orthopedics, Inc.*, 2012 WL 12533035, at *4 n.5 ("Because the original complaint was filed on June 21, 2011 … any injuries occurring on or after June 22, 2007 are within the four-year statute of limitations, calculated based on the 'injury discovery accrual rule' of the First Circuit applicable to the instant case.").

33

While Plaintiffs may claim that they were unaware of injury resulting from Titín's Will until 2013—a purported "injury" which fails for multiple other reasons, *see supra* Section II.A.1(a)—they cannot deny that they were, or should have been aware of other injuries well before November 3, 2012. For instance, Plaintiff FSB was aware of any purported injuries from the Cataño Land Deal either in 1997 when the deal was executed, or at the latest in 2005 when conflicts were raised to the FSB Board. AC ¶¶ 147-50, 166, 169.  Similarly, Plaintiff Doña Mildred was, or should have been aware of any purported injuries from the FSIC Purchase at least as early as March 2006 when she received full payment on the FSIC Purchase.  *Id.* ¶ 131.  The Plaintiffs' time to claim injury under Civil RICO thus expired long before the Complaint was filed in November 2016.

## III.    PLAINTIFFS' UNFAIR COMPETITION CLAIMS SHOULD BE DISMISSED

Plaintiffs fail to state a claim for unfair competition under either Section 43(a) of the Lanham Act or the Puerto Rico Trademark Act (the "Unfair Competition Claims") with respect to the FUNDACIÓN SEGARRA BOERMAN E HIJOS Mark (the "FSB Mark").  *See* AC ¶¶ 198-211; 478-99. To prevail in an action for unfair competition under Section 43(a), a plaintiff must establish: (1) that he uses, and thereby "owns," a mark, (2) that the defendant is using that same or a similar mark without plaintiff's permission, and (3) that the defendant's use is likely to confuse the public, thereby harming the plaintiff.  *Venture Tape Corp. v. McGills Glass Warehouse*, 540 F.3d 56, 60 (1st Cir. 2008).[12] Plaintiffs have failed to meet these requirements.  *First*, while the Amended Complaint phrases its Unfair Competition Claims in terms of "Plaintiff*s*" (emphasis added), it fails entirely to plead facts supporting Doña Mildred's standing to sue or entitlement to relief.  *Second*, while the Amended Complaint names "All Defendants" in its Unfair Competition Claims, it fails to plead any specific allegations with respect to at least five of the Titín Defendants.  *Third*, Plaintiffs' Unfair Competition

---

[12]    Unfair competition under Puerto Rico Law is congruent with Section 43(a) of the Lanham Act.  *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 372 (1st Cir. 1980); *Erva Pharmaceuticals, Inc. v. Am. Cyanamid Co.*, 755 F. Supp. 36, 39–40 (D.P.R. 1991).  Therefore, the analysis of Plaintiffs' Unfair Competition Claims under the Lanham Act and Puerto Rico law is the same.

Claims are time-barred.  *Fourth*, FSB consented to the remaining Titín Defendants' use of the FSB Mark, which precludes any claim for relief.  *Fifth*, FSB's allegations regarding the use of the FSB Mark in conjunction with the Martinal mark and logo are irrelevant and fail to state an actionable claim.  And *sixth*, Plaintiffs fail to allege any continuing harm justifying a preliminary injunction.

### A.     Plaintiffs' Unfair Competition Claims Must Be Dismissed As To Plaintiff Doña Mildred and Certain Defendants Because The Amended Complaint Contains No Allegations Concerning These Parties.

Plaintiff Doña Mildred lacks standing to sue under the Lanham Act.  Section 43(a) states that a person who violates its provisions "shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."  15 U.S.C. § 1125(a).  In the trademark context, "standing to bring suit under the Lanham Act is conferred . . . for those with unregistered marks, [to] those who have a reasonable interest that could be harmed by infringement."  *Ahmed v. Hosting.com*, 28 F. Supp. 3d 82, 87 (D. Mass. 2014).  In order to be within the "zone of interests" protected by the Lanham Act, "a plaintiff must allege an injury to a commercial interest in reputation or sales."  *Maine Springs, LLC v. Nestlé Waters N. Am., Inc.*, No. 2:14-CV-00321-GZS, 2015 WL 1241571, at *4 (D. Me. Mar. 18, 2015) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 134 S. Ct. 1377, 1390 (2014)).  Plaintiff Doña Mildred does not and cannot allege that she owns or otherwise has any reasonable interest in the FSB Mark, which is held by an entirely separate party.  Plaintiff Doña Mildred also does not and cannot allege that she has suffered any injury to a valid commercial interest.  She therefore lacks standing.[13]

The Unfair Competition Claims also must be dismissed with respect to five of the Titín Defendants because Plaintiffs fail to state particularized claims against them.  "Rule 8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it."  *Automated Transaction LLC v. N.Y. Cmty. Bank*, 2013 WL 992423, at *4 (E.D.N.Y. Mar. 13, 2013); *see also Landrau v. Solis Betancourt*, 554 F. Supp. 2d 102, 113–14 (D.P.R. 2007) (dismissing

---

[13]   The same holds true under the Puerto Rico Trademark Act, which permits civil actions only "by the principal registrant or owner and/or the person authorized by the mark owner in writing."  10 L.P.R.A. § 223w.

Lanham Act claims against specific defendants where the complaint "failed to allege that [they] engaged in any infringing conduct").  But Plaintiffs do not allege any facts whatsoever relating to their Unfair Competition Claims against FSIC, QC, the Law Firm, Alfredo Jr., or the Titín Foundation.  The Unfair Competition Claims against them therefore must be dismissed.

**B.    Plaintiffs' Unfair Competition Claims Are Barred By Puerto Rico's One-Year Statute of Limitation and Laches.**

Plaintiffs' claim under the Puerto Rico Trademark Act is time-barred and must be dismissed. Article 1868 of the Puerto Rico Civil Code provides a one-year statute of limitations for tort actions, *SLG Garcia Villega v. ELA*, 190 D.P.R. 799 (2014), which also applies to trademark actions, *see In Vigoreaux Lorenzana v. Quizno's Subs*, 173 D.P.R. 254 (2008) (applying the one-year statute of limitations to similar claim involving the misappropriation of a "name, image, or likeness of a person for commercial or lucrative purposes.").  Plaintiffs allege that acts constituting unfair competition occurred between 2004, *see, e.g.,* AC ¶¶ 483, 491, and 2014, *see, e.g., id.* ¶ 210, and they further admit that they learned of the most recent purported violation in 2015, *id.*  Plaintiffs' claim for unfair competition under the Puerto Rico Trademark Act, which was first filed on March 1, 2017, is therefore time-barred.

Plaintiffs' Section 43(a) claim is also barred by the statute of limitations and the doctrine of laches.  Although the affirmative defense of laches may be reserved for summary judgment, "a complaint containing dates that show the claim is time-barred can be dismissed on a motion under Rule 12(b)(6)."  Wright & Miller, *5 Fed. Prac. & Proc. Civ.* § 1277 (3d ed.).  Because the Lanham Act contains no express statute of limitations, courts apply relevant state statutes of limitations to Lanham Act claims.  *See, e.g., PBM Prod., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 121 (4th Cir. 2011) (noting that "as courts have long held, it is proper to use the analogous state limitations period for Lanham Act suits because the Act provides no express statute of limitations" and collecting cases holding same).  If a claim is filed *after* the analogous limitations period has expired, the presumption is that Plaintiffs failed to assert their claim in a timely manner and, as a result, the claim is barred by

laches.  *See, e.g.*, *Free Kick Master LLC v. Apple Inc.*, No. 15-CV-3403-PJH, 2016 WL 777916, at *5-7 (N.D. Cal. Feb. 29, 2016) (dismissing claims under 15 U.S.C. §§ 1114 and 1125(a) on grounds of laches where the applicable state limitations period was two years and "plaintiffs knew of the alleged infringement . . . more than four years prior to the filing of the original complaint").

Here, as described above, Plaintiffs allege that Defendants engaged in acts constituting unfair competition beginning in 2004.  But Plaintiffs unreasonably sat on any rights they may have had for nearly a decade before bringing their claim; even the most recent purported acts occurred at least two years ago and Plaintiffs learned of any potential violation that same year.  *See* AC ¶ 210.  As the acts Plaintiffs complain of fall outside the limitations period and they fail to excuse their delay, their Section 43(a) claim is barred by laches and should be dismissed.  *See Free Kick*, 2016 WL 777916, at *5-7; *Benitez v. (N.N.C.) Neptune Nav. Corp.*, 355 F. Supp. 694, 696 (D.P.R. 1973) (dismissing action because of laches where (i) it was brought two and one-half years after accruing, (ii) local statute of limitations was one year, and (iii) plaintiff failed to make an allegation in the complaint excusing the delay).

### C.   Plaintiffs Consented To The Titín Defendants' Use Of The FSB Mark, And Use Of The FSB Mark Within That Scope Is Not Actionable

Plaintiffs' Unfair Competition Claims also must be dismissed because they consented to the Authorized Defendants' use of the FSB Mark.  Consent is a complete defense to claims of unfair competition under Section 43(a).  *Segal v. Geisha NYC LLC*, 517 F.3d 501, 505–06 (7th Cir. 2008) ("where the trademark holder has authorized another to use its mark, there can be no likelihood of confusion and no violation of the Lanham Act if the alleged infringer uses the mark as authorized" and upholding dismissal of Section 43(a) based on same); *Venture Tape Corp.*, 540 F.3d at 60 (stating that a valid claim under Section 43(a) requires proof of use of "the same or similar marks *without [plaintiff's] permission*") (emphasis added); *see generally* Restatement (Third): Unfair Competition §29.  In the Amended Complaint, Plaintiffs admit that the Authorized Defendants were authorized to manage FSB, and thus to use the FSB Mark in connection with their mandate.  *See* AC ¶ 70 ("The Martinal

Administration Contract gave [the Authorized Defendants] . . . complete control over the administration and management of all of FSB's property, real and personal . . . """).  Plaintiffs nowhere allege that the Titín Defendants used the FSB Mark after their contracts were terminated, or after relations were severed between Plaintiffs and the Titín Defendants.

Moreover, Plaintiffs have failed to state a claim that the Authorized Defendants used the FSB Mark other than as authorized.  Plaintiffs nowhere allege that they circumscribed Defendants' use of the FSB Mark to only certain uses; instead, Plaintiffs gave the Authorized Defendants "complete control over the administration and management of all of FSB's property…."  AC ¶ 70; *see also* RCS at 25 (Plaintiffs assert that Titín Defendant "MRE entered into valuable administration contracts with FSB and FSIC . . . to manage all of their real estate and commercial management investments and activities, including maintaining the books and records.").  Even if they had circumscribed the Authorized Defendants' use in some way (which they do not assert), however, Plaintiffs cannot deny that they permitted the Authorized Defendants to use the FSB Mark in connection with charitable undertakings, and this is the *only* context in which the Amended Complaint alleges the FSB Mark was used.  *See, e.g.*, AC ¶¶ 200-01 (describing use of FSB checks and FSB Mark to denote charitable donations to gala held at the Museum of Art of Puerto Rico).  Having failed to limit the Titín Defendants' authorization to use the FSB Mark, Plaintiffs' unfair competition claims must be dismissed.

### D.    Plaintiffs' Allegations Regarding Use of the FSB Mark With The Martinal Mark And Logo Are Unavailing and Irrelevant

That the Authorized Defendants used the FSB Mark in connection with the Martinal trademark and logo cannot give rise to a claim for unauthorized use beyond the scope of Plaintiffs' consent.  The Amended Complaint makes clear that Plaintiffs were well aware of the joint use of the two separate marks.  *See* AC ¶ 204 (alleging that the Martinal name and logo was used on official FSB

correspondence and checks)).[14]  And while Plaintiffs cite certain FSB directors' objections to FSB's use of the Martinal logo, AC ¶ 208, they cite no instruction explicitly prohibiting the Authorized Defendants from using the Martinal portico together with the FSB Mark.

Given that Plaintiffs were well aware of this use and permitted it to continue, they gave their implied consent or acquiescence to the manner of use, and are estopped from asserting any claim based on it.  *Korpacz v. Women's Prof'l Football League*, No. CIV.A. 04-10735-RWZ, 2006 WL 220762, at *2 (D. Mass. Jan. 27, 2006) (finding defendants "c[ould] not have infringed the marks" in claim under Section 43(a) where plaintiff sent an email "essentially acquiesc[ing] in their use of the marks"); *see also USTrust v. U.S. Trust Co. of New York,* 210 F. Supp. 2d 9, 28 (D. Mass. 2002) (acquiescence barred any relief as to domain name and web site use of ustrustboston.com where plaintiff knew or should have known that defendants were using the web domain).  And even if joint use of the FSB Mark with the Martinal logo was sufficient to state a claim for unfair competition—it is not—Plaintiffs knowingly sat on any rights they had to object to such use beginning in 2004, and are barred by the doctrine of laches from bringing claims now.  *See Free Kick*, 2016 WL 777916, at *5-7; *see also supra* Section III.B.[15]  In addition, while certain FSB Directors may have later expressed a preference to use a new design with the FSB Mark instead of the "borrowed" Martinal logo, (AC ¶ 208), Plaintiffs do not allege either that (i) FSB actually requested that this association cease, or even that (ii) the Titín Defendants continued to

---

[14]   It is hardly surprising that MMC's name and/or the Roman portico mark would appear on checks or donations written from FSB given that "FSB's checking account money was held in an interest-bearing account under the name of MMC."  RCS at 26.

[15]   Plaintiffs' additional allegation that the Authorized Defendants were limited by law to use the Martinal Mark (which the Titín Defendants owned) *only* in connection with the categories of goods listed in the Titín Defendants' trademark registration is both wrong and entirely irrelevant.  AC ¶ 484.  Trademark rights do not derive from registration, but from use.  *See United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918) ("[T]he right to a particular mark grows out of its use not its mere adoption."); *Gen. Healthcare Ltd. v. Qashat*, 364 F.3d 332, 336 n.7 (1st Cir. 2004) (similar).  A registration merely delineates and formalizes the extent and scope of trademark *protection*—it does not limit other uses.  Defendants were entitled to use the Martinal mark with the FSB Mark for services other than those described in the Martinal registration and, in any event, any claim to the contrary is irrelevant to Plaintiffs' Unfair Competition Claims.

use the Martinal portico graphics together with the FSB Mark after this request. *See id.* Plaintiffs therefore cannot state a claim that the Titín Defendants used the FSB Mark in a confusing manner by using it jointly with the Martinal logo.[16]

### E.   Plaintiffs Fail to Allege Any Continuing Harm From Defendants' Prior Use of the FSB Mark

Plaintiffs have failed to show entitlement to injunctive relief. To obtain such relief, Plaintiffs must show, among other factors, that they will suffer irreparable harm if an injunction is not granted. *Shell Co. (Puerto Rico) v. Los Frailes Serv. Station, Inc.*, 605 F.3d 10, 19, 23-24 (1st Cir. 2010). Plaintiffs cannot show irreparable harm in connection with their Unfair Competition Claims because they do not and cannot show that the Titín Defendants are presently using, or in the future will use, the FSB Mark. For instance, there are no allegations in the Amended Complaint that would describe unauthorized use akin to a licensee improperly continuing use of a mark after the licensor's consent had been withdrawn. *See Dunkin' Donuts Franchised Rests. LLC v. ABM Donuts, Inc.*, No. CA 11-270S, 2011 WL 6026129, at *5 (D.R.I. Oct. 4, 2011) ("Likelihood of confusion is established in this case where an unauthorized user of the trademark continues to use the identical, previously licensed trademark after revocation of the license."); *Kappa Sigma Fraternity v. Kappa Sigma Gamma Fraternity*, 654 F. Supp. 1095, 1100 (D.N.H. 1987) (similar). Plaintiffs also do not allege that the Titín Defendants are using *any* mark that is likely to cause confusion with the FSB Mark. Their request for an injunction against the Defendants' continued use of the FSB Mark (AC p. 152, ¶ D; *see id*. ¶¶ 489, 497) must be dismissed.

---

[16] To the extent Plaintiffs' claim is one of deception arising from an unwelcome association of the FSB Mark with the Titín Defendants' name and logo, *see* AC ¶¶ 485-90, 493, 497-99, this too is not unfair competition. The Titín Defendants own the Martinal mark and logo, and had authorization to use Plaintiffs' FSB Mark. The remedy for the association from which Plaintiffs now seek to distance themselves lies not in this Court, but in the marketplace—namely, through Plaintiffs' use of the FSB Mark with its current logo to displace any perceived connection to the Titín Defendants.

IV.   **PLAINTIFFS' CLAIM FOR BREACH OF AN ORAL SETTLEMENT AGREEMENT SHOULD BE DISMISSED**

Plaintiffs' claim that an "oral agreement to settle" was reached and breached in August 2016 (the "Breach Claim") should be dismissed for at least five reasons.  *First*, a settlement agreement is merely a contract, and a claim for breach of contract among entirely Puerto Rico parties arises under Puerto Rico, not federal law.  Accordingly, if the Court dismisses Plaintiffs' other federal claims, the Court should decline to exercise supplemental jurisdiction over the Breach Claim.  *Second*, even if other federal claims survive, the Court should still decline to exercise supplemental jurisdiction over the Breach Claim because it lacks a common nucleus of operative fact with the other claims alleged.  *Third*, regardless of whether the Breach Claim gives rise to federal jurisdiction, the Court must look to Puerto Rico substantive law to decide the merits of the claim, and under Puerto Rico law, an agent may not enter into an enforceable "oral agreement to settle;" any agreement reached through an agent must be evidenced by a formal writing entirely absent here.  *Fourth*, the continuation of settlement negotiations after the purported date of agreement and Plaintiffs' counsel's contemporaneous admission that no agreement had been reached defeats Plaintiffs' Breach Claim.  And *fifth*, even if the Breach Claim survives, Plaintiffs' claim for $26 million must be dismissed because they failed to live up to their side of the alleged agreement by filing the initial Complaint.

A.   **The Breach Claim Is Governed By Puerto Rico Law And Should Be Dismissed If The Plaintiffs' Federal Claims Are Dismissed.**

Plaintiffs have failed to meet their burden to show that the Breach Claim gives rise to federal jurisdiction under 28 U.S.C. § 1331.  *See* AC ¶¶ 474-75.  "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute. . . . It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Kokkonen*, 511 U.S. at 377 (internal citations omitted).  Settlement agreements are not exempt from this rule: a suit on a contract to settle claims needs an independent basis of federal jurisdiction.  *See id.* at 381; *see also Abbott Labs. v. CVS Pharmacy, Inc.*,

290 F.3d 854, 857 (7th Cir. 2002) (citing *Kokkonen* for this proposition). Thus, as a rule, a breach of a settlement contract arises under state law even if the settled claims are federal, or if the settlement has some connection to a federal case. *See Abbott Labs.*, 290 F.3d at 857 ("[I]nterpretation of a settlement contract is governed by state law even if the settled claim arose under federal law; otherwise a suit directly on the settlement agreement also would arise under federal law, and the holding of *Kokkonen* would be overthrown"); *c.f. F.A.C., Inc. v. Cooperativa de Seguros de Vida de Puerto Rico*, 449 F.3d 185, 189 (1st Cir. 2006) ("The law is now settled that a federal court does not have inherent jurisdiction to enforce a settlement merely because it presided over the law suit that led to the settlement.").

As all parties to the purported settlement hail from Puerto Rico, Plaintiffs' Breach Claim does not afford this Court subject matter jurisdiction by default. *See One & Ken Valley Hous. Grp. v. Maine State Hous. Auth.*, 716 F.3d 218, 224 (1st Cir. 2013) ("As a general rule, federal courts lack subject matter jurisdiction over state law breach-of-contract actions where . . . the plaintiffs and the defendant hail from the same state."). "Federal courts allow an exception to this rule *only* in the rare instance where the contract is governed by state law but a 'federal issue is decisive' to the dispute and 'the federal ingredient . . . is sufficiently substantial to confer the arising under jurisdiction.'" *Id.* (emphasis added). In accordance with this rule, the First Circuit has permitted federal jurisdiction to be extended over a breach of settlement claim in two specific circumstances. *First*, "arising under" jurisdiction may exist where the breached settlement implicates one of a limited set of statutes where the "federal issue is decisive" and "the federal ingredient . . . is substantial"—namely, instances where federal law preempts state law or Congress has expressed that the underlying statute implicates particularly federal concerns. *See, e.g.*, *Morais v. Cent. Beverage Corp. Union Employees' Supp. Ret. Plan*, 167 F.3d 709, 711-712 (1st Cir. 1999) (exercising federal jurisdiction over claim for breach of agreement settling ERISA claim because "state law is itself preempted by ERISA in the context of interpreting employee benefit plans"); *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) (exercising federal jurisdiction over agreement settling Title VII claim because, "[i]n enacting Title VII, Congress expressed a strong preference for

42

encouraging voluntary settlement of employment discrimination claims."); *Dice v. Akron, C. & Y. R. Co.*, 342 U.S. 359, 361 (1952) (similar with respect to the Federal Employers' Liability Act). *Second*, having first properly and independently exercised jurisdiction over a plaintiff's claims, courts are then permitted to *retain* jurisdiction over later settlements. *See generally Kokkonen*, 511 U.S. 375 (1994) (district courts are empowered to retain jurisdiction, once properly exercised, over agreements settling cases before them).

The Breach Claim does not fall under either exception.  The Civil RICO statute—the only federal statute implicated by the purported settlement in August 2016—is not one of the limited instances where breach of a settlement agreement can confer federal jurisdiction.  Indeed, the Titín Defendants have been unable to find a single instance where a court has exercised federal jurisdiction over a pre-suit settlement of Civil RICO claims.  And Plaintiffs cannot point to any federal issue "decisive" to the Breach Claim that would necessitate an expansion of federal subject matter jurisdiction antithetical to the contrary controlling presumption.  *Kokkonen*, 511 U.S. at 377.  Moreover, the purported settlement at issue here was not reached during the pendency of litigation when a federal court had already exercised jurisdiction, but four months prior to the filing of the initial Complaint.  *See* AC ¶ 331.  Except for the specific circumstances and statutes described above, none of which apply, a pre-suit settlement of federal claims cannot provide federal jurisdiction, and does not here.  *See Walls v. Int'l Paper Co.*, No. CIV.A. 99-2048-CM, 2000 WL 360115, at *2 (D. Kan. Mar. 13, 2000) ("The issue … is whether the court has authority to enforce an oral settlement agreement … dealing with the same controversy alleged in this suit … which occurred before the court obtained jurisdiction over the subject matter or the parties.  The court does not have such authority.").

Any decision to the contrary would contravene the limited nature of federal jurisdiction.  If, for instance, merely including federal claims in a pre-suit settlement could ensure any claim for breach of that settlement would be heard in federal court, a plaintiff could routinely assert federal claims of some kind, regardless of their merit, to ensure the venue of their choice.  This would circumvent the rule that a

suit on a settlement contract needs an independent basis of federal jurisdiction, s*ee Kokkonen* at 381; *see also Abbott Labs.*, 290 F.3d at 857, and effectively would federalize the law governing settlement agreements, distorting the limited nature of federal jurisdiction beyond recognition.  Since Plaintiffs' federal claims cannot survive, this Court should decline to exercise supplemental jurisdiction over the Breach Claim.  *See infra* Section V.

**B.    Supplemental Jurisdiction Does Not Apply to the Breach Claim.**

As the Breach Claim arises under Puerto Rico law, the Court also should decline to exercise supplemental jurisdiction over it under 28 U.S.C. § 1367 because it lacks a sufficient nexus to the other claims alleged.  To be adjudicated together in the same federal action, "[t]he state and federal claims must derive from a common nucleus of operative fact."  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).  When "the facts underlying [a party's claim] and those underlying its claim for breach of settlement agreement have nothing to do with each other; it would neither be necessary nor even particularly efficient that they be adjudicated together."  *Kokkonen.*, 511 U.S. at 380; *see also Krauth v. Exec. Telecard, Ltd.*, No. 95 Civ. 0106 (RWS), 1995 WL 272556, at *4 (S.D.N.Y. May 9, 1995) ("The facts surrounding the alleged breach of the settlement agreement and the remaining claims in the underlying action do not derive from a common nucleus of operative facts . . . [they] are entirely separate in time and, in large part, person from the allegations surrounding the breach of contract claims.").

Here, Plaintiffs allege that an enforceable settlement agreement was reached and breached in 2016.  AC ¶¶ 466-69.  But these allegations and those related to their other claims "have nothing to do with each other," *see Kokkonen*, 511 U.S. at 380; the allegations regarding a purported settlement in 2016 are wholly distinct in both time and subject matter from Plaintiffs' other claims, and could be resolved just as easily, if not more, through a separate action.  *Compare, e.g.*, AC ¶¶ 321-36 (purported agreement and breach in July and August 2016), *with* Ex. A at 28 (last purported predicate act is November 2015).  As there is no common nucleus of operative fact between the Breach Claim and the

44

Plaintiffs' federal claims, this Court should decline to exercise supplemental jurisdiction (i) over the Breach Claim even if other federal causes of action survive or (ii) over the PR Claims if this claim alone is deemed to confer federal jurisdiction.

### C. Even If The Breach Claim Is Deemed To "Arise Under" Federal Law, The Court Should Apply Puerto Rico Substantive Law To It, And Dismiss It.

Even if the Breach Claim conferred federal subject matter jurisdiction, it must be adjudicated according to Puerto Rico law, which requires that it be dismissed.

### 1. Even If The Breach Claim Arises Under Federal Law, Puerto Rico Substantive Law Applies.

That a claim confers federal jurisdiction does not affect whether the claim is evaluated under state law. *See, e.g.*, *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640-41 (1981) ("The vesting of jurisdiction in the federal courts does not in and of itself give rise to authority to formulate federal common law."). Rather, state law presumptively applies unless "a federal rule of decision is 'necessary to protect uniquely federal interests'" or "Congress has given the courts the power to develop substantive law." *Id.* at 640; *accord Kagan v. El San Juan Hotel & Casino*, 7 F.3d 218, at *3 (1st Cir. 1993) ("Federal common law is appropriate only where the authority and duties of the United States as sovereign are intimately involved or because the interstate or international nature of the controversy makes it inappropriate for state law to control. Moreover, [i]n deciding whether rules of federal common law should be fashioned, normally the guiding principle is that a significant conflict between some federal policy or interest and the use of state law ... must first be specifically shown.") (citations and quotation marks omitted); *see also Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347, 1350 n.4 (11th Cir. 2000) (expressing courts' disfavor for applying federal common law and applying state contract law in an analysis of a settlement agreement claim that "arose under" federal law).

As no circumstances necessitating resort to federal common law are present here, Puerto Rico contract law applies. *First*, as demonstrated above, this is not a situation where a settlement agreement is alleged to have been reached *after* a federal court had already exercised jurisdiction. *Cf. Quint v. A.E.*

*Staley Mfg. Co.*, 246 F.3d 11, 12, 14 (1st Cir. 2001) (evaluating under federal law a settlement agreement reached after litigation commenced); *Negron Gaztambide v. Hernandez Torres*, 145 F.3d 410, 415 (1st Cir. 1998) (declining to apply state contract law to a dispute regarding a settlement when the claim was brought shortly before trial based on a stipulation entered in court). As Plaintiffs allege that the settlement agreement was reached *before* they filed their claims, this exception is inapplicable. And *second*, Plaintiffs cannot "specifically show" any "significant conflict between some federal policy or interest and the use of state law," *Kagan*, 7 F.3d 218, at \*3, nor point to any precedent indicating that settlement of Civil RICO claims represents a "unique federal interest" or that Congress gave courts "the power to develop substantive law" in this area. In short, the mere settlement of Civil RICO claims does not give the Court license to create or apply federal common law to an otherwise-ordinary breach of contract claim. Puerto Rico law controls the Breach Claim.

### 2.    Puerto Rico Law Requires Dismissal of the Breach Claim.

Even if the Plaintiffs' allegations with respect to the Breach Claim were true (which they are not), the facts they allege are insufficient to show the formation of a contract under Puerto Rico law because (a) Plaintiffs contend that the agreement was reached through an agent, but contracts may only be created by agents under Puerto Rico law by means of an "authentic document," and (b) Plaintiffs improperly omit their own counsel's admissions that no agreement never was reached.

#### (a)    Puerto Rico law requires an "authentic document" absent here.

Puerto Rico law requires that "[i]n *all cases*, contracts made through agents shall be made *by means of authentic documents*, the district judges and justices of the peace being hereby empowered in the absence of a notary, to certify to the authenticity of said contracts." 31 L.P.R.A. § 3453 (emphasis added). The Supreme Court of Puerto Rico has ruled that "[a]n authentic document is a legalized document, which is publicly attested, which is legally valid by itself." *Ramos Mimoso v. Tribunal Superior*, 93 D.P.R. 551, 554 (1966) (interpreting 31 L.P.R.A. § 5023's use of "authentic document"); *see also F.D.I.C. v. Shearson-Am. Exp., Inc.*, 996 F.2d 493, 500 (1st Cir. 1993) (same). To be clear, "[a]

private agreement or writing is *not* an authentic document; a document verified before a notary public *is* an authentic document." *Shearson-Am.*, 996 F.2d at 500 (emphasis added) (citations omitted).  And "the authentic document rule is a formal and absolute rule that is strictly construed." *Id.* (citing *In re Supermercados San Juan, Inc.*, 575 F.2d 8, 12 (1st Cir. 1978)).

Plaintiffs fail to meet this stringent requirement.   Plaintiffs nowhere assert any direct communication between the Plaintiffs and any of the Breach Defendants regarding a purported settlement.   *See* AC ¶¶ 321-36; 465-77.   Rather, they allege that "[Alfredo Sr.] reached out to his business associate Friedel Stubbe . . . and *empowered him* to approach Plaintiffs to explore a pre-suit resolution *on behalf of* himself, Titín Foundation and FSIC."   *Id.* ¶ 323 (emphasis added).   Friedel then, "acting as an agent for [Alfredo Sr.], Titín Foundation and FSCI [*sic*]," made an offer on his principals' behalf, which the Plaintiffs purportedly accepted, *id.* ¶ 467, *see also* ¶¶ 325, 327-30, and which Friedel, the agent, purportedly followed up with a text message saying, "It's a deal.  Call me," *id.* ¶ 330.  This text message—the *only* writing evidencing the purported "oral agreement"—is not an "authentic document" permitting an agent to bind the principal to an enforceable agreement.  *See Ramos Mimoso*, 93 P.R.R. 551, 554; 31 L.P.R.A. §§ 3453, 4826.  Thus, the Breach Claim fails as a matter of law.

### (b)   No agreement was reached on August 5, 2016 as evidenced by Plaintiffs' counsel's admissions.

The Amended Complaint alleges that an oral agreement was reached by August 5, 2016, but improperly omits numerous dispositive facts evidencing that a final agreement had *not* been reached. "Plaintiff may not omit relevant facts in his amended complaint in an effort to state a cognizable claim." *Pickering v. California Dep't of Corr.*, No. 13-cv-01164, 2016 WL 7104167, at *4 (E.D. Cal. Dec. 5, 2016); *see also Tomczyk v. Blue Cross & Blue Shield United of Wisconsin*, 951 F.2d 771, 778 (7th Cir. 1991) ("[B]old misrepresentations of fact … disserve the parties, opposing counsel, and this Court").  The Amended Complaint omits mention of a number of letters between the parties *after* the purported agreement was reached, which continued to negotiate settlement.  These doom the Breach Claim.

In their letters to the Titín Defendants, Plaintiffs' counsel openly conceded multiple times that no settlement agreement existed and negotiations were ongoing.  For instance, on August 8, 2016—three days *after* the purported "oral agreement to settle" was reached—then-counsel to the Plaintiffs wrote to the Titín Defendants that "your invitation to *continue … settlement discussions* is hereby accepted on behalf of our clients."  Later, Plaintiffs' counsel stated that they "write in furtherance of the settlement discussions," and referenced a new settlement offer by the Defendants.  September 8 Letter at 1.  Contract negotiations are "characterized as 'an agreement to seek to agree in the future' and *not* as a final contract."  *K-Mart Corp. v. Davis*, 756 F. Supp. 62, 69 (D.P.R. 1991) (emphasis added); *see also Prods. Tommy Muñiz v. C.O.P.A.N.*, 113 D.P.R. 517, 528 (1982) (quotation from English version of this opinion at 1982 WL 210537) ("[P]arties are not bound to proceed with the negotiations *until a contract is perfected*, but rather they are free to contract *or to withdraw* as it best suits their interests.") (emphasis added).  Plaintiffs cannot claim a completed contract given that active negotiations continued.

Plaintiffs' omission is all the more damning given Plaintiffs' counsel's acknowledgment that agreement would not be reached until a contract with final terms was reduced to writing.  "[T]he fact that parties contemplate the execution of a final written agreement effects a strong inference that the parties do not intend to be bound by earlier negotiations or agreements until the final terms are settled."  *TLT Const. Corp. v. RI, Inc.*, 484 F.3d 130, 135 (1st Cir. 2007).  In the August 8 Letter, Plaintiffs' counsel stated that Plaintiffs would "hold off on the filling of the Verified Complaint while the Settlement Offer *is being discussed* and a *settlement agreement drafted and executed*."  Defs.' Ex. 1 at 2 (emphasis added).  That same letter reveals, moreover, that a written settlement agreement was no mere formality, but would reflect further negotiations on vital terms.  For instance, though the release of claims is the main, and often sole consideration in a settlement agreement, the August 8 Letter makes clear that the parties had not yet reached a meeting of the minds on the subject of releases.  *Id.* at 2 ("*We expect that* [a settlement agreement] *would contain* mutual releases and confidentiality provisions . . .") (emphasis added).

**3.      Plaintiffs Relinquished Any Claim Under The Purported "Oral Agreement To Settle" By Initiating this Action.**

This Court also should dismiss the Breach Claim to the extent it demands payment of the $26 million purported consideration under the oral settlement agreement. *See* AC ¶ 477. Under controlling Puerto Rico law, a person who believes that she has been prejudiced by breach of a settlement agreement is limited to two and only two remedies: "The person prejudiced may choose between exacting the fulfillment of the obligation or its rescission, with indemnity for damages and payment of interest in either case." 31 L.P.R.A. § 3052. But if the non-breaching party chooses the first option— retaining its rights under the agreement—it must continue to fulfill the essential terms of its obligation despite the counterparty's breach. *Alvarado v. Bonilla*, 86 D.P.R. 490, 504 (1962); *Riera v. Macias Vda. de Riera*, 42 D.P.R. 579 (1931). In other words, the non-breaching party may not sue for the consideration due under the contract (here, the $26 million) if she already has breached the agreement. 31 L.P.R.A. § 3052; *Alvarado*, 86 D.P.R. at 504; *Riera*, 42 D.P.R. 579. This makes sense as a matter of contract law; otherwise, violation of a settlement agreement could result in a windfall to plaintiff of *both* any damages under the substantive claims *and* the amount of any settlement. *See Cooney Indus. Trucks, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 168 F.3d 545, 547 (1st Cir. 1999) ("[I]t is not the policy of our law to award damages which would put a plaintiff in a better position than if the defendant had carried out his contract.").

Here, by filing the initial Complaint, the Plaintiffs breached any purported settlement agreement and relinquished any right to sue for its enforcement. As a result, they are not entitled to seek the $26 million they were purportedly due to receive under the oral settlement, and the Breach Claim must be dismissed. *See* AC ¶ 466; Dkt. 1; 31 L.P.R.A. § 3052; *Alvarado*, 86 D.P.R. at 504.

**V.      THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION**

After dismissing Plaintiffs' federal claims for the reasons described above, the Court also should dismiss the PR Claims. This Court's subject matter jurisdiction rests solely on the federal questions

purportedly brought by the Civil RICO, Unfair Competition and Breach Claims.  If these federal claims are dismissed, no basis remains for the Court to exercise supplemental jurisdiction over the PR Claims, and precedent strongly favors dismissal.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."); *Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998) ("the balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation") (citations omitted).  Accordingly, the Amended Complaint should be dismissed in full.

## VI.    THE COURT SHOULD DISMISS THE AMENDED COMPLAINT WITH PREJUDICE

Plaintiffs' claims against all the Titín Defendants should be dismissed with prejudice.  Although leave to amend is freely given after a complaint is dismissed for failure to state a claim, leave may be withheld where amendment of the complaint would be futile.  *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996).  Here, Plaintiffs have already had two bites at the apple.  And their Amended Complaint does not suffer from mere technical faults; its deficiencies involve much deeper-seated issues ranging from subject matter jurisdiction to lack of standing and inability to establish essential elements of the statutes under which they claim.  Plaintiffs' apparent belief claim that their pleadings are already "particularized and digestible," Dkt. 24 at 4, only emphasizes that they cannot remedy the fundamental defects in the Amended Complaint.  Since any further amendment of the pleadings would be futile, the Court should dismiss the Amended Complaint with prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons, the Titín Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice.

DATED:   San Juan, Puerto Rico
         May 19, 2017                         Respectfully submitted,


                                      By: /s/Daniel Salinas-Serrano


                                      **QUINN EMANUEL URQUHART
                                      & SULLIVAN, LLP**

                                      Daniel Salinas-Serrano
                                      (U.S.D.C.-P.R. No. 224006)
                                      777 Sixth Street NW, 11th Floor
                                      Washington, D.C.  20001
                                      (202) 538-8000
                                      danielsalinas@quinnemanuel.com

                                      Andrew P. Marks (*pro hac vice*)
                                      Yariv Pierce (*pro hac vice*)
                                      51 Madison Avenue, 22nd Floor
                                      New York, New York  10010
                                      (212) 849 7000
                                      andrewmarks@quinnemanuel.com
                                      yarivpierce@quinnemanuel.com

                                      **REICHARD & ESCALERA**

                                      Rafael Escalera-Rodríguez
                                      (U.S.D.C.-P.R. No. 122609)
                                      Alana Vizcarrondo
                                      (U.S.D.C.-P.R. No. 301614)
                                      MCS Plaza, 10th Floor
                                      255 Ponce De León Avenue
                                      San Juan, Puerto Rico 00917-1913
                                       (787) 777-8888
                                      escalera@reichardescalera.com

                                      *Attorneys for the Titín Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing complies with the form and length requirements of Local Rule 7(d) of the Local Rules of the United States District Court for the District of Puerto Rico because it has been prepared in a proportionally spaced 12 point Times New Roman font and complies with the Court's grant of a page extension of up to 50 pages.

DATED:   San Juan, Puerto Rico
              May 19, 2017

By: /s/Daniel Salinas-Serrano

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Daniel Salinas-Serrano
(U.S.D.C.-P.R. No. 224006)
777 Sixth Street NW, 11th Floor
Washington, D.C.  20001
(202) 538-8000
danielsalinas@quinnemanuel.com

Andrew P. Marks (*pro hac vice*)
Yariv Pierce (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, New York  10010
(212) 849 7000
andrewmarks@quinnemanuel.com
yarivpierce@quinnemanuel.com

**REICHARD & ESCALERA, LLC**

Rafael Escalera-Rodríguez
(U.S.D.C.-P.R. No. 122609)
Alana Vizcarrondo
(U.S.D.C.-P.R. No. 301614)
MCS Plaza, 10th Floor
255 Ponce De León Avenue
San Juan, Puerto Rico 00917-1913
 (787) 777-8888
escalera@reichardescalera.com

*Attorneys for the Titín Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2017, I electronically filed the foregoing with the Clerk of this Court using the CM/ECF System, which will send notice of such filing to all counsel of record.

DATED:   San Juan, Puerto Rico
         May 19, 2017

By: /s/Daniel Salinas-Serrano

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Daniel Salinas-Serrano
(U.S.D.C.-P.R. No. 224006)
777 Sixth Street NW, 11th Floor
Washington, D.C.  20001
(202) 538-8000
danielsalinas@quinnemanuel.com

Andrew P. Marks (*pro hac vice*)
Yariv Pierce (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, New York  10010
(212) 849 7000
andrewmarks@quinnemanuel.com
yarivpierce@quinnemanuel.com

**REICHARD & ESCALERA, LLC**

Rafael Escalera-Rodríguez
(U.S.D.C.-P.R. No. 122609)
Alana Vizcarrondo
(U.S.D.C.-P.R. No. 301614)
MCS Plaza, 10th Floor
255 Ponce De León Avenue
San Juan, Puerto Rico 00917-1913
 (787) 777-8888
escalera@reichardescalera.com

*Attorneys for the Titín Defendants*