IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **FUNDACIÓN SEGARRA-BOERMAN e HIJOS, INC., and MILDRED A. SEGARRA-BOERMAN,** | |
| **Plaintiffs,** | **CIVIL NO. 3:16-cv-02914-DRD** |
| **vs.** | |
| **ALFREDO MARTÍNEZ-ÁLVAREZ; FELIPE SEGARRA INVESTMENT CORP.; TITÍN FOUNDATION, INC.; JOSÉ RAMON QUIÑONES-COLL; MARTÍNEZ-ÁLVAREZ, MENÉNDEZ-CORTADA & LEFRANC ROMERO, PSC; ALFREDO MARTÍNEZ-ALVAREZ, JR.; SOFÍA MARTÍNEZ-ÁLVAREZ; MARTINAL REAL ESTATE CORP.; and MARTINAL MANAGEMENT CORP.** | **ACTION FOR VIOLATIONS OF THE ORGANIZED CRIME CONTROL ACT OF 1970; (RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT (RICO), 18 U.S.C. §§ 1961-1968); FOR BREACH OF AN ORAL AGREEMENT TO SETTLE THE DISPUTE; SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a) FOR UNFAIR COMPETITION; FOR BREACH OF FIDUCIARY DUTIES; FOR DECEIT AND BREACH OF CONTRACT** |
| **Defendants.** | |
| | **[JURY TRIAL DEMANDED]** |

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT, AND INCORPORATED MEMORANDUM OF LAW

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  STANDARD OF REVIEW ................................................................................. 2

III.  ARGUMENT ....................................................................................................... 3

    A.  The Limited Probate Exception Does Not Apply In This Case. ......................... 3

        1.  The Probate Exception Cannot Apply Because Titín's Third Will Was Not Probated, No Puerto Rico Court Issued a Judgment Distributing Titín's Estate, and There Is No Res Subject to a Puerto Rico Court's Custody. ............... 4

        2.  The Probate Exception Cannot Apply Because Plaintiffs' Claims Are Monetary In Personam Claims for Damages. ............................................ 6

    B.  Plaintiffs State a Claim for Violations of the Civil RICO Statute. ..................... 7

        1.  Plaintiffs Have Standing to Sue on the RICO Claims. ................................ 8

            a.  Plaintiffs Have Adequately Pled Injury to "Business or Property". ........... 8

            b.  Plaintiffs Have Adequately Pled Proximate Causation Between Defendants' Racketeering Acts and Plaintiffs' Injury. ............... 13

        2.  Plaintiffs Adequately Pled a "Pattern of Racketeering Activity". ....................... 15

            a.  Plaintiffs Have Amply Pled Closed-Ended Continuity. ............................ 16

            b.  Plaintiffs Have Amply Pled Open-Ended Continuity. .............................. 20

        3.  Plaintiffs Have Adequately Pled an Acquisition Injury for Section 1962(b). ........ 22

        4.  Plaintiffs Have Adequately Pled a Conspiracy to Violate Section 1962(a). ......... 23

        5.  Plaintiffs Have Adequately Alleged Viable RICO Enterprises. ......................... 24

        6.  Plaintiffs' Claims Are Not Time-Barred. ............................................... 29

    C.  Plaintiffs State a Claim for Unfair Competition. ................................................ 31

    D.  Plaintiffs State a Claim for Breach of an Oral Settlement Agreement. ............................ 35

        1.  The Claim for Breach of the Settlement Agreement of the RICO Claim Presents a Federal Question. ................................................................... 35

        2.  Supplemental Jurisdiction May be Exercised Over the Breach of Contract Claim. ............................................................................................ 36

        3.  Plaintiffs State a Valid Claim for Breach of Contract Under Puerto Rico Law. .. 37

IV.  CONCLUSION ................................................................................................... 40

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adobe Sys. Inc. v. Blue Source Group, Inc.*,
   125 F. Supp. 3d 945, 965 (N.D. Cal. 2015) ........................................................32

*In re Alfredo Martínez Álvarez*,
   No. K JV2013-1569 (P.R. Court of First Inst. 2013)............................................4

*Allwaste, Inc. v. Hecht*,
   65 F.3d 1523 (9th Cir. 1995).............................................................................21

*Almazan v. Almazan*,
   No. 14-cv-311 (AJN), 2015 WL 500176 (S.D.N.Y. Feb. 4, 2015)....................28

*Andrews Farms v. Calcot, Ltd.*,
   527 F. Supp. 2d 1239 (E.D. Cal. 2007).............................................................21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................2

*In re Avandia Mktg.*,
   804 F.3d 633 (3d Cir. 2015)..........................................................................8, 15

*Baker v. Simmons Co.*,
   307 F.2d 458 (1st Cir. 1962) .............................................................................33

*Beck v. Prupis*,
   529 U.S. 494 (2000)....................................................................................23, 24

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................2

*Bessette v. Avco Financial Servcs., Inc.*,
   230 F.3d 439 (1st Cir. 2000) .............................................................................26

*Blackstone Realty LLC v. F.D.I.C.*,
   244 F.3d 193 (1st Cir. 2001)........................................................................32, 33

*Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*,
   36 F. Supp. 2d 560 (E.D.N.Y. 1999)............................................................8, 10

*Blue v. Doral Fin. Corp.*,
   123 F. Supp. 3d 236, 260 (D.P.R. 2015)............................................................4

*C&M Cafe v. Kinetic Farm, Inc.*,
   No. 16-cv-04342, 2016 WL 6822071 (N.D. Cal. 2016) ...................................10

*Camel Hair and Cashmere Institute of America, Inc. v. Assoc. Dry Goods Corp.*,
    799 F.2d 6 (1st Cir. 1986) ...................................................................................31

*Carnegie-Mellon University v. Cohill*,
    484 U.S. 343 (1988).........................................................................................36

*Cedric Kushner Promotions v. King*,
    533 U.S. 158 (2001).........................................................................................25

*In re Celexa and Lexapro Marketing and Sales Practices Litigation*,
    No. 14-13848-NMG, 2016 WL 3212480 (D. Mass. June 9, 2016) ......................29

*Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York*,
    808 F. Supp. 213 (S.D.N.Y.1992)........................................................................19

*Citibank, N.A. v. Citytrust*,
    644 F. Supp. 1011 (E.D.N.Y. 1986)....................................................................33

*City of New York v. JAM Consultants, Inc.*,
    889 F. Supp. 103 (S.D.N.Y. 1995)....................................................................9, 15

*Compagnie De Reassurance D'lle de France v. New England Reinsurance Corp.*,
    57 F.3d 56 (1st Cir. 1995) ..................................................................................21

*Cook County v. Lynch*,
    620 F. Supp. 1256 (N.D. Ill. 1985) .......................................................................9

*Corporacion Insular de Seguros v. Reyes-Muñoz*,
    849 F. Supp. 126 (D.P.R. 1994)...........................................................................9

*Cruz v. FX DirectDealer, LLC*,
    720 F.3d 115 (2nd Cir. 2013)...........................................................................26

*CVLR Performance Horses, Inc. v. Wynne*,
    524 F. App'x 924 (4th Cir. 2013) ...................................................................20, 21

*Davis v. Southern Bell Telphone & Telegraph Co.*,
    No. 89-2839-CIV, 1994 WL 912242 (S.D. Fla. Feb. 1, 1994) ............................26

*Díaz v. Román*,
    799 F. Supp. 2d 134 (D.P.R. 2011).....................................................................28

*Dice v. Akron, C. & Y. R. Co.*,
    342 U.S. 359 (1962).........................................................................................36

*Doe I v. The Gap, Inc.*,
    No. CV-01-0031, 2001 WL 1842389 (D.N. Mar. I. Nov. 26, 2001) ...................8, 9

*Dumas v. First Federal Savings and Loan Association*,
    654 F.2d 359 (5th Cir. 1981)...............................................................................39

*Ediciones Quiroga, S.L. v. Fall River Music, Inc.*,
   No. 93 CIV 3914, 1995 WL 103842 (S.D.N.Y. Mar. 7, 1995) ............................................33

*Efron v. Embassy Suites (Puerto Rico), Inc.*,
   223 F.3d 12 (1st Cir. 2000) ................................................................................7, 13, 24

*Fabrica de Muebles J.J. Álvarez, Inc. v. Westernbank de Puerto Rico*,
   No. 09-1558 (GAG), 2009 WL 4730776 (D.P.R. Dec. 4, 2009) ......................................16

*FDIC v. Bird*,
   516 F. Supp. 647 (D.P.R. 1981) .......................................................................................29

*Feinstein v. Resolution Trust Corp.*,
   942 F.2d 34 (1st Cir. 1991) ..............................................................................................15

*Fleet Credit Corp. v. Sion*,
   893 F.2d 441 (1st Cir. 1990) .......................................................................................16, 18

*Estate of Foster v. Gomer*,
   No. 11-cv-1242 (D.E. 63) (C.D. Cal. Feb. 15, 2012).................................................19, 20

*Fraigcomar Soccer Club, Inc. v. Federación Puertorriqueña de Fútbol, Inc.*,
   No. KLAN200801136, 2009 WL 6038013 (P.R. Cir. Dec. 18, 2009) ..............................11

*Fresh Meadow Food Servs., LLC v. RB 175 Corp.*,
   282 Fed. Appx. 94 (2d Cir. 2008) ...............................................................................16, 17

*Fulgence v. J. Ray McDermott & Co.*,
   662 F.2d 1207 (5th Cir. 1981)..........................................................................................37

*Full Draw Prods. v. Easton Sports, Inc.*,
   85 F. Supp. 2d 1001 (D. Colo. 2000) ...............................................................................33

*G-1 Holdings, Inc. v. Baron & Budd*,
   238 F. Supp. 2d 521 (S.D.N.Y. 2002)..........................................................................25, 27

*Gas Tech. Inst. v. Rehmat*,
   05 C 2712, 2006 WL 3422190 (N.D. Ill. Nov. 27, 2006)..................................................10

*Gen. Motors Corp. v. Alberic Colón Auto Sales, Inc.*,
   No. CIV.-05-1001 (DRD), 2006 WL 852101 (D.P.R. Mar. 30, 2006)...............................12

*Gherini v. Lagomarsino*,
   258 Fed. Appx. 81 (9th Cir. 2007) ....................................................................................6

*Giardina v. Fontana*,
   733 F.2d 1047 (2d Cir. 1984)............................................................................................5

*Giuliano v. Fulton*,
   399 F.3d 381 (1st Cir. 2005) ............................................................................................16

*Glickstein v. Sun Bank/Miami N.A.*,
   922 F.2d 666 (11th Cir. 1991)................................................................5

*González v. U.S.*,
   284 F.3d 281 (1st Cir. 2002) ...............................................................30

*Grunwald v. Bornfreund*,
   668 F. Supp. 128 (E.D.N.Y. 1987) .....................................................28

*Guerrero v. Gates*,
   442 F.3d 697 (9th Cir. 2006)...............................................................12

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
   492 U.S. 229 (1989) ......................................................................15, 20

*Harrell v. Colonial Holdings, Inc.*,
   923 F. Supp. 2d 813 (E.D. Va. 2013)..................................................32

*Hyson USA, Inc. v. Hyson 2U, Ltd.*,
   821 F.3d 935 (7th Cir. 2016)...............................................................34

*Isringhausen Imports, Inc. v. Nissan N. Am., Inc.*,
   No. 10-cv-3253, 2011 WL 1331886 (C.D. Ill. Apr. 6, 2011) .............32

*Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*,
   46 F.3d 258 (3rd Cir. 1995) ................................................................27

*Jordan K. Rand, Ltd. v. Lazoff Bros., Inc.*,
   537 F. Supp. 587 (D.P.R. 1982)..........................................................33

*K-Mart Corp. v. Davis*,
   756 F. Supp. 62 (D.P.R. 1991) ...........................................................39

*Kim v. Quichocho*,
   763 F. Supp. 2d 1214 (D. N. Mar. I. 2011)........................................22

*King v. Shou-Kung Wang*,
   663 Fed. Appx. 12 (2nd Cir. 2016) ...............................................16, 18

*King v. Wang*,
   No. 14-7694 (JFK), 2015 WL 42007076 (S.D.N.Y. 2015) ................18

*Klapper v. Commonwealth Realty Trust*,
   657 F. Supp. 948 (D. Del. 1987).........................................................26

*Kokkonen v. Guardian Life Ins. Co. of America*,
   511 U.S. 375 (1994) ............................................................................36

*Lares Grp., II v. Tobin*,
   221 F.3d 41 (1st Cir. 2000) .................................................................28

*Leskinen v. Halsey*,
    571 Fed. Appx. 36 (2nd Cir. 2014) ............................................................................6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    134 S. Ct. 1377 (2014) ...............................................................................................31

*Libertad v. Welch*,
    53 F.3d 428 (1st Cir. 1995) ...............................................................................24, 25

*Lightning Lube, Inc. v. Witco Corp.*,
    4 F.3d 1153 (3d Cir. 1993) ........................................................................................26

*Liquid Air Corp. v. Rogers*,
    834 F.2d 1297 (7th Cir. 1987) ..................................................................................26

*London v. Carson Pirie Scott & Co.*,
    No. 85C9712, 1987 WL 11382 (N.D. Ill. May 22, 1987) .....................................32

*In re Lupron Mktg. & Sales Practices Litig.*,
    295 F. Supp. 2d 148 (D. Mass. 2003) ......................................................................29

*Maggio v. Gerard Freezer & Ice Co.*,
    824 F.2d 123 (1st Cir. 1987) .....................................................................................30

*Maiz v. Virani*,
    253 F.3d 641 (11th Cir. 2001) ....................................................................................9

*Marini v. Adamo*,
    812 F. Supp. 2d 243 (E.D.N.Y. 2011) ......................................................................18

*Márquez v. Flextronics America, LLC*,
    No. 12-61520-Civ, 2014 WL 4792997 (S.D. Fla. Sept. 25, 2014) .......................28

*Marrero-Rolón v. Autoridad de Energía Eléctrica de P.R.*,
    No. 15-1167(JAG/SCC), 2015 WL 5719801 (D.P.R. Sept. 29, 2015) ..................29

*Marshall v. Marshall*,
    547 U.S. 293 (2006) ..............................................................................................3, 7

*Mathews v. Kidder, Peabody & Co.*,
    260 F.3d 239 (3d Cir. 2001) ......................................................................................30

*McGuire v. Levin*,
    9 F.3d 1552 (9th Cir. 1993) .......................................................................................26

*Menasco, Inc. v. Wasserman*,
    886 F.2d 681 (4th Cir. 1989) .....................................................................................16

*Mendoza v. Zirkle Fruit Co.*,
    30 F.3d 1163 (9th Cir. 2002) .....................................................................................12

*Michigan Elec. Transmission Co. v. Midland Cogeneration Venture, Ltd. P'ship*,
   737 F. Supp. 2d 715 (E.D. Mich. 2010)...............................................................25, 26

*Micromuse, Inc. v. Micromuse, PLC*,
   304 F. Supp. 2d 202 (D. Mass. 2004) ........................................................................33

*Neca Mortg. Corp.*
   *v. A & W Dev. S.E.*, 137 DPR 860 871 (1995)...........................................................37

*In re Neurontin Mktg. & Sales Practices Litig.*,
   712 F.3d 21 (1st Cir. 2013) .................................................................................13, 15

*Planetary Motion, Inc. v. Techsplosion, Inc.*,
   261 F.3d 1188 (11th Cir. 2001)..................................................................................31

*Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*,
   214 F. Supp. 3d 808, 820 (N.D. Cal. 2016) ..............................................................10

*ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*,
   314 F.3d 62 (2d Cir. 2002)........................................................................................34

*Puerto Rico Am. Ins. Co. v. Burgos*,
   867 F. Supp. 2d 216 (D.P.R. 2011)..............................................................................2

*Pyke v. Laughing*,
   No. 92–CV–555, 1998 WL 37599 (N.D.N.Y. Jan. 26, 1998) ..................................23

*Quint v. A.E. Staley Manufacturing*,
   246 F.3d 11 (1st Cir. 2001) .......................................................................................35

*Redondo Const. Corp. v. Izquierdo*,
   662 F.3d 42 (1st Cir. 2011) .......................................................................................36

*Republic of Columbia v. Diageo N. Am., Inc.*,
   531 F. Supp. 2d 365 (E.D.N.Y. 2007) ......................................................................22

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993).................................................................................................27

*Reynolds v. Condon*,
   908 F. Supp. 1494 (N.D. Iowa 1995).........................................................................9

*Rhode Island Fishermen's Alliance, Inc. v. Rhode Island Dept.*,
   585 F.3d 42 (1st Cir. 2009) .......................................................................................35

*Rodriguez v. Ell Tee, Inc. y Great Am. Indem. Co.*,
   57 D.P.R. 948, 956 (P.R. 1941) ................................................................................12

*Ruotolo v. Fannie Mae*,
   933 F. Supp. 2d 512 (S.D.N.Y. 2013)........................................................................28

*Schofield v. First Commodity Corp. of Boston*,
    793 F.2d 28 (1st Cir. 1986) ........................................................................................26

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985) ............................................................................................2, 8

*Shapo v. O'Shaughnessy*,
    246 F. Supp. 2d 935 (N.D. Ill. 2002) ....................................................................22, 30

*Tanaka v. First Hawaiian Bank*,
    104 F. Supp. 2d 1243 (D. Haw. 2000) ..................................................................7, 12

*Tartak v. Del Palacio*,
    No. 3:09-cv-01730 (DRD) (D.E. 63) (D.P.R., Oct. 4, 2010) ....................................3, 4, 5, 6

*Toro Vizcarrondo v. El Cocal Country & Beach Club Inc.*,
    HPE1991-1113, 2002 WL 31341993 (P.R. Cir. Aug. 30, 2002) .....................................11

*Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*,
    524 F.3d 315 (1st Cir. 2008) ..............................................................................28, 32

*United Mine Workers of Am. v. Gibbs*,
    383 U.S. 715 (1996) ..................................................................................................36

*United States v. Indelicato*,
    865 F.2d 1370 (2nd Cir. 1989) ..................................................................................18

*United States v. Woods*,
    335 F.3d 993 (9th Cir. 2003) .....................................................................................19

*Venture Tape Corp. v. McGills Glass Warehouse*,
    540 F.3d 56 (1st Cir. 2008) .......................................................................................31

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*,
    20 F.3d 771 (7th Cir. 1998) .......................................................................................20

*Vista Co. v. Columbia Pictures Indus., Inc.*,
    725 F. Supp. 1286 (S.D.N.Y. 1989) ...........................................................................23

*von Bulow v. von Bulow*,
    634 F. Supp. 1284 (S.D.N.Y. 1986) .............................................................................9

*W Holding Co., Inc. v. AIG Ins. Co.*,
    No. 11-2271, 2014 WL 3699383 (D.P.R. July 24, 2014) ...............................................29

*WEC Holdings, LLC v. Juarez*,
    No. 2:07-CV-00137-BES-PAL, 2008 WL 345792 (D. Nev. Feb. 5, 2008) .......................34

*Weizmann Institute of Science v. Neschis*,
    421 F. Supp. 2d 654 (S.D.N.Y. 2005) .........................................................................18

*Western Associates Ltd. P'ship v. Market Square Associates*,
    235 F.3d 629 (D.C. Cir. 2001) ................................................................................16, 17

*Whaley v. Auto Club Ins. Ass'n*,
    891 F. Supp. 1237 (E.D. Mich. 1995) ..........................................................................26

*Williams v. Metzler*,
    132 F. 3d 937 (3d Cir. 1997) ........................................................................................37

*Wilson v. Parisi*,
    549 F. Supp. 2d 637 (M.D. Pa. 2008) ............................................................................9

*Wolfram v. Wolfram*,
    78 F. Supp. 3d 758, 765 (N.D. Ill. 2015) .......................................................................5

**Statutes**

31 L.P.R.A. § 2671 .............................................................................................................12

31 L.P.R.A. § 3052 .............................................................................................................40

31 L.P.R.A. § 3451 .......................................................................................................37, 38

31 L.P.R.A. § 3452 .......................................................................................................37, 38

31 L.P.R.A. § 3512 .............................................................................................................32

32 L.P.R.A. § 3156 .............................................................................................................32

31 L.P.R.A. § 2129 ...............................................................................................................4

18 U.S.C. § 1961 *et seq* ("RICO")..............................................................................passim

Lanham Act, Section 43(a) (15 U.S.C. 1125(a)).................................................................2

Puerto Rico Trademark Act (10 L.P.R.A. § 223x) ...........................................................31

**Other Authorities**

Carlos E. Díaz Olivo, *Las Organizaciones Sin Fines De Lucro: Perfil Del Tercer Sector*
    *En Puerto Rico*, 69 Rev. Jur. U.P.R. 719, 760 (2000) ...........................................11

Peter Nicolas, *Fighting the Probate Mafia: A Dissection of the Probate Exception to*
    *Federal Court Jurisdiction*, 74 S. Cal. L. Rev. 1479, 1501–02, 1546 (2001) .........6

Plaintiffs, Fundación Segarra-Boerman e Hijos, Inc. ("FSB") and Mildred A. Segarra-Boerman ("Doña Mildred") (collectively, "Plaintiffs") hereby submit this opposition ("Opposition") to the motion to dismiss ("Motion") filed by defendants Alfredo Martínez-Álvarez ("Freddie"); Felipe Segarra Investment Corp. ("FSIC"); Titín Foundation, Inc. ("Titín Foundation"); José Ramón Quiñones-Coll ("Q-C"); the law firm of Martínez-Álvarez, Menéndez Cortada & Lefranc Romero, PSC (the "Law Firm"); Alfredo Martínez-Álvarez, Jr. ("Alfie"); Sofía Martínez-Álvarez ("Sofía"); Martinal Real Estate Corp. ("MRE"); and Martinal Management Corp. ("MMC") (collectively "Martinal") (all collectively, "Defendants").

## I.      INTRODUCTION

Defendants' Motion mischaracterizes, perverts and manipulates the facts alleged in Plaintiffs' Amended Complaint.    Through a procedurally-improper distortion of the Amended Complaint, Defendants audaciously seek to minimize a white collar crime, unprecedented in scope and decades in the making, against a venerated charitable institution and its ninety-four year old founding member, tsk-tsking the entire matter as some "mere inheritance quarrel."  Not only is Defendants' attempt to distort the facts demonstrably false, it is deeply ironic.  The Segarra-Boerman Family never had a family strife of any significance, much less an inheritance quarrel.  Regardless, Defendants' attempt to recast the factual underpinning of their appalling fraudulent scheme defeats their Motion as it triggers a factual dispute.

Defendants' need to resort to distorting the facts is unsurprising given that their legal arguments fail as a matter of law.  Conspicuously absent from Defendants' self-serving simplification is their failure to address an obvious, undeniable fact that courses through the Amended Complaint:  Defendants – as directors, officers and lawyers – flagrantly breached sacrosant fiduciary duties, including the unbending duty of loyalty owed to FSB and its founding member, Doña Mildred.  Defendants' silence speaks volumes.  The Motion does not challenge: (a) that Defendants' breaches of fiduciary duties and

fraudulent conduct were so pervasive, egregious and systematic as to give rise to liability under the Organized Crime Control Act of 1970 ("Racketeer Influenced and Corrupt Organizations Act") ("RICO"); (b) that Defendants misappropriated and traded upon the goodwill of the FSB Mark[1] in violation of the Lanham Act (15 U.S.C. 1125(a)); or (c) Plaintiffs' Puerto Rico law claims (Counts 13-19).

Instead, the Motion deflects Plaintiffs' charges of fraud and related wrongdoing by seeking protection in a number of misguided legal doctrines refracted through a distorted factual prism that only magnifies *the existence of cognizable claims and factual controversies*. A read of the Amended Complaint's factual allegations reveals Defendants' ruse, reinforces that Plaintiffs' have adequately pled RICO, Lanham Act and Puerto Rico state law claims, and compels that Defendants' Motion be denied in its entirety.

## II.      STANDARD OF REVIEW

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (citation and quotes omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 550 U.S. at 563, n.8.

"[T]he First Circuit has observed that the [m]ajor purpose of RICO is to protect legitimate businesses enterprises from infiltration by racketeers. In the same vein, the Supreme Court has pellucidly stated that courts should interpret RICO broadly. In fact, [t]he RICO statute provides that its

---

[1] All terms defined in the Amended Complaint or RICO Case Statement are incorporated in this Opposition by reference.

terms are to be liberally construed to effectuate its remedial purposes." *Puerto Rico Am. Ins. Co. v. Burgos*, 867 F. Supp. 2d 216, 227–28 (D.P.R. 2011); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497-98 (1985) ("RICO is to be read broadly. . . The statute's remedial purposes are nowhere more evident than in the provision of a private action for those injured by racketeering activity.")

## III.   <u>ARGUMENT</u>

### A.   <u>The Limited Probate Exception Does Not Apply In This Case</u>.

Defendants challenge this Court's subject matter jursdiction on the rather narrow "probate exception" to federal court jurisdiction.  (*See* Mot. at 9-11.)  This Court has previously distilled the following five rules from the Supreme Court's *Marshall v. Marshall* decision on this exception:

(1)    Claims that do not involve the administration of an estate, the probate of a will, or any probate matter are not barred by the probate exception.

(2)    Widely recognized [intentional] pure tort actions such as 'fraud, duress or other means intentionally prevents another from receiving from a third person an inheritance or gift that [had been] received is subject to liability to others for loss of the inheritance or gift' are not barred by the probate exception.

(3)    *In personam* judgments against other inheritors are not barred by the probate exception.

(4)    Suits to annul a will are barred by the probate exception.

(5)    A res subject to probate is barred from being in any manner carved or taken away from the jurisdiction of the state court.

*Tartak v. Del Palacio*, No. 3:09-cv-01730, at 8-9 (DRD) (D.P.R., Oct. 4, 2010) (D.E. 63) (quoting *Marshall v. Marshall*, 547 U.S. 293, 311-12 (2006) (quotation marks omitted)), attached hereto as **Exhibit 1** (hereinafter, "*Tartak*").  Plaintiffs' claims do not run afoul of any *Tartak* rule.[2]  Specifically, Plaintiffs do not ask the Court to administer Titín's estate or probate Titín's Third Will or any other matter, so the probate exception cannot apply under *Tartak* Rule (1).  Plaintiffs allege Defendants committed a tort by fraud, duress and other means to prevent inheritance, so the probate exception

---

[2] Defendants' Motion misstates that this Court's *Tartak* decision left "unresolved the probate exception issues" (*see* Mot. at 11, n. 5).  In truth, the *Tartak* court expressly **held that the probate exception did not apply** to two of the three claims involving the decedent's estate (including a claim for accounting of the estate, for restitution of all income, monies, properties and securities to the estate, and for damages due to negligence, unjust enrichment and fraud) and did apply to plaintiff's request for the "appointment of a receiver to the estate of R. Tartak account."  *See Tartak* at 15-17.

cannot apply under *Tartak* Rule (2).  Plaintiffs' claims are monetary *in personam* claims for damages against Defendants, arising from multiple violations of federal and state laws, including claims wholly unrelated to Titín's Third Will or his estate, so the probate exception cannot apply under *Tartak* Rule (3).  Plaintiffs do not seek to annul Titín's Third Will, so the probate exception cannot apply under *Tartak* Rule (4).  Plaintiffs do not seek any *res* in the custody of any Puerto Rico court, so the probate exception cannot apply under *Tartak* Rule (5).  Because no *Tartak* rules apply to this case, there is no basis for invoking the probate exception rule to bar any of Plaintiffs' claims.

1.   **The Probate Exception Cannot Apply Because Titín's Third Will Was Not Probated, No Puerto Rico Court Issued a Judgment Distributing Titín's Estate, and There Is No Res Subject to a Puerto Rico Court's Custody**.

No Puerto Rico court has probated or supervised the distribution of Titín's estate.  Freddie did not read Titín's Third Will to any of the named beneficiaries or notify them or anyone else of the existence of this will until after he had ensured complete control of the estate.  Freddie also rejected repeated inquiries by the Segarra-Stubbe Directors of FSB regarding Titín's will.[3]  (*See* Amend. Compl. ("AC") ¶¶ 259-61 & Ex. A.)  Instead, Freddie filed a petition for letters testamentary on July 30, 2013 in an *ex parte* proceeding before the Puerto Rico Court of First Instance ("CFI").  *See In re Alfredo Martínez Álvarez*, No. K JV2013-1569 (P.R. Court of First Inst. 2013), true and correct copies of the available court files are attached hereto as **Exhibit 2**.[4]

---

[3] By doing so, Freddie foreclosed the possibility that Plaintiffs or any other interested party could oppose his distribution of Titín's estate before the estate's assets were already in Defendants' hands. Defendants designed Titín's wills to streamline the distribution of his estate, including inserting an unlawful no-contest provision in Titín's Third Will through which he prevented adversarial probate proceedings.  (*See* AC at ¶ 262 and Ex. A.); 31 LPRA § 2129 (codifying Art. 624 of the Civil Code, which makes *in terrorem* clauses prohibiting a will contest unlawful).

[4] The Court "may take judicial notice of matters of public record in resolving [a Rule 12(b)(6)] motion, which may include a decision of a sister court . . . ."  *See Blue v. Doral Fin. Corp.*, 123 F. Supp. 3d 236, 260 (D.P.R. 2015) (citing *Berrios-Romero v. Estado Libre Asociado de Puerto Rico*, 641 F.3d 24, 27 (1st Cir. 2011).  So too, in resolving jurisdiction under Rule 12(b)(1).

The CFI issued Freddie's letters testamentary as a matter of course. *See Vilanova v. Vilanova*, 2012 TSPR 53 (P.R. 2012) (letters testamentary are processed either before the CFI in the usual course "without incident" or in "the office of a notary"). The *ex parte* proceeding effectuated two judicial acts: (i) the issuance of letters testamentary authorizing Freddie to "take possession of the assets of the deceased" and (ii) the granting of Freddie's motion to relieve him of his duties as executor of the estate. (*See* Ex. 1 at 23, 34.). The *ex parte* proceeding did not take any *res* into the CFI's custody or result in any judgment adjudicating rights to the assets of the Titín's estate.

Because there is no *res* in the CFI's custody and the estate's assets were distributed by Freddie as executor and now rest in his and the co-Defendants' exclusive possession, Plaintiffs' claims do not interfere with a *res* subject to a state probate court. *See Tartak* at 9; *Glickstein v. Sun Bank/Miami N.A.*, 922 F.2d 666, 673 (11th Cir. 1991) ("Finally, the assets at issue in this case are in the control of the defendants rather than the probate court. The purposes of the probate exception would not be served by declining jurisdiction over this case."); *Wolfram v. Wolfram*, 78 F. Supp. 3d 758, 765 (N.D. Ill. 2015) ("This principle dooms Sandra's dismissal motion. Probate of Duane's estate is long closed. And Sandra points to no other state-court proceeding involving the property at issue here. So there is no state court exercising *in rem* jurisdiction that would prevent the exercise of subject matter jurisdiction in this federal case. The probate exception does not apply.")

Similarly, because there is no *res* in the CFI's custody, Plaintiffs' inclusion of requests for equitable relief (including injunctive relief, a constructive trust and accounting), in addition to monetary damages, is entirely permissible against these Defendants, who already received the completely-distributed estate. *See Wolfram* at 767 ("Since fiduciary-breach claims are safe from the probate exception, so too are accounting claims. And finally, Blair's constructive trust claim, though an *in rem* claim, is specifically directed at assets in Sandra's possession; not assets in the possession of any state court. It too is safe."); *Giardina v. Fontana*, 733 F.2d 1047, 1051 (2d Cir. 1984); *see also Tartak* at 15-

17 (holding that claims involving assets "not at the moment within the custodial control of the court" and claims for accounting are not barred by the probate exception).[5]

### 2. The Probate Exception Cannot Apply Because Plaintiffs' Claims Are Monetary *In Personam* Claims for Damages.

Plaintiffs' claims seek monetary *in personam* damages against Defendants for multiple violations of federal and state laws, including RICO, the Lanham Act, and state laws prohibiting deceit in the contracting and performance of obligations, and the challenged conduct is wholly unrelated to the distribution of Titín's estate. *See Tartak*, at 8-9.

RICO claims constitute monetary *in personam* damages claims beyond the reach of the probate exception, even if the alleged fraudulent conduct is probate-related. *See, e.g.*, *Gherini v. Lagomarsino*, 258 Fed. Appx. 81, 83 (9th Cir. 2007) ("Gherini's first amended complaint asserts RICO and tort claims and seeks an *in personam* damages judgment against the defendants themselves; it does not seek to administer an estate, probate a will, or otherwise assume *in rem* jurisdiction over property in the custody of a state probate court."); *Leskinen v. Halsey*, 571 Fed. Appx. 36 (2nd Cir. 2014) ("Insofar as she sues for racketeering, common law fraud, willful negligence, and negligent misrepresentation, the relief sought may be at odds with concluded state probate proceedings, but the claims do not themselves ask the district court to administer an estate, probate a will, or perform another purely probate matter.").

Courts have held that faithless fiduciaries diverting family assets into their own hands through fraudulent conduct relating to a decedent's estate are RICO violations in the form of *in personam*

---

[5] RICO expressly provides for equitable remedies to prevent future violations, to preserve the assets of an enterprise victimized by racketeering, and to punish defendants. *See* 18 U.S.C. § 1964(a). Requiring Plaintiffs to pursue federal claims in the CFI, which offers no right to a jury trial and no special proficiency in handling federal RICO or federal unfair competition claims, would jeopardize Plaintiffs' federal and constitutional rights, including equitable remedies under RICO. *See generally* Peter Nicolas, *Fighting the Probate Mafia: A Dissection of the Probate Exception to Federal Court Jurisdiction*, 74 S. Cal. L. Rev. 1479, 1501–02, 1546 (2001) ("Thus, relegating suits brought pursuant to complex and significant federal statutes such as RICO or § 1983 to potentially biased and untrained state probate court judges by invoking the exception seems anathemal. . . When courts apply the probate exception to probate-related suits filed under RICO and other federal statutes, litigants are denied important federal rights.")

damages claims not barred by the probate exception.  *See King v. Wang*, 14-CIV-7694-JFK, 2015 WL
4207076, at *5 (S.D.N.Y. July 13, 2015), *aff'd in part, vacated in part sub nom. King v. Shou-Kung
Wang*, 663 Fed. Appx. 12 (2d Cir. 2016) ("We agree with the district court that the RICO claims raised
here are exactly the type of probate-related claims that *Marshall* permits federal courts to address.")[6];
*see also Tanaka v. First Hawaiian Bank*, 104 F. Supp. 2d 1243, 1254 (D. Haw. 2000) (holding that the
probate exception does not bar RICO claims alleging that "as sole [intestate] heir of Decedent" plaintiff
was "depriv[ed] of the property and income through intestate succession" by the fraudulent conduct of a
defendant, even though the state probate court admitted the will to probate and denied the plaintiff's
challenge).

Moreover, the majority of Plaintiffs' damages and injury allegations are substantially unrelated
to Titín's estate.  (*See* Opp., *infra* Section III(B)(1)(a); AC ¶¶ 2, 21, 57, 62, 85, 89, 94, 102, 127-29, 135,
139, 166-67, 190-97, 202, 221-231, 294, 512 & Ex. A; RICO Case Statement ("RCS") at 33-42, 59, 76-
78.)  Only ***one*** of the one-hundred and fifteen instances of predicate acts of mail and wire fraud itemized
in Exhibit A to the Amended Complaint mentions Titín's Third Will.  (*See* AC, Ex. A at 25.)  Plaintiffs'
preliminary damages assessment of $100 million (pre-treble), exceeds the declared value of the Titín
Estate.  (*See* RCS at 77.)  Consequently, these losses can only be compensated through a monetary
award from Defendants' collective pockets.

### B.      Plaintiffs State a Claim for Violations of the Civil RICO Statute.

The elements of a RICO claim are: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of
racketeering activity (*i.e.*, predicate acts).  18 U.S.C. § 1962(c); *see Efron v. Embassy Suites (Puerto*

---

[6] Similar to the allegations in this case, in *Wang* the lower court found that: "Plaintiffs' RICO claims are
based on allegations that Defendants engaged in an 'ambitious scheme . . . designed to change C.C.
Wang's financial affairs and long standing estate plan' in order to facilitate the diversion of family assets
away from Plaintiffs and into Defendants' hands. To the extent, therefore, that Plaintiffs' RICO claims
seek damages from Defendants personally on the ground that their conduct prevented Plaintiffs from
receiving an expected gift or inheritance, they are exactly the type of probate-related claims that
*Marshall* permits federal courts to address." *See Wang*, 2015 WL 4207076, at *5.

*Rico), Inc.*, 223 F.3d 12, 14 (1st Cir. 2000).   Defendants attack Plaintiffs' RICO claims on five (5)

grounds (*see* Mot. at 11-34), each of which is misguided for the reasons described below.

        **1.**      **Plaintiffs Have Standing to Sue on the RICO Claims.**

           **a.**    **<u>Plaintiffs Have Adequately Pled Injury to "Business or Property"</u>**.

      RICO requires a plaintiff to allege injury to their "business or property" by reason of conduct

constituting a violation of Section 1962. *See* 18 U.S.C. § 1964(c); *Sedima, S.P.R.L. v. Imrex Co.*, 473

U.S. 479, 495-96 (1985).   The Amended Complaint and RICO Case Statement amply allege, with

particularized facts, that Plaintiffs suffered such injuries.   Defendants' dismissive portrayal of Plaintiffs'

injury as non-proprietary, contingent or intangible (*see* Mot. at 12-17) grossly mischaracterizes and

ignores allegations of concrete, quantifiable injuries to Plaintiffs' business and property caused by

Defendants' racketeering.   For example, Plaintiffs' alleged at least twenty-one (21) specific injuries to

their business or property, which are listed in **Exhibit 3** to this Opposition, *infra*, and include FSB's

payment of a rich stream of improper and/or excessive payments; payments for retainers, fees, invoices,

salaries and bonuses to disloyal and faithless fiduciaries; payments to third party vendors for goods and

services exclusively benefitting Defendants; and, the loss of fee simple possession and value of real

estate, among other injuries.   (*See* Ex. 3).

      Numerous courts have held that comparable injuries constitute cognizable property and business

interests under RICO.   First, improper and/or excessive payments constitute a RICO injury.   *See, e.g.*,

*Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 36 F. Supp. 2d 560, 569 (E.D.N.Y.

1999) ("Money constitutes 'property' within the meaning of RICO" and the expenditure of money is an

injury under RICO); *In re Avandia Mktg.*, 804 F.3d 633, 638 (3d Cir. 2015) ("[P]roof of a concrete

financial loss . . . can be satisfied by allegations and proof of actual monetary loss, i.e., an out-of-pocket

loss."); *Haroco, Inc. v. Am. Nat'l Bank & Trust Co. of* Chicago, 747 F.2d 384, 398 (7th Cir. 1984)

(excessive interest charges constitute RICO injury); *Doe I v. The Gap, Inc.*, No. CV-01-0031, 2001 WL

1842389, at *4 (D.N. Mar. I. Nov. 26, 2001) ("Plaintiffs' allegations of excessive payments . . . are sufficient to show an injury to property caused by the defendants' alleged violations of RICO."); *Corporacion Insular de Seguros v. Reyes-Muñoz*, 849 F. Supp. 126, 133-34 (D.P.R. 1994) (fraudulently issued checks, including several for excessive bonuses, constituted a compensable RICO injury).

Second, payments for retainers, fees, invoices, salaries and bonuses to disloyal and faithless fiduciaries, and to third party vendors for goods and services exclusively benefitting Defendants, constitute a RICO injury. *See, e.g.*, *Cook County v. Lynch*, 620 F. Supp. 1256, 1257, 1259 (N.D. Ill. 1985) (payment for services not performed constitutes a RICO injury and damages can be measured as "equal to the entire amount of the disloyal employee's salary during the period of disloyalty."); *The Gap, Inc.*, 2001 WL 1842389, at *4 (payments for dishonest services constitute a RICO injury where plaintiffs alleged "they did not get the benefit of their bargain based on defendants' alleged dishonest conduct; i.e. that the [services paid for were] actually in the service of defendants."); *City of New York v. JAM Consultants, Inc.*, 889 F. Supp. 103, 106 (S.D.N.Y. 1995) ("The loss of an employee's faithful performance of his duties is an injury to the employer which is cognizable under RICO. . .").

Third, the loss of fee simple possession of real estate, whether for commercial or non-commercial purposes, constitutes a RICO injury. *Reynolds v. Condon*, 908 F. Supp. 1494, 1519 (N.D. Iowa 1995) (loss of non-business property, such as personal residence or marital home, or loss of income, may constitute a RICO injury); *von Bulow v. von Bulow*, 634 F. Supp. 1284, 1309 (S.D.N.Y. 1986) ("[H]er inability to enjoy her personal and real property may well be compensable monetary injuries under RICO."). Injury to the fair market value of property is also deemed a cognizable RICO injury. *See, e.g.*, *Maiz v. Virani*, 253 F.3d 641, 662 (11th Cir. 2001) (finding that RICO damages could include the amount of money that investors in fraudulent land deals would have earned "if the proceeds that Defendants pocketed through their frauds had been invested in U.S. real estate."); *Wilson v. Parisi*, 549 F. Supp. 2d 637, 640, 652 (M.D. Pa. 2008) (overpayment for property above fair-market value as a

result of a fraudulent appraisal constitutes a cognizable RICO injury).

Fourth, Defendants' tortious interference with Plaintiffs' "business" also constitutes a cognizable RICO injury. The interference with, or interruption of, a non-profit's activities, including those that are non-commercial in nature, such as the expenditure of charitable monies, are cognizable RICO injuries.[7] *See Gas Tech. Inst. v. Rehmat*, 05 C 2712, 2006 WL 3422190, at *19 (N.D. Ill. Nov. 27, 2006) ("When a business receives nothing in return for its expenditures, those expenditures constitute a business injury within the meaning of § 1964(c), even for not-for-profit entities. . . the money spent or revenue gained would otherwise have been spent productively to further the research and technology development related to natural gas, the very purpose for which GTI and GRI exist."); *Blue Cross*, 36 F. Supp. at 569 (cognizable RICO injury pled by non-profits alleging they were in the "business of providing healthcare" and forced to expend money that "could have been utilized to advance their other business interests" as a result of the defendants' racketeering); *Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*, 214 F. Supp. 3d 808, 820 (N.D. Cal. 2016) (cognizable RICO injury pled by non-profit alleging, among other injuries: "(i) their ability to serve their clients has been impaired; (ii) they incurred increased operational costs to ensure safety of patients and staff . . . and (iv) business relations with vendors have been interrupted or terminated. . .").[8]

---

[7] While Defendants diminish Plaintiffs' injury allegations as a theoretical interference with FSB's "mission," Plaintiffs in fact alleged: "a protectable business interest in fulfilling [FSB's charitable] legitimate purpose without illegal interference and misappropriation of either its monetary assets or intangible assets (including its goodwill and reputation, opportunities for additional family funding, and designation of origin, especially in relation to the name and memory of the founding family) through conduct amounting to racketeering activities."  (RCS at 36; *see also id.* at 38 (describing Doña Mildred's protectable business and property interest)).  These are cognizable injuries under RICO.

[8] Injuries to intellectual property as alleged by Plaintiffs are also cognizable injuries under RICO.  *See, e.g.*, *C&M Cafe v. Kinetic Farm, Inc.*, No. 16-cv-04342, 2016 WL 6822071, at *8 (N.D. Cal. 2016) ([M]isuse and infringement of trademarks and copyrights can give rise to a legally cognizable injury under RICO.  Here, defendants' imposter websites displayed C&M trademarks, service marks, and copyrights.  C&M has alleged that this misuse confused consumers who were likely to believe that they were ordering from C&M's official website when they were not.  It has alleged a plausible intellectual property injury [under RICO].") (internal citations omitted).

Finally, Doña Mildred – as an incorporator, founding member and original funding source of FSB – has a special status and standing that enable her to assert injuries to FSB. (*See* AC ¶¶ 11-12; RCS at 33-34, 37-38). *See generally* Carlos E. Díaz Olivo, *Las Organizaciones Sin Fines De Lucro: Perfil Del Tercer Sector En Puerto Rico*, 69 Rev. Jur. U.P.R. 719, 760 (2000) ("In this sense, the courts have understood that this 'interest' [held by a member of a non-profit] is similar to that of shareholders of a commercial corporation and, consequently, they have a recognized standing to initiate derivative actions to vindicate the rights and objects of the entity.") (translation ours); *accord Fraigcomar Soccer Club, Inc. v. Federación Puertorriqueña de Fútbol, Inc.*, No. KLAN200801136, 2009 WL 6038013, at *7 (P.R. Cir. Dec. 18, 2009) ("The 'members' of a non-profit corporation have a special interest in the pursuit of the objects and purposes of the corporation.") (translation ours). Where fraud and breach of fiduciary duties are alleged, the interest of a non-profit member is afforded additional weight. *See* Díaz Olivo, *supra*, at 764 ("[T]he courts have demonstrated receptivity in allowing private claimants to protect the interests of a charitable institution in cases of abuse or breach of fiduciary duties, and in situations where fraudulent acts are alleged.") (translation ours). Defendants owed fiduciary duties not only to FSB, but also to Doña Mildred as FSB's founding member, including a duty of ***absolute loyalty*** to her. *Id.* at 754 ("To protect and safeguard the interests of the [non-profit] corporation, the directors and officers are charged with an obligation of ***absolute loyalty*** with and for the entity ***and its members***. Such duty prohibits taking advantage of their position to abuse or take personal benefit through fraudulent or unjust acts that prejudice the corporation ***and its members or shareholders***.") (translation and emphasis ours).

Relatedly, Doña Mildred and Titín – as incorporators and members of FSB – had a contractual relationship with each other and with FSB. *See Amador v. Conc. Igl. Univ. De Jesucristo*, 2000 TSPR 47 (P.R. 2000) ("Additionally, we have recognized that, the constitution and bylaws of an organization are the contract that regulate the relationship between said entity and its members and that, because of it,

this relationship is contractual in nature.") (translation ours); *cf. Toro Vizcarrondo v. El Cocal Country & Beach Club Inc.*, HPE1991-1113, 2002 WL 31341993, at *6 (P.R. Cir. Aug. 30, 2002) (finding the bylaws of a corporation form part of the shareholders' contract with the corporation). Doña Mildred and Titín, along with their parents, also provided FSB with seed money and income-producing assets through *inter vivos* transfers of property made by contract. (AC ¶ 13; RCS at 37).

The Segarra-Boerman Family's relationship with FSB was forged through a contractual covenant which the law protects from tortious interference by unscrupulous and unethical actors. *See Mendoza v. Zirkle Fruit Co.*, 30 F.3d 1163, 1168, n.4 (9th Cir. 2002) ("[W]hat is required [under RICO] is precisely what the employees allege here: a legal entitlement to business relations unhampered by schemes prohibited by the RICO predicate statutes."); *Guerrero v. Gates*, 442 F.3d 697, 707–08 (9th Cir. 2006) ("Guerrero's alleged harm amounts to intentional interference with contract and interference with prospective business relations, which are torts under California law that constitute injury to business or property under RICO. Therefore, Guerrero adequately pleaded the injury to business or property required to establish standing under RICO."); *Gen. Motors Corp. v. Alberic Colón Auto Sales, Inc.*, No. CIV.-05-1001 (DRD), 2006 WL 852101, at *2 (D.P.R. Mar. 30, 2006) (recognizing that tortious interference with a business expectancy is a cause of action under Puerto Rico and common law).

Accordingly, the covenant between Doña Mildred, FSB and Titín gave rise to a protectable business expectancy that Titín would provide them (and not a competing sham "charity" created, owned and controlled by his conflicted lawyers) with a funding source to further its charitable efforts.[9]

---

[9] Defendants also tortiously interfered with Doña Mildred's inheritance expectancy, which she enjoys as Titín's sole intestate heir, given that Titín's three wills were procured by fraud and undue influence perpetrated by Freddie and the co-Defendants. (*See* AC ¶¶ 5, 389); 31 L.P.R.A. § 2671 (collateral relatives are intestate heirs in the absence of descending or ascending relatives); *Rodriguez v. Ell Tee, Inc. y Great Am. Indem. Co.*, 57 D.P.R. 948, 956 (P.R. 1941) ("In the absence of ascending or descending lines, collaterals and spouses inherit, in the order established in articles 904 to 910 of the Civil Code (ed. 1930) (translation ours); *cf. Tanaka v. First Hawaiian Bank*, 104 F. Supp. 2d 1243, 1254 (D. Hawaii 2000) (finding that the plaintiff stated valid RICO claims for injury to his intestate interest caused by the defendant's fraudulent conduct in forcing the probate of a revoked will).

**b.      Plaintiffs Have Adequately Pled Proximate Causation
Between Defendants' Racketeering Acts and Plaintiffs' Injury**.

To state a RICO claim, a plaintiff must allege that its injury was proximately caused by the racketeering activity. *See Efron*, 223 F.3d at 17 (citing *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 266-68 & n.12 (1992)). Proximate causation "concerns whether the chain of events between [the racketeering activity] and the [injury] is *so attenuated* that, for legal and policy reasons, [the plaintiff's] claim for recovery should be denied." *In re Neurontin Mktg. & Sales Practices Litig.*, 712 F.3d 21, 34 (1st Cir. 2013) (finding proximate causation where the plaintiff was the "primary and intended victim" of the defendant's scheme to defraud, and its injury "a foreseeable and natural consequence" of the fraudulent scheme) (emphasis added).

The Amended Complaint and RICO Case Statement allege, with particularized facts, that Plaintiffs' aforementioned injuries were the direct, foreseeable and natural consequence of Defendants' racketeering activity and predicate acts of mail and wire fraud. (*See* AC ¶¶ 2, 21, 57, 62, 85, 89, 94, 102, 127-29, 135, 139, 166-67, 190-97, 202, 221-231, 294, 337-460, 512 & Ex. A. *See generally* RCS.) Defendants targeted Plaintiffs through mails and wires with intentional misrepresentations and omissions in perversion of their legal duty to speak with full candor, and Plaintiffs justifiably relied on these false statements and manipulations to their detriment.

Doña Mildred, for example, relied upon Freddie and the co-Defendants, as her fiduciaries, to provide truthful and disinterested advice. She received letters, faxes, contracts, wires and other communications from them, which proximately caused, among other harms: (i) the diminishment of her inheritance from Doña Amelia's estate; (ii) the payment of services to conflicted attorneys, accountants and other professionals who assisted in the FSIC Buyout under Freddie's instruction; and (iii) the loss of ownership of valuable income-producing real property held by FSIC in exchange for lesser valued liquid assets. (*See* Opp., *supra* § III(B)(1); AC ¶¶ 85-134 & Ex. A.)

Similarly, FSB relied upon Freddie and the co-Defendants, as its fiduciaries (directors, officers,

13

lawyers), to provide truthful and disinterested advice.  FSB received letters, emails, faxes, invoices, contracts, wires and other communications from Freddie and the co-Defendants which proximately caused, among other harms:  (i) the payment of retainers, invoices, fees, interest, salaries and bonuses to Defendants as faithless fiduciaries and servants; (ii) the payment of "charitable contributions" for the Defendants' benefit; (iii) the payment of goods and services for Defendants' benefit; (iv) the payment of taxes and penalties to *Hacienda* as a result of Defendants' mismanagement of FSB; and (iv) the loss of fee simple ownership of the Cataño Land and hundreds of thousands of dollars in development costs, "debts" and property taxes for a failed, risky land development venture orchestrated by self-dealing Defendants.  (*See* Opp., *supra* § III(B)(1); AC ¶¶ 135-97; Ex. A.)

No intervening events cut off Defendants' proximate causation of Plaintiffs' losses.  Defendants misstate that the declaration of a wetland was the intervening event that proximately caused harm to the Cataño Land.  (*See* Mot. at 20.)  In truth, FSB's loss was incurred when it exchanged real property for no return consideration without full disclosures by its self-dealing fiduciaries.  This loss was compounded when its fiduciary – through predicate acts of mail and wire fraud – orchestrated the payment of development costs and purported "debts" and taxes, which collectively totaled hundreds of thousands of dollars.  (*See* AC ¶¶ 135-68.)  Nothing is attenuated.  ***But for*** Defendants' fraud, FSB would not have incurred any losses related to the Cataño Land.  These losses were the direct and foreseeable result of Defendants' self-dealing[10] and botched attempt to profit from FSB's real property holdings.  There are enormous legal or policy reasons to hold fiduciaries personally liable for such actions.

Likewise, Plaintiffs' tortious interference claims fulfill the proximate causation requirement.  ***But for*** Defendants' secretive undue influence and fraudulent rigging of wills, Titín would not have made a sham entity (owned and controlled by his lawyer with multiple conflicts) the universal heir of his

---

[10] Defendants' denial of self-dealing with the Cataño Land is a factual dispute that cannot be disposed at this motion to dismiss stage.

estate.  The direct, foreseeable and intended result of the Defendants' unethical, fraudulent conduct was the amassing and siphoning of Titín's portion of the Segarra-Boerman Family wealth into an entity owned and controlled by Defendants.

A plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of proximate causation." *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 804 F.3d 633, 646 (3d Cir. 2015).   Plaintiffs have easily satisfied their burden of alleging proximate causation, while Defendants have failed to show an intervening cause apparent on the face of the complaint.  *See In re Neurontin Mktg. & Sales Practices Litig*. at 45 ("But the burden of proving an intervening cause – something which snaps the causal chain (that is, operates as a superseding cause, wiping out the defendant's liability) that connects the wrongful act to the defendant's injury – is on the defendant.")  Further analysis of the causation requirement is the subject of currently pending discovery requests and a question of fact.  *JAM Consultants*, 889 F. Supp. at 105 (While the City must eventually establish that the alleged predicate acts of bribery were a substantial factor in the sequence of responsible causation, and [that] the injury is reasonably foreseeable or anticipated as a natural consequence, this is an issue of fact which cannot be determined on a motion to dismiss the complaint for failure to state a claim."); *Planned Parenthood Federation*, 214 F. Supp. 3d at 827.

2.      **Plaintiffs Adequately Pled a "Pattern of Racketeering Activity**".

A RICO claim requires at least two predicate acts to establish a "pattern of racketeering activity." 18 U.S.C. §1961(5).   These predicate acts must be related and continuous.  *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239 (1989); *Feinstein v. Resolution Trust Corp.,* 942 F.2d 34, 44 (1st Cir. 1991).   Courts recognize two types of continuity that may support a RICO claim: "closed-ended" or "open-ended."  *H.J. Inc.*, 492 U.S. at 241-242; *Feinstein*, 942 F.2d at 45.  Plaintiffs have amply pled both closed-ended and open-ended continuity.

a.        **Plaintiffs Have Amply Pled Closed-Ended Continuity**.

The First Circuit's test[11] for closed-ended continuity gives primacy to the temporal duration of the racketeering activity. *Giuliano v. Fulton*, 399 F.3d 381, 387 (1st Cir. 2005); *Fleet Credit Corp. v. Sion*, 893 F.2d 441, 446-47 (1st Cir. 1990); *see also Fresh Meadow Food Servs., LLC v. RB 175 Corp.*, 282 Fed. Appx. 94, 99 (2d Cir. 2008) (describing closed-ended continuity as centrally a temporal concept). The alleged series of predicate acts must have taken place over more than "a few weeks or months." *Giuliano,* 399 F.3d at 387 (quoting *H.J. Inc.,* 492 U.S. at 242). If this requirement is met with alleged predicate acts "so extensive that 'common sense compels a conclusion of continuity,'" then closed-ended continuity must be found. *Id.* (citing *Efron*, 223 F.3d at 18 and *Fleet*, 893 F.2d at 446-447). For situations where predicate acts occurred over a few months, but are not "so extensive," the court should consider other indicia of continuity, such as the existence of a sufficient number of victims and perpetrators, separate schemes and distinct injuries. *Giuliano,* 399 F.3d at 387-88.

The Amended Complaint alleges a RICO scheme to defraud involving at least 115 particularized predicate acts[12] spanning over 40 years. (*See generally* AC ¶¶ 2, 8, 36-320, 337-464 & Ex. A; RCS at 5-33, 42-48). The racketeering activity alleged is so extensive that this Court should conclude that closed-ended continuity exists. RICO schemes of shorter duration and lesser predicate acts have been found to satisfy closed-ended continuity. *See, e.g.*, *Fleet*, 893 F.2d at 446 (ninety-five acts over a period of four and one-half years); *King v. Shou-Kung Wang*, 663 Fed. Appx. 12, 14 (2nd Cir. 2016) (numerous predicate acts diverting assets from an estate over a period of seven years); *Fabrica de Muebles J.J.*

---

[11] Defendants ignore the First Circuit's test and instead rely upon inapposite cases that apply a different closed-ended continuity analysis. *See, e.g.*, *Western Associates Ltd. P'ship v. Market Square Associates,* 235 F.3d 629 (D.C. Cir. 2001) (applying a multi-factored test which gives neither primacy nor greater weight to the temporal continuity factor).

[12] Unlike the deficient allegations in the cases cited in Defendants' Motion, *see e.g.*, *Western Associates,* 235 F.3d 629; *Menasco, Inc. v. Wasserman*, 886 F.2d 681 (4th Cir. 1989), the Amended Complaint, including Exhibit A, pleads the predicate acts with sufficient particularity – the "who, what, when, and where" of each fraudulent communication is pled – in order to satisfy FED. R. CIV. P. 9(b).

*Álvarez, Inc. v. Westernbank de Puerto Rico*, No. 09-1558 (GAG), 2009 WL 4730776, *8 (D.P.R. Dec. 4, 2009) (daily acts of bank fraud over a period of two and a half years); *see also Fresh Meadow Food Servs.*, 282 Fed. Appx. at 99 (racketeering acts spanning three and a half years).

Even if this Court should deem the alleged forty years to lack sufficient duration, the secondary indicia – the existence of a sufficient number of victims, perpetrators, schemes and injuries – also support a finding of closed-end continuity. Defendants' overarching scheme to defraud the Segarra-Boerman Family was as broad in scope as it was long in duration, involving multiple Defendants (at least nine), multiple related and interrelated schemes (at least eight), and distinct injuries to multiple victims (at least six). Specifically, Defendants intentionally targeted Plaintiffs – as well as other victims – through numerous related schemes to defraud, including:

(i)     the distribution of Doña Amelia Boerman's estate;

(ii)    the FSIC Buyout;

(iii)   the Cataño Land Deal;

(iv)    self-dealing with charitable contributions;

(v)     self-dealing with FSB's assets to benefit interrelated companies owned or controlled by Freddie, co-Defendants or their families (*e.g.*, rent paid to Freddie's company, The Firm, Inc., and invoices paid for IT services and equipment benefitting Martinal, bonuses paid to Freddie's brother-in-law for moving investment portfolios to different brokerages without authorization by the FSB Board, and others);

(vi)    breaching fiduciary duties to Plaintiffs by failing to disclose and intentionally concealing conflicting roles as advisors and fiduciaries to the Titín Foundation, FSIC, Infinity and other entities to which Plaintiffs' funds or assets flowed, while providing and charging for dishonest services to Plaintiffs;

(vii)   conspiracy to steal 20% of FSB's investment portfolio and all of FSB's income producing commercial real estate through false and fraudulent pretexts and undue influence upon an outside consultant, Douglas White; and

(viii)  theft of the Titín estate.

(*See* AC ¶¶ 2, 8, 21-30, 36-320 & Ex. A; RCS at 5-33, 42-48).

Further, predicate acts and schemes caused distinct injuries to different victims, including but not limited to the: (i) two named Plaintiffs; (ii) members and relatives of the Segarra-Boerman Family; (iii) individuals and charitable organizations (who would have received donations but for their diversion to other self-interested entities); (iv) Titín Foundation; (v) other persons named in the Amended Complaint, such as the members of the Méndez-Bagur Family; and (vi) the larger social interest in protecting the

elderly from fraud and protecting legitimate charities from diversion of assets and pilfering.  (*See* AC ¶¶ 2, 21, 28, 30, 57, 62, 74-75, 85, 89, 94, 102, 127-29, 135, 139, 166-67, 181-197, 202, 211, 221-231, 294, 512 & Ex. A; RCS at 33-42, 59, 76-78; Opp., *supra* § III(B)(1).)

Defendants dare to spin all of this down to mere allegations of "at most two victims" and "a single financial endeavor."  (*See* Mot. at 22.)  Because this is a motion to dismiss, the Court must accept as true Plaintiff's allegations that Defendants committed 115 predicate acts over 40 years to harm six victims. However, even if the Court were to accept Defendants' grossly distorted reduction, Defendants' argument still fails because the First Circuit has held that a singular scheme with two victims may establish closed-ended continuity.  *See Fleet Credit Corp.*, at 446-47 (singular scheme perpetrated by two defendants targeting one entity over four-and-a-half years with ninety-five predicate acts of mail fraud established closed-ended continuity).  The Second Circuit agrees.  *Shou-Kung Wang*, 663 Fed. Appx. at 14 (finding two perpetrators and two victims sufficed for closed-ended continuity, reversing the lower court's holding), *reversing in part King v. Wang*, No. 14-7694 (JFK), 2015 WL 42007076, at *7 (S.D.N.Y. 2015) (holding that closed-ended continuity was not shown where RICO allegations "essentially concern the conduct of a discrete set of actors (a father and son, assisted in some instances by a narrow group of friends), directed at a small group of victims" and "undertaken principally for the limited purpose of gaining possession of a decedent's property.")

In a case involving comparable allegations of fraudulent conduct by faithless fiduciaries, the court rejected defendants' argument that closed-ended continuity could not be proven with "a discrete, limited scheme by two participants . . . against two victims . . . to further a single fraudulent goal (to gain control of Mrs. Gelman's assets)."  *See Weizmann Institute of Science v. Neschis*, 421 F. Supp. 2d 654, 688 (S.D.N.Y. 2005).  Denying the defendants' motion to dismiss, the *Neschis* court found closed-ended continuity established by allegations of an underlying scheme "to obtain control over Mrs. Gelman's substantial assets, including fraudulent execution of, among other things, her New York and

18

Mexican wills, powers of attorney, the Inter Vivos Trust, and the Anturia [Foundation] by-laws" over a period of at least seven years and through twenty-four predicate acts.  *See id.* (citing *Jacobson v. Cooper*, 882 F. 2d 717 (2nd Cir. 1989)); *United States v. Indelicato*, 865 F.2d 1370, 1383 (2nd Cir. 1989) (multiple acts of racketeering are not to be excluded from the reach of RICO "simply because . . . they further but a single scheme."); *Marini v. Adamo,* 812 F. Supp. 2d 243 (E.D.N.Y. 2011) (singular scheme of 4 defendants targeting 3 victims spanning 6 years, involving 144 predicate acts).[13]

Defendants argue that the list of predicate acts itemized in Exhibit A to the Amended Complaint does not satisfy the continuity requirement because they concern mostly "mere nondisclosures or other alleged mail/wire fraud without any allegations of intentional misrepresentation or materiality[.]"  (*See* Mot. at 23, n. 9.)  This argument fails for three reasons.  First, the alleged predicate acts are properly considered for closed-ended continuity even if those mailings lack affirmative misrepresentations.  *See Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York*, 808 F. Supp. 213, 228 (S.D.N.Y.1992) ("[M]ailings themselves need not contain misrepresentations, nor must they contribute directly to the deception of the plaintiffs," as long as they are "part of the execution of the [underlying fraudulent] scheme.").

Second, the alleged predicate acts do, indeed, concern intentional omissions and misrepresentation because they were committed by attorneys, officers and directors charged with independent fiduciary duties.  *United States v. Woods*, 335 F.3d 993, 1001 (9th Cir. 2003) ("A scheme to defraud may be based on nondisclosure when there exists an independent duty that has been breached by

---

[13] A case involving comparable allegations of fraudulent conduct by faithless fiduciaries, but analyzing the "relatedness" prong of the pattern requirement, held: "Plaintiff's allegations do not consist of a single episode having the single purpose of injuring Foster and accomplishing that objective through that single 'episode.' As Plaintiff alleges in the Complaint: '[the numerous alleged acts'] common purpose was to defraud Foster of money and property, [and] their common result was to defraud Foster of money and property. That Foster (while he was alive) was the only immediate victim of the alleged actions has no bearing on whether the 'pattern' allegations are sufficient.  Moreover, in any realistic sense, his estate also is the victim. Accordingly, the Court finds that the allegations . . . sufficiently establish a pattern of racketeering activity."  *Estate of Foster v. Gomer*, No. 11-cv-1242, at 12 (C. D. Cal. Feb. 15, 2012) (D.E. 43), attached hereto as **Exhibit 4** (hereinafter, "*Estate of Foster*").

the person so charged.  This independent duty may exist in the form of a fiduciary duty to third parties."); *cf. Estate of Foster*, at 9 (finding lawyer and trustee accused of similar fraudulent conduct owed fiduciary duties, and "their alleged breaches of those duties by omissions of material and truthful information constitute plausible allegations of fraud . . . Plaintiff has, therefore . . . pled facts sufficient to support mail and wire fraud against all Defendants as a predicate act of RICO.").  As previously mentioned, Defendants owed an absolute duty of loyalty to Plaintiffs.  *See* Díaz Olivo, *supra*, at 754.

Third, Defendants' attack on the "materiality" of the predicate acts listed in Exhibit A is premature as materiality is a question of fact improperly considered on a motion to dismiss.  *See Estate of Foster*, at 8 (finding that the issue as to whether the thirty-two predicate acts of mail and wire fraud alleged by plaintiff were "inconsequential" was an issue of fact improper on a motion to dismiss).

**b.    Plaintiffs Have Amply Pled Open-Ended Continuity**.

Open-ended continuity exists where the RICO defendant's conduct is capable of threatening future repetition.  *See H.J. Inc.*, 492 U.S. at 241.  Specifically, a RICO plaintiff must allege: "(1) a specific threat of repetition exists; (2) the predicate acts are a regular way of conducting an ongoing legitimate business; or (3) the predicate acts can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes."  *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 782 (7th Cir. 1998) (quoting *H.J. Inc.*, 492 U.S. at 242-43).  "[T]he threat of continuity must be viewed at the time the racketeering activity occurred."  *CVLR Performance Horses, Inc. v. Wynne*, 524 F. App'x 924, 929 (4th Cir. 2013) (quoting *U.S. v. Busacca,* 936 F.2d 232, 238 (6th Cir. 1991)).  A "fortuitous interruption" of the racketeering activity caused by the victims' discovery of the misconduct does not preclude a finding of open-ended continuity.  *Id.*

All three elements of open-ended continuity have been alleged in the Amended Complaint. Defendants have operated long-term (*i.e.*, 40 years) associations (*i.e.*, fiduciary positions with Plaintiffs) for criminal purposes (faithlessly conspiring and acting to denude Plaintiffs of their personal, family and

charitable wealth).  Defendants' predicate acts were a regular way of conducting the ongoing businesses of the Law Firm, FSIC, MMC, MRE and FSB, by lawyers and officers masquerading as credible, legitimate and reliable fiduciaries who, in truth, were patiently and surreptitiously fleecing Plaintiffs for decades.  (*See, e.g.,* AC ¶¶ 21-30, 33-320, 337-355; RCS at 5-33, 42-54).  The Amended Complaint amply alleges that these racketeering acts constitute Defendants' regular course of business.  (*See, e.g.,* AC ¶¶ 76, 344, 346, 363, 376, 386, 399, 415, 427, 439, 449, 458; RCS at 58-60.)

Moreover, Plaintiffs have alleged that a specific threat of repetition exists.  Defendants continue to operate as fiduciaries for other wealthy Puerto Rican families, their holding companies, charitable foundations, trusts and estates, and there is no indication that they have ceased their fraudulent activities, which is their regular way of doing business.  The Amended Complaint alleges that, at least two other family-foundations, the Méndez-Bagur Foundations, were victimized by Defendants' modus operandi (*i.e.*, earning trust to infiltrate and exploiting that trust to misappropriate the funds).  (*See* AC ¶¶ 28, 74-76, 211).[14]  Further, were it not for Plaintiffs' discovery and fortuitous interruption of Defendants' well-concealed fraud, Defendants' racketeering activity would have continued to injure Plaintiffs as it presently threatens to injure other, unsuspecting families and foundations.  (*See* AC ¶¶ 74-76, 350, 353, 355.)  *See, e.g.*, *CVLR,* 524 F. App'x at 928-929 (where RICO defendants committed racketeering acts for over three (3) years, used a bank to lure victims into the scheme under a guise of legitimacy, the bank continues to advertise as a bank, and there is no inference that the defendants had ceased their fraudulent activities, open-ended continuity was established); *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1529 (9th Cir. 1995) (where plaintiff alleged that extorting kickbacks had become defendants' regular way of doing business and there was no suggestion that they would have ceased had plaintiffs not intervened, open-ended continuity was shown).

---

[14] Further evidence of Defendants' misappropriation from other family foundations will unearthed by FSB's already-propounded written discovery requests as well as by evidence obtained by Plaintiffs subsequent to the filing of the Amended Complaint, which reveals that Defendants are ***still*** moving funds from the Titín Foundation to the Méndez-Bagur foundations.

3.      **Plaintiffs Have Adequately Pled an Acquisition Injury for Section 1962(b)**.

Plaintiffs have pled a §1962(b) "acquisition injury," an injury caused by the acquisition or maintenance of control or interest over the specifically alleged enterprises by the specific Defendants identified in Counts 6 through 9, an injury which is distinct from injuries caused by the ordinary predicate acts of fraud themselves. *See Compagnie De Reassurance D'lle de France v. New England Reinsurance Corp.*, 57 F.3d 56, 92 (1st Cir. 1995); *Andrews Farms v. Calcot, Ltd.*, 527 F. Supp. 2d 1239 (E.D. Cal. 2007) (A Section 1962(b) claim must allege (1) the defendant's activity led to its control of a RICO enterprise, and (2) the control resulted in an injury to plaintiff). Those Counts in the Amended Complaint and RICO Case Statement are replete with factual allegations, including those incorporated by reference, describing how Defendants acquired control of the FSB, FSIC, Titín Foundation, and Titín Estate alleged enterprises through a pattern of racketeering activity, and articulating how such conduct injured Plaintiffs. (*See, e.g*., AC ¶¶ 38-134, 170-80, 218-20, 419-460.)[15]

Once Defendants snaked their way into positions of trust and influence, FSB and Doña Mildred were both injured as a result of Defendants' acquisition and maintenance of control over these enterprises.[16] Stated differently, Defendants broadened and deepened their scheme to defraud Plaintiffs by increasingly consolidating their control of the enterprises, which gave them the ability to loot them and use them to cause injury to Plaintiffs' business and property. *See Kim v. Quichocho,* 763 F. Supp.

---

[15] The Amended Complaint devotes entire sections of the factual narrative - with headings such as "Freddie Gains Control of FSB and FSIC Despite Glaring Conflicts of Interests Hidden From Plaintiffs" - to describe the multi-year process by which Defendants ingratiated themselves into positions of trust and influence over the multiple enterprises through a pattern of racketeering activity. (*See, e.g.*, AC §§ IV. B-E, H, J, O-T & Ex. A. *See generally* RCS at 4-33 (particularly describing how each Defendant acquired control of the enterprises)).

[16] The Amended Complaint dedicates entire sections of the facts - with headings such as "Defendants Steer Money from FSB's Accounts to Charities in Which They Had an Interest" and "Freddie Stole Goods and Services Paid for by FSB to Third Party Vendors"- to describing how Defendants continued to consolidate their control and use the enterprises as vehicles to injure Plaintiffs. (*See, e.g.*, AC §§ IV. F-G, I, L-M, O-R, W-Y & Ex. A; *see generally* RCS at 55-77 (particularly describing Plaintiffs' injuries from Defendants acquiring or maintaining control of the enterprises)).

2d 1214, 1227 (D. N. Mar. I. 2011) (§1962(b) injury alleged when control caused plaintiff's lost interest in property and profits therefrom); *Republic of Columbia v. Diageo N. Am., Inc.,* 531 F. Supp. 2d 365, 429 (E.D.N.Y. 2007) (§1962(b) injury alleged where control enabled defendants to broaden and deepen their money laundering scheme and its effects); *Shapo v. O'Shaughnessy,* 246 F. Supp. 2d 935, 964 (N.D. Ill. 2002) (§1962(b) injury alleged where control enabled defendants to prolong existence of enterprise thus continuing to fleece the companies and to hide wrongful actions).

Nothing more is required on a motion to dismiss. *Pyke v. Laughing,* No. 92–CV–555, 1998 WL 37599, at *7 (N.D.N.Y. Jan. 26, 1998) ("[t]o survive a motion to dismiss [a § 1962(b) claim], the complaint must specify the connection between defendants' racketeering activity and their interest in the . . . enterprise."); *Vista Co. v. Columbia Pictures Indus., Inc.*, 725 F. Supp. 1286, 1300 (S.D.N.Y. 1989) ("Plaintiffs' complaint alleges in detail how they were allegedly injured by Columbia's control over the accounting process, the security interests in the films, and Columbia's control over the income flow.") Plaintiffs have abundantly alleged the connection and proximate causation between Defendants' control of the enterprises and injury to Plaintiffs' business and property.[17]

### 4.    Plaintiffs Have Adequately Pled a Conspiracy to Violate Section 1962(a).

The conspiracy allegations in Count 5 state a claim for a §1962(d) conspiracy to violate §1962(a) concerning the unlawful use or investment of racketeering income whether Defendants' conspiracy was ultimately successful in violating §1962(a).  It alleges that the Defendants conspired among themselves to use and invest racketeering funds in the operation of the Law Firm, FSIC, Titín Foundation, MRE, and MMC Enterprises.  (AC ¶¶ 414-416; RCS at 73-75).  Plaintiffs also allege that they suffered injury as a result of the conspiracy to use and invest funds in the operation of the enterprises.  (AC ¶ 417; RCS

---

[17] These adequately pled acquisition injuries vitiate Defendants' primary challenge to the sufficiency of the §1962(d) conspiracy counts to violate §1962(b) (Counts 7 and 9) and to the sufficiency of allegations that a conspiracy existed and each Defendant participated in the conspiracy. (*See* Mot. at 25). Conspiracy allegations relating to Defendants' agreement to acquire control or an interest in the enterprises, or further an endeavor that would result in the same, are pled throughout the Amended Complaint. (*See, e.g.*, AC ¶¶ 7, 21, 24, 188, 191, 338-39, 350, 353, 370-77, 393-402, 430-41, 452-60.)

at 73-75).  All of the required elements to state a claim, including an investment injury to Plaintiffs, are adequately alleged for either a violation of §1962(a) or for a conspiracy to do so.[18]

Like most conspiracies, a §1962(d) violation has occurred even if the object of the conspiracy was thwarted, or even though the finder of fact may conclude that the substantive §1962(a) violation was not shown, and can entitle Plaintiffs to recover for non-investment injuries in furtherance of that conspiracy.  *See Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 21 (1st Cir. 2000) ("A conspiracy claim under section 1962(d) may survive a *factfinder's* conclusion that there is insufficient evidence to prove a RICO violation. . . .); *Beck*, 529 U.S. at 506, n.10 (leaving open "whether it is sufficient for the plaintiff to allege an agreement to complete a substantive violation and the commission of at least one act of racketeering that caused him injury.")

###    5.    Plaintiffs Have Adequately Alleged Viable RICO Enterprises.

Defendants seem to forget that the statutory definition of "enterprise" includes "any individual, ***partnership***, ***corporation***, association or other ***legal entity***, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. §1961(4) (emphasis added).  The RICO enterprise may be "an ***entity***, a group of persons associated for a common purpose of engaging in a course of conduct."  *Libertad v. Welch*, 53 F.3d 428, 441 (1st Cir. 1995) (emphasis added).  A RICO plaintiff satisfies this element with "evidence of ***an ongoing organization***, ***formal*** or informal, and by evidence that the various associates function as a continuing unit." *Id.* (quoting *U.S. v. Turkette,* 452 U.S. 576, 583 (1981) (emphasis added).

The Amended Complaint and RICO Case Statement do not rely on the "association-in-fact" definition under RICO.  18 U.S.C. 1961(4).  Plaintiffs identified seven different on-going formal legal entity enterprises, which are alleged to be interlocking because of overlapping individual Defendants in

---

[18] The Supreme Court has not resolved a split of decisions on whether a plaintiff can allege a §1962(d) conspiracy to violate §1962(a) without a showing of an investment injury, noting only that "arguably" the plaintiff must allege an injury from the "use or investment of illicit proceeds."  *See Beck v. Prupis*, 529 U.S. 494, 506, n.9 (2000).  The First Circuit has expressed no view post-*Beck*.

formal control of the different stand-alone enterprises, and were used in the same and in different phases of Defendants' long term scheme.   They include corporations, an estate, and a law partnership. Defendants utilized these fully-operational business and legal entities as vehicles to perpetrate their pattern of racketeering activities and fraudulent scheme: Freddie's Law Firm, the Titín Foundation, FSIC, MRE, MMC, the Titín Estate, and FSB.   (AC ¶¶ 344-346, 348, 352; RCS at 48-54).   Not all of these "enterprises' are alleged as such in all counts.   Each count has particular allegations.   Plaintiffs' allegations in each count are more than sufficient to satisfy RICO's "enterprise" element.   *Libertad,* 53 F.3d at 441; *Cedric Kushner Promotions v. King,* 533 U.S. 158, 163 (2001) (finding shareholder using company as enterprise was sufficient for §1962(c) claim); *G-1 Holdings, Inc. v. Baron & Budd,* 238 F. Supp. 2d 521 (S.D.N.Y. 2002) (law firm and its partners/members).

Defendants also disingenuously argue that Counts 1-4 (§1962(c) based) and 6-7 (§1962(b) based) should be dismissed because the alleged "enterprises" in those counts are not distinct from the Defendants alleged to be the "persons" who conducted the RICO violations.   (*See* Mot. at 27-28.)   These are make weight arguments that ignore express allegations.   Specifically, Defendants' argue that Counts 1 and 2 fail because Freddie's Law Firm Enterprise is both an enterprise and a defendant.   This argument turns a blind eye to the express allegation in those Counts (and statement in the RICO Case Statement) that because it is alleged to be an enterprise, "Freddie's Law Firm is not a defendant" under Counts 1 and 2. (AC ¶¶ 360-61, 374); ( RCS at 2, ¶ 1(a) and 3, ¶ 1(b)).   Plaintiffs, as the masters of their complaint, expressly (and permissibly) excluded Freddie's Law Firm as a defendant in those counts.[19]

Defendants also myopically argue that Counts 3 and 4 (also §1962(c) based) fail because FSIC is currently a subsidiary of the Titín Foundation, which is alleged to be the "enterprise" in these counts.

---

[19] Defendants cannot recharacterize well-pleaded facts of the Amended Complaint in order to fit their legal defense theories.   *See Michigan Elec. Transmission Co. v. Midland Cogeneration Venture, Ltd. P'ship*, 737 F. Supp. 2d 715, 735 (E.D. Mich. 2010) ("Notably, the plaintiff is the master of his complaint, and a defendant cannot recharacterize claims simply to remove a case to federal court.")

(*See* Mot. at 29).  FSIC did not become a subsidiary of Titin Foundation ***until 2014*** (AC ¶ 385) or later when Freddie as executor of the Titin Estate distributed the shares to the Titin Foundation that he and Q-C controlled and it was operated by Defendants Sofia and Alfie from the offices of Freddie's Law Firm. The factual allegations of Counts 3 and 4 cover racketeering activities, including FSIC's activities, in Defendants' scheme to defraud Plaintiffs over the ***decades*** when it was ***not*** a subsidiary of the Titín Foundation.  (AC ¶ 378)  Moreover, "[t]his circuit has consistently refrained from adopting a bright line rule that a subsidiary can never be distinct from its parent corporation."  *Bessette v. Avco Financial Servcs., Inc.*, 230 F.3d 439, 449 (1st Cir. 2000).[20]

Defendants incorrectly argue that the separate Defendant "person" and "enterprise" requirement under §1962(c) claims applies to §1962(b) claims.  It does not.  The overwhelming majority of well-reasoned decisions do not apply the §1962(c) distinction to §1962(b).  *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1190-91 (3d Cir. 1993) (identifying split among the circuits).[21]  Despite Defendants' suggestion (*see* Mot. at 27-28), neither the First Circuit, nor district courts in the First Circuit, has directly opined on this issue.  Because the language of §1962(b) does not require that the defendant be "employed by or associated with" an enterprise (as required by §1962(c)), it is logically akin to §1962(a) which, according to the First Circuit, does not require a person/enterprise distinction.  *See Schofield v.*

---

[20] Courts look to the allegations to determine if they "indicate how the defendant used the alleged enterprise to facilitate the fraudulent conduct."  *Id.*  Contrary to Defendants' characterizations, Counts 3 and 4 do not allege that the Titín Foundation directed or delegated activities to FSIC – which it could not do until after Titín's death – but instead that FSIC and the other Defendants used the Titín Foundation as the vehicle for their racketeering activities and fraudulent scheme.  (AC ¶¶ 385-86, 389-90, 401).

[21] Defendants purposefully omit the reams of cases concluding that §1962(b) claims, like §1962(a) claims, do not require a person/enterprise distinction because of their similar statutory language.  *See, e.g., Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1307 (7th Cir. 1987) (finding no difference between "investing in an enterprise" and "acquiring an interest in an enterprise" sufficient to require a separate enterprise for §1962(b) violation); *McGuire v. Levin*, 9 F.3d 1552 (9th Cir. 1993); *Whaley v. Auto Club Ins. Ass'n*, 891 F. Supp. 1237, 1241 (E.D. Mich. 1995) (distinguishing §1962(b) claims from §1962(c) claims and holding that in the former distinct enterprise is not required); *Davis v. Southern Bell Telphone & Telegraph Co.*, No. 89-2839-CIV, 1994 WL 912242, *20 (S.D. Fla. Feb. 1, 1994); *Klapper v. Commonwealth Realty Trust*, 657 F. Supp. 948, 958 (D. Del. 1987) (§1962(b) claim did not fail because the person alleged to be the same entity as the enterprise).

*First Commodity Corp. of Boston,* 793 F.2d 28, 31-32 (1st Cir. 1986).

Counts 6 and 7 (§1962(b) based) do not fail *in toto* under Defendants' theory because one of the nine defendants to these counts, FSIC is also one of the three "enterprises" alleged and misused by the Defendants in these Counts.  (AC ¶¶ 419-41); *see Cruz v. FX DirectDealer, LLC,* 720 F.3d 115, 121 (2nd Cir. 2013) (citing *Cullen v. Margiotta,* 811 F.2d 698, 729-30 (2d Cir. 1987)) ("[A] solitary entity cannot . . . simultaneously constitute both the RICO 'person' whose conduct is prohibited and the entire RICO 'enterprise,'" but may be "one of a number of members of the RICO enterprise.'").  Therefore, the alleged enterprises are, indeed, sufficiently distinct from the Defendants who conducted the RICO violations.  *See, e.g.*, *G-I Holdings*, 238 F. Supp. 2d at 521 (finding that named partners and members of law firm were distinct entities from the law firm); *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 268 (3rd Cir. 1995) (officers and employees' conduct managing manage a corporate enterprise satisfies the person/enterprise distinction).

Next, Defendants assert that Plaintiffs have not alleged sufficient participation in the enterprises by Alfie, Q-C, MRE, MMC, Sofia, the Titín Foundation, and FSIC. (*See* Mot. at 30-31).  On the contrary: to allege that these various actors served as president of enterprises, rendered legal services through the enterprises, acted as fiduciaries to the enterprises, and conducted the affairs of the enterprises is to have adequately alleged sufficient participation in the enterprises.  (*See generally* RCS at 12-18, 20-33).  For example, Alfie is the president of MMC and MRE, which are both alleged to constitute enterprises in some counts.  (AC ¶¶ 25-26, 412-413).  Likewise, Q-C was the President of and is a partner at Freddie's Law Firm as well as an officer and director of FSIC and the Titín Foundation, all of which are alleged to constitute enterprises in various counts.  (AC ¶¶ 30, 361, 374, 383, 397, 408-409, 410, 435, 446, 456).  Sofia was the executive director at FSB and Titín Foundation,[22] both of which are alleged to constitute enterprises in certain counts as well.  (AC ¶¶28, 383, 397, 410, 423, 434, 446,

---

[22] And upon information and belief, FSIC.

456).   Alfie, Q-C and Sofia all had some part in directing the affairs of at least one of the several interlocking enterprises and therefore participated and conducted the enterprise's affairs.   *Reves v. Ernst & Young,* 507 U.S. 170, 179, 113 S. Ct. 1163, 122 L. Ed. 2d 525, (1993).   Moreover, the Amended Complaint and RICO Case Statement catalogue numerous instances when each of these Defendants participated in the racketeering activities and fraudulent scheme.   (*See generally* AC; RCS).

Finally, Defendants quibble that by alleging multiple enterprises the Amended Complaint is "factually contradictory."   (*See* Mot. at 31-33).   However, each count stands alone and is not realleged into any other count.   Distinctions and alternative theories are preserved.   Without ever identifying a single factual contradiction, Defendants simply argue that "*every time the Plaintiffs' claim an enterprise 'in the alternative,'* they undermine and contradict the previous facts they have alleged . . ."   (*See* Mot. at 32) (emphasis in original).   The assertion of alternative enterprise theories, alone, is not enough to warrant dismissal of the Complaint.   *Grunwald v. Bornfreund*, 668 F. Supp. 128, 134 (E.D.N.Y. 1987) (denying motion to dismiss RICO complaint that alleged complicated scheme to defraud involving *five* alternative RICO enterprises).   The alternative enterprise allegations in separate counts are not the same as contradictory allegations about whether or not an offer was accepted or an employee resigned, as alleged in a case relied upon by Defendants.   *Márquez v. Flextronics America, LLC,* No. 12-61520-Civ, 2014 WL 4792997, *4 (S.D. Fla. Sept. 25, 2014).   Nor is this a case where the complaint alleges defendant was engaged in transactions in which it was both making and losing money, as in another case relied upon by Defendants.   *Ruotolo v. Fannie Mae,* 933 F. Supp. 2d 512, 518 (S.D.N.Y. 2013).   Rather, the Amended Complaint alleges alternative legal theories, which may be pled "even if the alternatives are wholly contradictory."   *Almazan v. Almazan,* No. 14-cv-311 (AJN), 2015 WL 500176, *13 n.4 (S.D.N.Y. Feb. 4, 2015).

6.      **Plaintiffs' Claims Are Not Time-Barred**.

The statute of limitations is an affirmative defense.  It is an inappropriate grounds for dismissal unless dates supporting the defense are either apparent on the face of a complaint, or the complaint fails to allege facts that warrant the application of a different statute of limitations period or equitable estoppel.  *See Díaz v. Román*, 799 F. Supp. 2d 134, 138 (D.P.R. 2011); *Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 320 (1st Cir. 2008).  RICO's four-year statute of limitations commences when a plaintiff knew or should have known of his injury.  *Lares Grp., II v. Tobin*, 221 F.3d 41, 44 (1st Cir. 2000).  When or whether a plaintiff knew or should have known of an injury is a triable issue of fact.  *See In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 183 (D. Mass. 2003); *Marrero-Rolón v. Autoridad de Energía Eléctrica de P.R.*, No. 15-1167(JAG/SCC), 2015 WL 5719801, at *6 (D.P.R. Sept. 29, 2015).

Plaintiffs expressly allege that they discovered their injuries in late 2013 to early 2014, when they first learned of Defendants' faithless diversion of the Segarra-Boerman Family Wealth to themselves and to an entity owned and controlled by Defendants.  (AC ¶ 263.)  Plaintiffs subsequently discovered the magnitude of Defendants' comprehensive scheme to defraud Plaintiffs upon: (i) confronting Freddie; (ii) witnessing Defendants flee FSB's Board; and (iii) engaging counsel to assist in conducting a thorough investigation of the extensive records of FSB previously in Defendants' exclusive possession.  (*See* AC ¶¶ 276, 321, 504.)  The initial Complaint was filed on November 2, 2016. Plaintiffs' RICO claims, which began to accrue at the earliest in late 2013, are clearly within the four-year statute of limitations.[23]  *In re Celexa and Lexapro Marketing and Sales Practices Litigation*, No. 14-13848-NMG, 2016 WL 3212480, *4 (D. Mass. June 9, 2016) (finding express allegations of RICO

---

[23] Defendants' unsubstantiated conclusion that Plaintiffs **should have** been aware of injuries stemming from the Cataño Land Deal in either 1997 or 2005, and from the FSIC Buyout in March 2006 (*see* Mot. at 34) is a controverted, triable issue of fact – of no consequence at the dismissal stage.  Plaintiffs unequivocally allege that they first learned of their injuries in late 2013/early 2014, when they discovered that Defendants had acted as faithless, disloyal fiduciaries.  These allegations defeat Defendants' statute of limitation defense.

injury discovery date to suffice and declining to make a factual determination as to actual or reasonable discovery date).

Further, the Amended Complaint expressly alleges that Defendants' conduct triggered at least two equitable estoppel doctrines – adverse domination and fraudulent concealment – regularly applied by this Court and the First Circuit.  Under the adverse domination doctrine, the statute of limitations is tolled for a "corporation's claims against its officers or directors when the persons in charge of the corporation cannot be expected to pursue claims adverse to their own interests." *W Holding Co., Inc. v. AIG Ins. Co.*, No. 11-2271, 2014 WL 3699383, at *11 (D.P.R. July 24, 2014).  This doctrine is especially applicable when the controlling officer is the repository of material information about the claim.  *FDIC v. Bird*, 516 F. Supp. 647 (D.P.R. 1981).  Where adverse domination applies, the statute of limitations only begins to run when the defendants lose control of the entity.  *Shapo*, 246 F. Supp. 2d at 953.  The Amended Complaint alleges adverse domination and that Defendants were controlling officers and the repository of information material to the RICO claims. (AC ¶¶ 5, 15, 22, 71, 202, 321, 504 & Ex. A; RCS ¶¶ 46-50, 53, 55, 61-64, 68-69, 74, 78, 80.)  Consequently, the statute of limitations only commenced when Defendants lost control of the entity, FSB, in September of 2014. (AC ¶¶ 274-93.)

Under the fraudulent concealment theory, the statute of limitations is tolled upon a showing of: (1) an active misleading by the defendant, (2) which prevents the plaintiff from recognizing the validity of her claim within the limitations period, and (3) that the plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts.[24]  *Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 256 (3d Cir. 2001).  The Amended Complaint alleges that Defendants actively misled Plaintiffs; remained silent despite their affirmative fiduciary duty to disclose; and concealed material facts to prevent Plaintiffs from discovering the validity of their claims.  (*See* AC ¶¶ 7, 51, 59, 60, 65, 67-68, 99, 101, 104, 142, 163); *González v. U.S.*, 284 F.3d 281, 292 (1st Cir. 2002)

---

[24] A plaintiff's duty of diligence is lessened when there is a fiduciary relationship with the defendant. *See Maggio v. Gerard Freezer & Ice Co.*, 824 F.2d 123, 128 (1st Cir. 1987).

30

("silence may constitute fraudulent concealment where a person, such as a fiduciary, has a duty to disclose").)   The Amended Complaint also alleges that Plaintiffs' ignorance was not attributable to a lack of due diligence. (*See* AC ¶¶ 8, 51, 263.)   Accordingly, the statute of limitations cannot be a basis for dismissing any of Plaintiffs' claims.

> **C.**   **Plaintiffs State a Claim for Unfair Competition**.

The Amended Complaint properly alleges the elements of a claim for unfair competition: (1) FSB uses the name Fundación Segarra Boerman e Hijos, Inc. (the "FSB Mark") to promote non-profit and incidental commercial activities, (2) Defendants used the FSB Mark and/or the Martinal mark in a misleading way without FSB's permission, and (3) Defendants' use is likely to confuse and has actually confused the public.  (AC ¶¶ 479–499); *see Venture Tape Corp. v. McGills Glass Warehouse*, 540 F.3d 56, 60 (1st Cir. 2008).  All five of Defendants' objections to Plaintiffs' claims of unfair competition under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and the Puerto Rico Trademark Act (10 L.P.R.A. § 223x) are misguided.

First, Doña Mildred has standing on account of her eminently "reasonable interest" in protecting the FSB Mark, which was built off of her name, initial investment and founding membership in FSB, and encompasses her and her family's name, goodwill and reputation in Puerto Rico's charitable marketplace.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014); Opp., *supra* Section III(B)(1)(a); Díaz Olivo, *supra*, at 757, 760 (describing a non-profit member's special interest and standing to initiate actions to defend the rights and purposes of the organization).  Harm to FSB necessarily harms Doña Mildred.  *See, e.g.*, *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1199 (11th Cir. 2001) (holding that because non-profits engage in competition with other non-profits, "an eleemosynary individual that uses a mark in connection with a good or service may nonetheless acquire ownership rights in the mark if there is sufficient evidence of competitive activity."); *cf. Camel Hair and Cashmere Institute of America, Inc. v. Assoc. Dry Goods Corp.*, 799 F.2d

6, 11-12 (1st Cir. 1986) (holding non-profit members had standing to sue where, even though they were not in direct competition, "their position as manufacturers and vendors of fabric and clothing containing cashmere gives them a strong interest in preserving cashmere's reputation as a high quality fibre."); *London v. Carson Pirie Scott & Co.*, No. 85C9712, 1987 WL 11382, at *2 (N.D. Ill. May 22, 1987) (finding that plaintiff, who was the sole stockholder and president of his corporation, had standing to sue under Section 43(a) because any economic injury which the corporation sustained from defendant's actions adversely affected plaintiff's economic interests).

Second, the Amended Complaint adequately alleges unfair competition claims against FSIC, Q-C, the Law Firm, Alfie and the Titín Foundation because these entities and individuals are specifically featured as protagonists, either in name or association, in the facts underpinning Counts 11-12. (*See* AC ¶¶ 199-202, 205-06, 478-99) (specifically describing the use of Titín Foundation letterhead and donations, FSIC's correspondence and checks, assisted by the Law Firm and its employees, in association with trademarked logo of Martinal, Alfie's company)).  These entities and individuals are also encompassed within the term "Defendants" as pled (*see* AC ¶¶ 22-24, 29, 30), which is permissible when a group of defendants has acted through enterprises, as related entities, for a common purpose, and or in a binding manner, as occurred here.  *See Isringhausen Imports, Inc. v. Nissan N. Am., Inc.*, No. 10-cv-3253, 2011 WL 1331886, at *5 (C.D. Ill. Apr. 6, 2011) (group pleading allowed when "act[ing] together for a common purpose"); *Harrell v. Colonial Holdings, Inc.*, 923 F. Supp. 2d 813, 821 (E.D. Va. 2013) (group pleading allowed when defendants "affiliated with the others" and "played a role in the operation."); *Adobe Sys. Inc. v. Blue Source Group, Inc.*, 125 F. Supp. 3d 945, 965 (N.D. Cal. 2015) (group pleading allowed for allegations that all defendants infringed trademarks and copyrights).

Third, Plaintiffs' unfair competition claims are not barred by any statute of limitations or laches defense, which are affirmative defenses that can only be raised in a motion to dismiss if there is no doubt as to their application on the face of the complaint.  *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524

F.3d 315, 320 (1st Cir. 2008); *Blackstone Realty LLC v. F.D.I.C.*, 244 F.3d 193, 197 (1st Cir. 2001). Since the Lanham Act does not contain a statute of limitations, this Court should refrain from declaring one for Plaintiffs' unfair competition claim as a matter of first impression, in the absence of such a decision by the Puerto Rico courts.[25]  Instead, the Court should view Defendants' allegations of delay in terms of laches.  *See* 6 Callmann on Unfair Comp., Tr. & Mono. § 23:31; *see id.* n. 8 ("According to the better view, Lanham Act causes of action . . . have no statute of limitations. Delay in bringing suit is analyzed solely in terms of laches."); *Ediciones Quiroga, S.L. v. Fall River Music, Inc.*, No. 93 CIV 3914, 1995 WL 103842, at *5 (S.D.N.Y. Mar. 7, 1995) (declining to apply a statute of limitations to Lanham Act claims, finding laches is the more appropriate defense); *Micromuse, Inc. v. Micromuse, PLC*, 304 F. Supp. 2d 202, 218, n.21 (D. Mass. 2004) ("the Lanham Act, which has no statute of limitations, is not subject to the usual borrowing rule that adopts an analogous state statute of limitations as a federal substitute.").

Where Defendants' actions were calculated to trade upon Plaintiffs' goodwill and reputation, however, laches cannot be invoked as a defense.  *See Jordan K. Rand, Ltd. v. Lazoff Bros., Inc.*, 537 F. Supp. 587, 594 (D.P.R. 1982) ("[L]aches is not available as a defense to a defendant in a trademark

---

[25] Defendants propose borrowing from Puerto Rico's one-year statute of limitations for tort actions, relying on *Vigoreaux Lorenzana v. Quizno's Subs*, 173 D.P.R. 254 (2008).  Defendants' reliance on *Vigoreaux* is misplaced.  No statute of limitations issue was present in the case.  Moreover, *Vigoreaux* involved a claim for violation of a person's right of publicity, which shares no historical origins with an unfair competition or trademark action, and seeks to protect an entirely different interest (*i.e.*, a person's right to protect the commercial value of his name as opposed to the public's right to be free from confusing in making purchasing decisions).  Puerto Rico also subsequently codified a one-year statute of limitation for a right of publicity claim at 32 L.P.R.A. § 3156.  If any limitations period is to be considered, the more appropriate one would be a four-year statute of limitation for serious dolus, 31 L.P.R.A. § 3512, which courts have applied for fraud, misrepresentation, concealment, and deceit.  *See Full Draw Prods. v. Easton Sports, Inc.*, 85 F. Supp. 2d 1001, 1011 (D. Colo. 2000) (holding that despite defendant's contention that a "two year limitations for tort actions applies to Lanham Act claims, the Court is persuaded by the majority view that the state statute of limitations for fraud claims is actually the most appropriate," and collecting cases).  Finally, as a continuing tort, Plaintiffs' claims cannot be barred by any statute of limitations because they involve continued damages that have not yet accrued. *See Rivera Ruiz v. Mun. De Ponce*, 2016 TSPR 197.

infringement or unfair competition case where its own actions has been calculated to trade upon plaintiff's reputation."); *see also Baker v. Simmons Co.*, 307 F.2d 458, n.4 (1st Cir. 1962) ("[I]n view of defendants' calculated design to trade upon plaintiff's reputation . . ., we do not believe that he is in any position to invoke the defense of laches."). The Amended Complaint alleges that Defendants' actions were calculated to trade upon FSB's reputation and goodwill (*see* AC ¶¶ 198, 202, 205, 208-09), and, therefore, laches is not an available affirmative defense.[26]

Fourth, Defendants were not authorized to use the Martinal mark to promote FSB's business, and thus any argument that FSB consented or acquiesced to Defendants' misleading use is both wrong and a triable issue of fact. (*See* AC ¶ 208; Mot. at 39). The Martinal Administration Contract gave Defendants the right to control the "administration and management of all of FSB's property, real and personal." (AC ¶ 70). Such silence as to the use of FSB's intellectual property cannot constitute consent or acquiescence. *See, e.g., WEC Holdings, LLC v. Juarez*, No. 2:07-CV-00137-BES-PAL, 2008 WL 345792, at *4 (D. Nev. Feb. 5, 2008) (denying motion to dismiss under Lanham Act where agreement between the parties was silent as to whether defendant had permission to use plaintiff's trademarks in exercising his right to exploit an event); *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 68 (2d Cir. 2002) ("a plaintiff communicates active consent by conduct that amounts to an explicit or implicit assurance that plaintiff, with knowledge of defendant's conduct, will not assert its trademark rights").

When Plaintiffs discovered and confronted Defendants about their infringing use, they expressly disagreed with and objected to the misleading use of the Martinal logo together with the FSB Mark.

---

[26] In any event, Defendants failed to and cannot establish the requisite elements to show laches, and questions about whether Plaintiffs unreasonably delayed in bringing suit is a triable issue of fact. *See Citibank, N.A. v. Citytrust*, 644 F. Supp. 1011, 1012 (E.D.N.Y. 1986). The Amended Complaint alleges intentional concealment or unawareness (not knowledge) of the confusing use of the FSB Mark and Martinal Logo (*see* AC ¶¶ 199-202, 504), adverse domination of FSB Board preventing and delaying Plaintiffs from bringing unfair competition claims (*see id.* ¶¶ 280, 287, 290, 293), and no prejudice to Defendants from alleged delay.

(*See, e.g.*, AC ¶ 208.)   Otherwise, Plaintiffs lacked knowledge of the vast majority of Defendants' unauthorized and improper uses of FSB's mark to trade on FSB's goodwill and reputation, especially in relation to covert self-dealing with charitable donations (*see, e.g.*, AC ¶¶ 199–202), and certainly did not provide any assurances that it would not seek to vindicate its trademark rights.   Any argument that such conduct establishes consent and acquiescence is simply not credible, and, in any event, can only be assessed by a trier of fact.   *Hyson USA, Inc. v. Hyson 2U, Ltd*., 821 F.3d 935, 941 (7th Cir. 2016) ("[a]cquiescence is a fact-intensive equitable defense that is rarely capable of resolution on a motion to dismiss under Rule 12(b)(6)" and "generally requires a factual record").[27]

Fifth, Plaintiffs are entitled to injunctive relief because they can demonstrate irreparable harm based on the likelihood of consumer confusion.   The Martinal logo continues to be used in association with the Titín Foundation and consumers have been, and continue to be, confused and misled with respect to the identities of FSB, Titín Foundation, Martinal and other co-Defendants in the charitable marketplace.   (*See* AC ¶¶ 205-11 & Ex. A)   It is not necessary to show that Defendants are presently using or in the future will use the FSB Mark if there is a danger of future consumer confusion, which exists here.   *See It's A 10, Inc. v. Beauty Elite* Group, *Inc.*, 932 F. Supp. 2d 1325, 1332–33 (S.D. Fla. 2013).

**D.**   **Plaintiffs State a Claim for Breach of an Oral Settlement Agreement**.

**1.**   **The Claim for Breach of the Settlement Agreement of the RICO Claim Presents a Federal Question**.

---

[27] Defendants' cases are inapposite.   In *Korpacz v. Women's Prof'l Football League*, the plaintiff explicitly invited other defendants to "feel free to manipulate the words and place your logo in it and send it out to newspapers." *Korpacz*, No. Civ.A. 04-10735-RWZ, 2006 WL 220762, *2 (D. Mass. Jan. 27, 2006).   By inviting others to use her mark, the plaintiff ceded partial ownership and acquiesced in the defendants' use of the mark.   In *USTrust v. U.S. Trust Co. of New York*, the court, in its findings of fact *after a 12-day non-jury trial*, found that acquiescence was shown as a matter of *fact* based on defendant's knowledge that plaintiffs were using the domain name at issue. *USTrust*, 210 F. Supp. 2d 9, 28 (D. Mass. 2002).   Unlike *Korpacz* and *USTrust*, Plaintiffs did not authorize Defendants to use the FSB and/or Martinal mark in a confusing and misleading manner.

Federal law controls the validity and enforcement of the parties' agreement to settle Plaintiffs' RICO and Puerto Rico law claims.  A claim for breach of that settlement agreement presents an independent and substantial federal question for subject matter jurisdiction, both as a standalone federal claim or a breach of contract claim under Puerto Rico law with embedded federal questions.  *Rhode Island Fishermen's Alliance, Inc. v. Rhode Island Dept.*, 585 F.3d 42 (1st Cir. 2009); *cf. Quint v. A.E. Staley Manufacturing*, 246 F.3d 11, 15 (1st Cir. 2001) (holding claim pursuant to a federal statute to enforce an oral settlement agreement is governed by federal law and deemed enforceable if containing material terms); *Dice v. Akron, C. & Y. R. Co.*, 342 U.S. 359 (1962) (holding that federal law controls the validity of a ***pre-suit release of a federal statutory claim***, as it serves federal interests and uniform application).[28]

## 2.    Supplemental Jurisdiction May be Exercised Over the Breach of Contract Claim.

This lawsuit is the proper vehicle to resolve all disputes arising from the RICO claims and the breach of the settlement agreement regarding the RICO and Puerto Rico law claims.  The exercise of supplemental jurisdiction is appropriate and Defendants arguments to the contrary are baseless.

Plaintiffs' breach of the parties' oral settlement agreement claim is a substantial federal claim that would ordinarily be expected to be tried in one judicial proceeding.  Defendants argue otherwise, but in doing so they omit material sentences from the case law they cite.[29]  Pendent jurisdiction is a flexible doctrine designed to allow courts to deal with pendent claims in a sensible and accommodating

---

[28] Central to the Court's holding that federal law determines the validity of a pre-suit release of a claim made under the Federal Employees Liability Act was that, similar to RICO, Congress allowed a private right of action and "[s]tate laws are not controlling in determining what the incidents of this federal right shall be." *Dice*, 342 U.S. at 361.

[29] Defendants rely on *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1996) for the isolated proposition that only state claims derived from the same nucleus of operative facts as the federal claims must be allowed to go forward.  However, this decision continues in the very next sentence, "[b]ut if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole.")  Defendants' requested dismissal with prejudice upon declining to exercise discretionary jurisdiction is inappropriate.

manner. *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988).   No categorical rule applies. *Redondo Const. Corp. v. Izquierdo*, 662 F.3d 42, 49 (1st Cir. 2011).[30]

The principles of judicial economy, convenience, fairness, and comity favor the exercise of supplemental jurisdiction.   Regarding comity, there is no special state interest in having the breach of contract claim resolved in the Puerto Rico courts when federal law controls.   *See Williams v. Metzler*, 132 F. 3d 937, 946 (3d Cir. 1997); *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1208 n.1 (5th Cir. 1981).   In any case, the breach of an agreement involving the settlement of the federal claims contains a substantial federal ingredient that is only furthered by having the claims resolved in federal court.

### 3.   Plaintiffs State a Valid Claim for Breach of Contract Under Puerto Rico Law.

Defendants argue that the breach of contract claim must be dismissed because Puerto Rico law requires agents to formalize contracts via an authentic document.   This argument has two flaws.   First, Puerto Rico law does not control, federal common law does, so the argued-for settlement agreement form is not relevant.   *See Williams*, 132 F.3d at 946; *Fulgence*, 662 F.2d at 1208 n.1.   Second, even if Puerto Rico law did apply, it is clear that a settlement agreement exists when consent, object and cause are present, and no special formality is required to deem such a contract valid.   *Neca Mortg. Corp. v. A & W Dev. S.E.*, 137 DPR 860 871 (1995) (citing Art. 1213 of the Civil Code, 31 L.P.R.A. § 3391). Indeed, "[c]ontracts shall be binding, whatever may be the form in which they may have been executed, provided the essential conditions required for their validity exist.")   Art. 1230 of the Civil Code, 31 L.P.R.A. § 3451.   The Civil Code states that once the basic elements of a contract exist, the parties ***may***

---

[30] Defendants reliance on *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994), a diversity suit removed from state court, is misplaced.   The facts alleged in the underlying claims and the claim for breach of the agreement to settle federal claims have much in common, and it would be efficient to adjudicate them together.   Defendants' repudiation of the settlement agreement is also consistent with the racketeering pattern supporting Plaintiffs' RICO claims.

*compel* each other to execute the contract in the form required by law.  To that effect, Article 1231 of the Civil Code states:

> Should the law require the execution of an instrument or other special formality in order to make the obligations of a contract binding, the contracting parties *may compel* each other to comply with said formalities from the moment in which consent and the other requirements, necessary for their validity, have taken place.

Art. 1231 of the Civil Code, 31 L.P.R.A. § 3452 (emphasis added).

Defendants argue that contracts made through agents should be in the form of an authentic document, citing 31 L.P.R.A. § 3453 ("In all cases, contracts made through agents shall be made by means of authentic documents, the district judges and justices of the peace being hereby empowered in the absence of a notary, to certify to the authenticity of said contracts . . . ").  Defendants again purposefully omit a relevant exception, for in the next paragraph of that article is stated: "[n]otwithstanding the provisions of the preceding paragraph, commercial contracts made by means of correspondence and all those in which the formality of the authentic document may cause prejudicial delay to the nature and rapidity of mercantile traffic, shall be valid." *Id.*  No written contract made through an agent is necessary when there are time constraints and delay would be prejudicial.

As alleged in the *Amended Complaint*, Plaintiffs set a settlement deadline of August 5, 2016 and negotiations with Freddie (through his agent Friedel) took place in that context and under that time constraint.  (AC at ¶¶ 327-28.)  On the day of the deadline, Freddie agreed to settle all potential federal and state law claims for: (a) $26 million (b) paid by Titín Foundation and/or FSIC (c) by check (d) in exchange for no RICO and Puerto Rico law claims being filed in the District Court for the District of Puerto Rico on that deadline.  (*Id.*)  No complaint was filed by Plaintiffs on that date.  (AC ¶ 332.)  There is no allegation (or even an indication in subsequent communications Defendants improperly submitted with their motion to dismiss) that Freddie requested formalization of the agreement, as opposed to subsequent mutual releases.

The lack of a written agreement does not imply that the agreement never happened or that it is somehow nonexistent or defective. Art. 1230 of the Civil Code, 31 L.P.R.A. § 3451 ("Contracts shall be binding, whatever may be the form in which they may have been executed, provided the essential conditions required for their validity exist.")  The Supreme Court of Puerto Rico has repeatedly held, citing Article 1231 of the Civil Code, that a contract is perfected once an agreement is reached as to the essential elements *regardless of their form* and that an action to compel a party to execute the agreement in the form required by law is not a precondition to its enforceability against the other party. *See*, *e.g.*, *Clavell v. Clavell*, 41 DPR 195, *3 (1930); *Cintrón v. Fernández*, 22 DPR 483, *3 (1915); *Vázquez v. Medina*, 17 DPR 105, *2 (1911).

Defendants argue that an August 8, 2016 letter by then counsel for Plaintiffs submitted outside of the "four corners of the complaint,"[31] demonstrates as a matter of law that no final agreement had been reached and that negotiations were still ongoing.  To the contrary, the letter in fact clearly demonstrates that an agreement as to the essential terms of the settlement had been reached: "[b]y the time your letter arrived, *an offer* by AMA [Freddie], the Titín Foundation, and FSIC *had been made*, through a third-party – *and the offer had been accepted* – to settle this matter by means of a payment to FSB and Doña Mildred in the amount of Twenty-six Million Dollars ($26,000,000) (the "**Settlement Offer**" and/or the "**Settlement Amount**")".  (Mot., Ex. 1) (first, second and third emphases added).  Clearly, Plaintiffs had performed their obligations by not filing suit in this Court on August 5, 2016.  The letter simply requested that Defendants prepare the first draft of a written agreement with the normal litigation settlement details.[32]  Taking as true the Amended Complaint's allegations, the settlement agreement was

---

[31] Notwithstanding Defendants' cynical disregard of the law under Rule 408 regarding the scope of an exception for breach of a settlement agreement, Plaintiffs reserve the right to object to the use at trial of the interparty protected communications attached to the Motion as Exhibits 1-2.

[32] Defendants attempt to portray the settlement as "an agreement to seek to agree in the future," citing *K-Mart Corp. v. Davis*, 756 F. Supp. 62 (D.P.R. 1991).  However, in *K-Mart*, the District Court *after a six-day hearing "on the merits" on a motion for preliminary injunction* weighed the testimonial and

perfected and Plaintiffs performed their duty. Friedel, on behalf of Freddie, accepted Plaintiffs' offer to hold off on the filing in exchange for $26 million dollars by stating: "It's a deal." (AC at ¶ 330.) Defendants reneged. Friedel reconfirmed the deal by advising: "Insist on what we agreed." (AC ¶¶ 334-35.)

Finally, Defendants disingenuously argue in the face of contrary allegations in the Amended Complaint that by filing the complaint in November 2016, Plaintiffs breached the agreement and cannot, therefore, demand the payment of the settlement amount. Defendants breached the agreement in August and September of 2016, when they failed to comply with their obligation to pay the settlement amount and, in fact, reneged on the agreement. Defendants' breach allowed Plaintiffs to rescind the agreement and seek damages, which they did. (AC at ¶ 477); *see* Art. 1077 of the Civil Code, 31 L.P.R.A. § 3052 ("[t]he person prejudiced may choose between exacting the fulfilment of the obligation or its rescission, with indemnity for damages and payment of interest in either case. He may also demand the rescission, even after having requested its fulfilment, should the latter appear impossible.").

## IV.   <u>CONCLUSION</u>

Plaintiffs respectfully request that the Court deny Defendants' Motion in its entirety[33] and set an Initial Scheduling Conference and/or Status Conference, as indicated in the Court's June 5, 2017 Order (D.E. 61).

---

documentary evidence, and relying on *Dumas v. First Federal Savings and Loan Association*, 654 F.2d 359 (5th Cir. 1981), found that essential terms of the unsigned contract had not been agreed upon and treated the document as a non-binding MOU because the letter stated that it would "act as the basic agreement, **subject to a mutually acceptable Purchase and Sale Agreement**." *Kmart Corp.*, 756 F. Supp. at 69 (quoting *Dumas*, 654 F.2d at 360) (emphasis added).

[33] It is improper for Defendants to "reserve the right to plead additional arguments in future submissions" to respond to Plaintiffs' federal and state law claims due to "space constraints." (Mot. at 9, n.3); *see* Local Rule 7(c) (replies "shall be strictly confined to replying to new matters raised in the objection opposing memorandum."); FED. R. CIV. P. 12(h) (defendant waives any defenses premised upon Rule 12(b)(2)-(5) by omitting them from their motion to dismiss).

Dated:  December 5, 2018.

STROOCK & STROOCK & LAVAN LLP
200 S. Biscayne Boulevard, Suite 3100
Miami, Florida  33131
Telephone:  (305) 978-9300
Facsimile:  (305) 978-9302
*Attorneys for Plaintiffs*

By:  *s/ Lewis F. Murphy*
      Pro Hac Vice
By:  *s/ James G. Sammataro*
      Pro Hac Vice
By:  *s/ Hans H. Hertell*
      U.S.D.C. No. 228307

CASELLAS ALCOVER & BURGOS, P.S.C.
P.O. Box 364924
San Juan, Puerto Rico 00936-4924
Telephone: (787) 756-1400
Facsimile:  (787) 756-1401
*Attorneys for Plaintiffs*

By:  *s/ Ricardo F. Casellas*
      U.S.D.C. No. 203114

By:  *s/ Diana Pérez Seda*
      U.S.D.C. No. 232014

*s/ Michael Volkov*
Michael Volkov
Pro Hac Vice
THE VOLKOV LAW GROUP
1101 Connecticut Avenue, N.W., Suite 600
Washington, D.C. 20036
Telephone: (202) 659-6927
Email: mvolkov@volkovlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 5, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that a notice of the foregoing document is being served this day on all counsel of record identified in the manner specified, via transmission of Notices of Electronic Filing generated by CM/ECF this 5th day of December, 2018.


*s/ Hans H. Hertell*
Hans H. Hertell

| | |
|---|---|
| **Rafael Escalera-Rodriguez**<br>Reichard & Escalera<br>PO Box 364148<br>San Juan, PR 00936-4148<br>*Attorney for Defendants*<br>Email: escalera@reichardescalera.com | **Daniel A. Salinas-Serrano**<br>Quinn Emanuel Urquhart & Sullivan, LLP<br>777 6th Street NW<br>11th Floor<br>Washington, DC 20001<br>*Attorney for Defendants*<br>danielsalinas@quinnemanuel.com |